1  DAVID SEROR - Bar No. 67488
   JESSICA L. BAGDANOV - Bar No. 281020
2  BG LAW LLP
   21650 Oxnard Street, Suite 500
3  Woodland Hills, CA 91367
   Telephone: (818) 827-9000
4  Facsimile:  (818) 827-9099
   Email:      dseror@bg.law
5              jbagdanov@bg.law

6  Attorneys for Sam Leslie,
   Chapter 11 Trustee

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **LOS ANGELES DIVISION**

11 | In re | Case No. 2:21-bk-10335-BB |

12 | COLDWATER DEVELOPMENT, LLC, A California limited liability company, | Chapter 11 |

13 | | Jointly Administered with |
   | Debtor. | Case No. 2:21-bk-10336-BB |

14

15 | In re | **CHAPTER 11 TRUSTEE'S MOTION FOR ORDER: APPROVING RETENTION OF THREESIXTY ASSET ADVISORS, LLC AND WFS INC. DBA TRANZON ASSET STRATEGIES AS AUCTIONEERS PURSUANT TO 11 U.S.C. § 327 AND APPROVING AUCTIONEER'S PROPOSED COSTS;** |
   | LYDDA LUD, LLC, a California limited liability company, |

16

17 | Debtor. |

18

19 | ☒ Affects both Debtors. | **MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF SAM S. LESLIE, JEFFREY J. TANENBAUM, AND MICHAEL C. WALTERS IN SUPPORT THEREOF** |

20 | ☐ Affects Coldwater Development LLC only. |

21 | ☐ Affects Lydda Lud, LLC only. |

22 | Debtors. | *Application for Order Setting Hearing on Shortened Notice Filed Concurrently Herewith* |

23

24

25

26

27

28

1

2761351

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE DEBTORS AND THEIR COUNSEL, CREDITORS, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

Sam S. Leslie, the duly appointed and acting Chapter 11 Trustee (the "Trustee") of the bankruptcy estates ("Estates") of Coldwater Development, LLC ("Coldwater Debtor") and Lydda Lud, LLC ("Lydda Debtor") (collectively, the "Debtors"), hereby moves (the "Motion") this Court for entry of an order approving the Trustee's retention of ThreeSixty Asset Advisors, LLC and WFS Inc. dba Tranzon Asset Strategies as Auctioneers (the "Auctioneers") and approving the Auctioneers' proposed costs pursuant to 11 U.S.C. § 327. In support of the Motion, the Trustee respectfully represents as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Trustee is prepared to begin efforts to market and sell the valuable real property assets of this estate (defined below as the "Property"), and requires the assistance of experienced brokers and auctioneers to begin this effort. As set forth herein, the Trustee seeks approval to employ the Auctioneers at this juncture, with an anticipated auction date 30-45 days after receiving Court approval to employ the Auctioneers. After marketing efforts have begun, and the Trustee and Auctioneers have an idea of the range of potential bids for the Debtor's property, the Trustee anticipates filing a motion to establish bid procedures prior to conducting an auction, to ultimately be confirmed by the Court. As set forth herein, the proposed Auctioneers are highly qualified to conduct this sale, are disinterested, and thus employment under section 327 is appropriate.

### II.    JURISDICTION AND VENUE

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### III.    RELEVANT BACKGROUND

On January 15, 2021 (the "Petition Date"), the Debtors filed their voluntary petitions under Chapter 11 of title 11 of the Bankruptcy Code (the "Cases"). The Cases are jointly administered

2761351

pursuant to this Court's Order entered January 21, 2021 in the Cases.

The Debtors collectively own six (6) highly prized, vacant, residential estate lots, totaling approximately 65.63 acres located in the Santa Monica Mountains above Beverly Hills, California (the "Property").  More specifically, the Coldwater Debtor owns two (2) lots identified by Assessor's Parcel Number 4387-021-018 and 4387-021-019, and the Lydda Debtor owns four (4) lots identified as Assessor's Parcel Number 4387-022-001, 4387-022-002, 4387-020-001, 4387-020-009.

On December 7, 2021, the Office of the United States Trustee "("OUST") filed its Application to Appoint a Chapter 11 Trustee in the Cases [Doc. 191], pursuant to which the OUST sought the immediate appointment of a Chapter 11 Trustee.  Thereafter, this Court granted the OUST Application and appointed the Trustee in the Cases.  On December 7, 2021, the OUST filed its Notice of Appointment of Chapter 11 Trustee [Doc. 193], and pursuant to Court order entered December 7, 2021 [Doc. 195], Sam S. Leslie was appointed Chapter 11 Trustee and continues to serve in that capacity in the Cases.

Prior to the Trustee's appointment, the Debtors marketed the Property to several parties both pre- and postpetition.  Since his appointment, the Trustee has spent considerable time and effort in a short period of time investigating the Property and its purported secured debt to determine whether the Property may be liquidated for the benefit of these Estates.  The Trustee solicited multiple proposals from different auctioneers and ultimately selected the Auctioneers. As set forth herein, the Trustee submits that a public auction of the Property is in the best interests of the Estates, and to that end, seeks employment of the Auctioneers to facilitate the marketing and eventual sale of the Property.

## IV.    THE AUCTIONEERS' PROPOSAL AND QUALIFICATIONS

### A.    The Proposed Listing Agreement

The Trustee seeks to employ ThreeSixty Asset Advisors, LLC and WFS Inc. dba Tranzon Asset Strategies as Auctioneers in these cases pursuant to the terms set forth in that certain Auction Listing Agreement (the "Listing Agreement"), attached hereto as **Exhibit 1** and incorporated herein by this reference. The Listing Agreement contains details regarding how the Auctioneers will prepare for, market, and conduct the auction of the Property. The details of the proposal are as

2761351

follows:[1]

1.    Sale Location. The sale will be publicly marketed and held in a live event with online bidding available for remote bidders.

2.    Sale Date. The sale will be conducted approximately 30-45 days following Court approval of this Motion, and the sale shall be timed to occur approximately within one week of the hearing date scheduled to approve the outcome of the sale.

3.    As-Is, Where-Is Sale. The Trustee shall convey legal title to the Property by quitclaim deed to buyer(s) on an as-is, where-is basis, with no representations or warranties, **subject to** (a) current property taxes, (b) covenants, conditions, and restrictions of record, (c) easements of record, (d) local, state and federal laws, ordinances or governmental regulations, including but not limited to building and zoning laws, ordinances and regulations.

4.    Buyer Default, Reimbursement of Costs. In the event any buyer fails to complete the purchase by reason of any default of such buyer, and the buyer's deposit is retained as liquidated damages, the Auctioneer shall be reimbursed for any actually incurred costs and shall be paid 50% of the net deposit after any cancellation and escrow fees, up to the maximum amount of compensation Auctioneers would have received had the sale closed escrow. If the Property is later sold, any costs or commissions paid to Auctioneers will be a credit against any subsequent payments on a sale that closes.

5.    Suggested Opening Bids. The Auctioneers will market the Property with suggested opening bids amounts, or in the event a stalking horse bidder is selected and approved, then a required overbid amount; however at all times, the auction sale is subject to confirmation of the Trustee in his sole and absolute discretion.

6.    Sale Confirmation. The Trustee reserves the right to accept or decline any and all bids in his sole and absolute discretion, each sale will be subject to Court approval.

7.    Exclusivity. The Trustee grants to Auctioneers the exclusive right to sell the Property

---

[1] The following is a brief description of salient terms of the Listing Agreement. The full details may be found in **Exhibit 1** attached hereto. To the extent this description of key provisions is found to conflict with the terms of the Listing Agreement, the Listing Agreement shall control.

2761351

commencing upon Court approval of this Motion, and ending 120 days following the published auction date or through the close of any open escrow(s), whichever occurs first.

8.  <u>Marketing and Sale Expenses and Retainer.</u> Trustee agrees to marketing and sale expenses not to exceed $25,000 and a base fee / retainer of $30,000, collectively as an administrative cost of the estate payable upon availability of funds in to the estate or not later than the transfer of title to any buyer(s). The marketing and sales expenses shall be passed on at cost and shall include advertising, marketing materials, and sale venue costs.

9.  <u>Commission.</u> A 3% buyer's premium ("Buyer's Premium") will be charged to the winning bidder at the auction sale. This fee is based on the highest bid received at the auction sale and will be added to the high bid.

a.  <u>Buyer's Broker.</u> In the event the Property is purchased by a third party represented by a registered broker, the buyer's broker will be paid 1% of the high bid, to be paid from the Buyer's Premium through escrow. The remaining 2% will be paid to the Auctioneers. In the event a third party buyer is not represented by a broker, 1% of the Buyer's Premium will be rebated back to the estate, with the remaining 2% paid to the Auctioneers.

b.  <u>Stalking Horse.</u> In the event the Trustee accepts a Stalking Horse bid by 5:00 p.m., Pacific Standard Time **<u>February 8, 2022</u>**, and the Stalking Horse purchases all Properties for the amount of their Stalking Horse Bid, no Buyer's Premium shall apply to the Stalking Horse Bid, and a fee of .5% of the purchase price will be payable to Broker/Auctioneer at closing. Alternatively, in the event the Stalking Horse Bidder purchases less than all six Properties at the Sale, or the Stalking Horse is the high bidder at the Sale for a price higher than the Stalking Horse Bid, then the Stalking Horse Bidder shall be assessed the full Buyer's Premium which shall be distributed as per Section 16i of the Listing Agreement (or section 9(a) above).

10.  <u>Broker/Auctioneer Warranties.</u> Auctioneers warrant and represent that they do not have an interest materially adverse to this estate by reason of any direct or indirect relationship to or

interest in the Property or any anticipated auction buyers, except to the extent that auction buyers

may have previously bid or purchased from past auctions.

**B.    The Auctioneers' Qualifications**

The Trustee believes that both ThreeSixty Asset Advisors, LLC and WFS Inc. dba Tranzon

Asset Strategies are well qualified to conduct the Auction based on their collective years of

experience providing effective sales and liquidations on behalf of bankruptcy trustees, chapter 11

debtors. A true and correct copy of the Auctioneers' CV is attached hereto as **Exhibit 2.**

**C.    Auctioneers' Compliance with OUST Requirements**

ThreeSixty Asset Advisors, LLC currently maintains a blanket bond in the amount of

$25,000 (the "ThreeSixty Blanket Bond").  A true and correct copy of the ThreeSixty Blanket Bond

is attached to the Tanenbaum Declaration as **Exhibit 3.** Additionally, Tranzon Asset Strategies

maintains a blanket bond in the amount of $25,000 (the "Tranzon Blanket Bond"). A true and correct

copy of the Tranzon Blanket Bond is attached hereto as **Exhibit 4.** For the reasons explained below

the Auctioneer shall not be required to maintain an individual bond for this case.

Prior to an auction sale, any potential bidders will submit deposits directly to the Trustee to

be held prior to the sale closing. Presently, the Trustee's blanket bond in place totals $5,000,000. In

the event deposits paid to the Trustee by potential bidders exceed that amount, the Trustee will cause

the estate to obtain a separate bond for the amount exceeding $5,000,000. Furthermore, if and when

there is a successful purchaser, such that purchase funds are to be deposited into escrow, the

Trustee's escrow company will secure, as needed, a bond for the amount of the purchase proceeds to

be deposited from the successful bidder.

A full and complete copy of this Motion and all accompanying and supporting documents

was provided to the OUST prior to the filing of the Motion and the OUST has reviewed the proposed

employment of ThreeSixty Asset Advisors, LLC and WFS Inc. dba Tranzon Asset Strategies as

auctioneer as set forth herein and has no objection thereto.

2761351

## V.    EMPLOYMENT OF THE AUCTIONEER IS APPROPRIATE UNDER 11 U.S.C. § 327

11 U.S.C. § 327(a) authorizes a trustee, with the Court's approval, to retain professionals, including auctioneers, "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."  A disinterested person is defined in 11 U.S.C. § 101(14).   Federal Rule of Bankruptcy Procedure 2014(a) requires that employment applications disclose "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, and any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.  The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the Office of the United States trustee."

Here, as set forth in the Tanenbaum and Walters Declarations:

(1)    Neither ThreeSixty Asset Advisors, LLC ("ThreeSixty") and WFS Inc. dba Tranzon Asset Strategies ("Tranzon") nor any of their respective principals or employees has any connection with the Trustee, insiders, creditors, any other party or parties in interest, their respective attorneys and accountants, or any person employed in the OUST;

(2)    Neither ThreeSixty nor Tranzon is a pre-petition creditor, an equity security holder, or an insider of the Debtor;

(3)    Neither ThreeSixty nor Tranzon was or is an investment banker for any outstanding security of the Debtor;

(4)    Neither ThreeSixty nor Tranzon has been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor;

(5)    Neither ThreeSixty nor Tranzon has been within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor;

2761351

(6)    Neither ThreeSixty nor Tranzon represents an individual or entity which holds an interest adverse to the Debtor;

(7)    None of ThreeSixty's or Tranzon's principals or employees is related to the United States Trustee or the Bankruptcy Judge in this case; and,

(8)    Neither ThreeSixty nor Tranzon has a fee sharing arrangement, understanding, or compensation sharing arrangement with any other entity, and no part of their compensation will be paid to any other entity, other than the buyer's premium as set forth herein.

Both ThreeSixty and Tranzon, therefore, are disinterested within the meaning of 11 U.S.C. §§ 327(a) and 101(14).

For the reasons set forth above and in the Tanenbaum and Walters Declarations, and because the Auctioneers hold no interest adverse to the estate and is disinterested, the Trustee believes that the employment of the Auctioneers is in the best interest of the Estate.

## VI.    CONCLUSION

Based on the foregoing, the Trustee respectfully requests that the Court enter an order granting this Motion, authorizing the Trustee to employ ThreeSixty and Tranzon as Auctioneers pursuant to section 327 of the Bankruptcy Code, and granting such other and further relief as the Court deems just and proper under the circumstances.

DATED:  February 2, 2022              BG LAW LLP


                                     By: /s/ Jessica L. Bagdanov
                                         David Seror
                                         Jessica L. Bagdanov
                                         Attorneys for Sam Leslie, Chapter 11 Trustee

2761351

## DECLARATION OF SAM S. LESLIE

I, Sam S. Leslie, declare:

1.      I am the duly appointed and acting chapter 11 trustee for the bankruptcy estates of Coldwater Development, LLC and Lydda Lud, LLC. I have personal knowledge of the facts contained in this declaration, and if called as a witness, I would and could competently testify thereto under oath.

2.      I make this declaration in support of my motion to employ ThreeSixty and Tranzon as Auctioneers. All initial capitalized terms used but not defined herein have the meanings ascribed to them in the motion.

3.      I have spent considerable time and effort (in a short period of time) investigating the best way to maximize value for these estates by sale of the Property. I consulted with a number of potential auctioneers, and ultimately determined that the proposal submitted to me by ThreeSixty and Tranzon was the proposal that would best serve this estate, and I believe they are well qualified to serve these estates as Auctioneers. A true and correct copy of the proposal is attached hereto as **Exhibit 1.**

4.      I have no connection with ThreeSixty or Tranzon, other than that I have employed ThreeSixty as Auctioneer for other bankruptcy matters not related to this case.  My negotiations for the Auctioneers' employment as auctioneers in this case is a product of arm's length discussions and negotiations with the assistance of my proposed counsel.

5.      To the best of my knowledge:

        a.      ThreeSixty and Tranzon, nor any of their respective principals or employees, do not have any connection with me, insiders, creditors, any other party or parties in interest, their respective attorneys and accountants, or any person employed in the OUST;

        b.      Neither ThreeSixty nor Tranzon is a pre-petition creditor, an equity security holder, or an insider of the Debtor;

        c.      Neither ThreeSixty nor Tranzon was or is an investment banker for any outstanding security of the Debtor;

2761351

d.     Neither ThreeSixty nor Tranzon has been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor;

e.     Neither ThreeSixty nor Tranzon has been within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor;

f.     Neither ThreeSixty nor Tranzon represents an individual or entity which holds an interest adverse to the Debtor;

g.     None of ThreeSixty's or Tranzon's principals or employees is related to the United States Trustee or the Bankruptcy Judge in this case; and,

h.     Neither ThreeSixty nor Tranzon has a fee sharing arrangement, understanding, or compensation sharing arrangement with any other entity, and no part of their compensation will be paid to any other entity, other than the buyer's premium as set forth herein.

6.     I have verified that both ThreeSixty and Tranzon have Blanket Bonds in the amount of $25,000 each.  I have verified that a copy of the Blanket Bonds have been filed with the Clerk of the Bankruptcy Court (Los Angeles Division) and sent to the United States Trustee.

7.     Prior to any sale, all deposits by bidders will be paid directly to me to be held prior to the sale closing. My current blanket bond in place totals $5,000,000. In the event deposits paid to me by potential bidders exceed that amount, I will obtain a separate bond for the amount exceeding $5,000,000. Furthermore, if and when there is a successful purchaser, such that purchase funds are to be deposited into escrow, I will ensure that my escrow company will secure, as needed, a bond for the amount of the purchase proceeds to be deposited from the successful bidder.

8.     Before filing this Motion, I provided a copy of it including all exhibits to the Office of the United States Trustee for review.  I am informed and believe that the Office of the United States Trustee has reviewed and approved the amount of the Blanket and Individual Bonds, and has no objection to the proposed employment of ThreeSixty and Tranzon as auctioneers on the terms of employment set forth in the Motion and the Proposal, **Exhibit 1.**

2761351

9.    I am requesting a hearing on shortened notice on this Motion in order to maximize marketing of the Property for the benefit of the estates. I am informed by the Auctioneers that a sale in approximately 45 days will be ideal to sufficiently market the Property, however the Auctioneers intend to begin their marketing efforts immediately. If they are required to wait a minimum of 17 days to begin their efforts, the sale process will be unnecessarily delayed. Thus, I have filed this motion concurrently with an application for hearing on shortened notice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 1st day of February, 2022, at Los Angeles, California.

_____
Sam S. Leslie

2761351

## DECLARATION OF JEFFREY J TANENBAUM

I, Jeffrey J Tanenbaum, declare as follows:

1.      I am the president of ThreeSixty Asset Advisors, and am submitting this declaration in support of the motion of Sam Leslie, chapter 11 trustee, for an order approving his employment of ThreeSixty and Tranzon as auctioneers in this case. I have personal knowledge of the facts contained in this declaration and am authorized to make this declaration on behalf of ThreeSixty.

2.      All initial capitalized terms used but not defined herein have the same meanings ascribed to them in the motion.

3.      I have substantial experience in managing and implementing asset disposition solutions for financial institutions, insolvency professionals, Fortune 1000 companies and small businesses.  Prior to joining ThreeSixty in 2020, I served as both executive and auctioneer at numerous national auction/liquidation firms.  During my time at those firms, I oversaw live and online auction sales of nearly $1 billion of machinery, technological equipment, furnishings, collectibles, wholesale inventories and real property.  I studied business at the University of Southern California and received my Certified Auctioneers Institute (CAI) designation at Indiana University through the National Auctioneers Association.

4.      A true and correct copy of my CV is attached hereto as **Exhibit 2.**

5.      Neither ThreeSixty nor any of its principals or employees has any connection with the Trustee, insiders, creditors, any other party or parties in interest, their respective attorneys and accountants, or any person employed in the Office of the United States Trustee, other than in its capacity as Auctioneer for other bankruptcy matters on behalf of the Trustee and/or other trustees.

6.      ThreeSixty is not a pre-petition creditor, an equity security holder, or an insider of the Debtor.  ThreeSixty is not and was not an investment banker for any outstanding security of the Debtor.  ThreeSixty has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

7.      ThreeSixty is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any

2761351

security of the Debtor.  ThreeSixty does not represent an individual or entity which holds an interest adverse to the Debtor.  None of ThreeSixty's principals or employees is related to the United States Trustee or the Bankruptcy Judge in this case.

8.    A true and correct copy of the ThreeSixty Blanket Bond is attached hereto as **Exhibit 3.** The original is on file with the bankruptcy court clerk.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this _1st_ day of February, 2022, at ___Evergreen___, ___Colorado___.

Jeffrey J. Tanenbaum

2761351

# DECLARATION OF MICHAEL C. WALTERS

I, Michael C. Walters, declare as follows:

1.    I am the regional president of Tranzon Asset Strategies, and am submitting this declaration in support of the motion of Sam Leslie, chapter 11 trustee, for an order approving his employment of ThreeSixty and Tranzon as auctioneers in this case. I have personal knowledge of the facts contained in this declaration and am authorized to make this declaration on behalf of Tranzon.

2.    All initial capitalized terms used but not defined herein have the same meanings ascribed to them in the motion.

3.    I have been active in the auction and appraisal business throughout the west and southwest since 1973. I have managed the sale of real and personal property at auction, conducted on-site appraisals and provided full brokerage services to government agencies, individual investors and lenders in the disposition of real property and major business assets.

4.    In addition to a Bachelor of Business Administration degree from the University of North Texas, I completed graduate studies in Real Estate Appraisal and Finance at Southern Methodist University and graduate courses in Environmental Issues in Real Estate. I am currently a licensed California real estate broker, DRE #01146795.

5.    In the field of auctions and appraisals, I am a graduate of the Certified Auctioneers Institute (C.A.I.), a designation program through the Auction Marketing Institute (A.M.I.). I also have held an Accredited Senior Appraiser Designation (A.S.A.) with the American Society of Appraisers. I am currently a licensed and bonded auctioneer in California. A true and correct copy of my CV is attached hereto as **Exhibit 2.**

6.    Neither Tranzon nor any of its principals or employees has any connection with the Trustee, insiders, creditors, any other party or parties in interest, their respective attorneys and accountants, or any person employed in the Office of the United States Trustee.

7.    Tranzon is not a pre-petition creditor, an equity security holder, or an insider of the Debtor.  Tranzon is not and was not an investment banker for any outstanding security of the Debtor. Tranzon has not been within three (3) years before the date of the filing of the petition herein, an

2761351

investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

8.      Tranzon is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.  Tranzon does not represent an individual or entity which holds an interest adverse to the Debtor.  None of Tranzon's principals or employees is related to the United States Trustee or the Bankruptcy Judge in this case.

9.      A true and correct copy of the Tranzon Blanket Bond is attached hereto as **Exhibit 4.** The original is on file with the bankruptcy court clerk.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this _1st_ day of February, 2022, at Irvine, California.

Michael C. Walters

2761351

## AUCTION LISTING AGREEMENT

This Agreement is made this __2nd__ day of February, 2022, between ThreeSixty Asset Advisors, LLC and WFS, Inc. dba Tranzon Asset Strategies ("Broker/Auctioneer") and Sam S. Leslie, solely as Trustee of the chapter 11 bankruptcy estate of Coldwater Development LLC jointly administered with Lydda Lud, LLC ("Seller", "Trustee").

1. **Description of Services.** Subject to bankruptcy court approval, Seller hereby retains Broker/Auctioneer to act as his agent and to sell the assets of the above-referenced bankruptcy estate (hereinafter referred to as "the Properties") at public auction (hereinafter referred to as "the Sale"). Broker/Auctioneer hereby agrees to use its professional skill, knowledge and experience to the best advantage of both parties, but makes no representations or warranties regarding the outcome of the Sale, except to the extent as may be provided for in this Agreement. Broker/Auctioneer is representing the Seller in this transaction and owes all fiduciary responsibilities to Seller unless otherwise dictated by state law.

2. **Description of Property to be Sold.** Properties consist of, but are not limited to, six parcels totaling 65.63 acres located in the Beverly Hills area of Los Angeles, California, and further described on the attached Schedule "A", which may be offered for sale in individual parcels, as an entirety or in any combination thereof, as Seller and Broker/Auctioneer mutually determine.

3. **Sale Location.** The Sale will be held in a live event at a mutually agreed-upon location with simulcast online bidding available for remote bidders.

4. **Sale Date.** The Sale will be conducted approximately 30-45 days following Court approval or in case of postponement, shall take place on a later date agreeable to both parties. The Sale Date shall be timed to occur within one week of the hearing date scheduled to approve the outcome of the Sale.

5. **Title.** Seller agrees to convey legal title to the Properties by Quitclaim Deed to Buyer(s), as-is, where-is, with no representations or warranties, subject to (a) current property taxes, (b) covenants, conditions and restrictions of record, (c) easements of record, (d) local, state and federal laws, ordinances or governmental regulations, including but not limited to, building and zoning laws, ordinances and regulations, now or hereafter in effect relating to the Properties.

6. **Escrow.** Upon conclusion of the auction of the Properties, escrow through a third-party escrow company ("Escrow") shall be opened and Seller agrees to promptly deposit therein all documents and instruments necessary to transfer legal title to Buyer(s). All proceeds from the sale of the Properties will be held by Escrow and will be distributed based on instructions from Seller following Court approval. Any commissions due Broker/Auctioneer will be paid directly from Escrow.

7. **Buyer Default.** In the event any Buyer fails to complete the purchase by reason of any default of Buyer and Buyer's deposit is retained as liquidated damages, Broker/Auctioneer shall be reimbursed for any actually incurred costs and shall be paid 50% of the net deposit after any cancellation and escrow fees, up

Seller and Broker/Auctioneer acknowledge receipt of copy of this page, which constitutes Page 1 of 6 Pages.
Seller Initials ( ___ )    Broker/Auctioneer Initials ( ___ ) ( _mw_ )



tran**z**on

# EXHIBIT 1

to a maximum of the amount of compensation Broker/Auctioneer would have received if the Buyer closed Escrow. In the event that the Properties are sold by Broker/Auctioneer at a later date, any commissions or costs previously paid to Broker/Auctioneer will be a credit against any subsequent payments on a sale that closes, except to the extent that expenses are required to be incurred again. Broker/Auctioneer is not responsible for collecting any monies on behalf of the Seller.

8. **Advertising.** Broker/Auctioneer shall be authorized to use the bankruptcy case information in any advertising placed by Auctioneer. Seller agrees that Broker/Auctioneer can place the Properties on any multiple listing services and real estate websites it deems appropriate.

9. **Insurance.** Seller shall carry and maintain full fire (including extended coverage), vandalism, burglary, theft and liability insurance on the Properties until the Properties are delivered to Buyer(s), or otherwise Seller shall assume full responsibility for said risks should Seller decline to provide such insurance. Seller hereby waives any rights of subrogation against Broker/Auctioneer with respect to any of the above-mentioned risks. Seller further agrees to defend, indemnify and hold harmless Broker/Auctioneer from any and all liability arising from injury to the Properties, person or other entities in any way associated with this Agreement, or the Properties sold pursuant to this Agreement, occurring other than by intentional wrongful act or negligence of Broker/Auctioneer or persons employed by Broker/Auctioneer.

10. **Hazardous Waste.** Seller agrees that in the event the Properties contain any environmental hazards, toxic waste or types of hazardous material in any form whatsoever, Broker/Auctioneer shall not be responsible for containment, storage or removal of such materials.

11. **Sale Documentation.** Seller agrees to supply Broker/Auctioneer with all documents in his possession which are reasonably necessary for the sale and marketing of the Properties.

12. **Suggested Opening Bids.** The Properties will have suggested opening bid amounts, or in the event a stalking horse bidder is selected and approved, then a required overbid amount; however, the auction sale is subject to confirmation of the Seller in his sole and absolute discretion, who is selling solely in his capacity as Trustee and the high bidder(s) only becomes the Buyer(s) upon confirmation and acceptance by the Seller and the Court following conclusion of the auction. The Seller is unconditionally authorized to decline to confirm the sale of one or more parcels, and to cancel the sale of one or more parcels to a high bidder.

13. **Sale Confirmation.** Seller reserves the right to accept or decline any and all bids in his sole and absolute discretion; each sale will be subject to court confirmation, which Trustee shall schedule to occur within 24-48 hours of the scheduled sale date

Seller and Broker/Auctioneer acknowledge receipt of copy of this page, which constitutes Page 2 of 6 Pages.
Seller Initials ( ____ )    Broker/Auctioneer Initials ( ____ )



14. **Exclusivity.** Seller hereby grants to Broker/Auctioneer the exclusive authorization and right to sell the Properties commencing upon Court approval of the Application to Employ Broker/Auctioneer and ending 120 days following the published auction date or through the close of any open escrow(s), whichever occurs first. Seller agrees to refer to Broker/Auctioneer all inquiries that Seller may receive during the term of this Agreement or prior to the signing of this Agreement.

15. **Marketing and Sale Expenses and Retainer.**  Seller agrees to marketing and sale expenses not to exceed $25,000.00 and a base fee / retainer of $30,000.00, collectively as an administrative cost of the estate payable upon availability of funds into the estate or no later than the transfer of title(s) to the buyer(s).  The marketing and sale expenses shall be passed on at cost and shall include advertising, marketing materials and sale venue costs.  The retainer shall cover Broker/Auctioneer's administrative costs of the Sale and shall be due and payable regardless of the outcome of the Sale.

16. **Commission.** A 3% Buyer's Premium will be charged to the winning bidder at the auction sale. This fee is based on the highest bid received at the auction sale. The Buyer's Premium will be added to the high bid and this amount will represent the total sale price of the Properties. The Buyer's Premium will be distributed as follows:

    **i.**    Buyer's Broker: In the event the Properties are purchased by a third-party who is represented by a properly registered broker, the buyer's broker will be paid 1% of the high bid, to be paid from the Buyer's Premium through escrow, and the remaining 2% of the Buyers' Premium shall be paid to Broker/Auctioneer. In the event that a third-party buyer is not represented by a broker, 1% of the Buyer's Premium will be rebated back to the estate and the remaining 2% of the Buyers' Premium shall be paid to Broker/Auctioneer.

    **ii.**    Stalking Horse: In the event Seller accepts a Stalking Horse bid by February 8, 2022, and the Stalking Horse purchases all Properties for the amount of their Stalking Horse Bid, no Buyer's Premium shall apply to the Stalking Horse Bid, and a fee of .5% of the purchase price will be payable to Broker/Auctioneer at closing. Alternatively, in the event the Stalking Horse Bidder purchases less than all six Properties at the Sale, or the Stalking Horse is the high bidder at the Sale for a price higher than the Stalking Horse Bid, then the Stalking Horse Bidder shall be assessed the full Buyer's Premium which shall be distributed as per Section 16i.

Following approval of any or all sales by the bankruptcy court, Broker/Auctioneer will be paid the associated commission through escrow at closing.  Broker/Auctioneer agrees that no commission will be due Broker/Auctioneer or buyer's broker for sales not confirmed by the Seller and the bankruptcy court.

Seller and Broker/Auctioneer acknowledge receipt of copy of this page, which constitutes Page 3 of 6 Pages.
Seller Initials (＿＿＿) Broker/Auctioneer Initials (＿＿＿＿ *mw* )

 THREESIXTY
ASSET ADVISORS

tranzon

17. **Broker/Auctioneer Warranties.** Broker/Auctioneer hereby warrants and represents that it does not have an interest materially adverse to the interest of the Seller by reason of any direct or indirect relationship to or interest in the Properties or any anticipated auction buyers, except to the extent that auction buyers may have previously bid or purchased from past auctions.

18. **Signing Authority.** Subject to bankruptcy court approval, Seller warrants that he is authorized to sign this Agreement on behalf of the bankruptcy estate.

19. **Entire Agreement.** This Agreement contains the entire agreement of the parties, relating to the rights granted and the obligations assumed herein. Any oral representation or modifications concerning this Agreement shall be of no force or effect unless contained in a subsequent written modification signed by the party to be charged. Where the meaning of a word in this Agreement so dictates, all references to the plural shall include the singular, all references to gender shall include either or both genders as well as the neuter.

20. **Jurisdiction.** The Sale is under the jurisdiction of the United States Bankruptcy Court, Central District of California, Chapter 11 Case No. 2:21-bk-10335-BB. If suit is instituted against any party hereto for any cause or matter arising from or in connection with any rights or obligations of the parties under this Agreement, the sole jurisdiction and venue for such action shall be in the above-referenced Court.

21. **Seller Capacity.** Seller is signing solely in his capacity as a Chapter 11 Trustee and is not personally liable for any performance.

Seller and Broker/Auctioneer acknowledge receipt of copy of this page, which constitutes Page 4 of 6 Pages.
Seller Initials ( ) Broker/Auctioneer Initials ( ) ( *mw* )



**tranzon**

In witness thereof, the parties hereto have executed this Agreement.

Seller:

Bankruptcy Estate of Coldwater Development LLC

Jointly Administered with Lydda Lud, LLC

By: _____

    Sam S. Leslie, Chapter 11 Trustee

_____

    02/02/2022

Date

Broker/Auctioneer:

WFS, Inc. dba Tranzon Asset Strategies

By: _____

    Michael C. Walters, President

2-2-2022
_____

Date

ThreeSixty Asset Advisors, LLC

By: _____

    Jeff Tanenbaum, President

    2/2/2022
_____

Date

Seller and Broker/Auctioneer acknowledge receipt of copy of this page, which constitutes Page 5 of 6 Pages.



tranzon

Schedule "A"

| Los Angeles County APN | OWNER | LOT SIZE |
| --- | --- | --- |
| 4387-022-001 | Lydda Lud LLC | 5.87 |
| 4387-021-018 | Coldwater Development LLC | 5.7 |
| 4387-021-019 | Coldwater Development LLC | 21.29 |
| 4387-020-009 | Lydda Lud LLC | 8.97 |
| 4387-020-001 | Lydda Lud LLC | 18.88 |
| 4387-022-002 | Lydda Lud LLC | 4.92 |
| | Total Acres | 65.63 |

Seller and Broker/Auctioneer acknowledge receipt of copy of this page, which constitutes Page 6 of 6 Pages.
Seller Initials (  ) Broker/Auctioneer Initials (  ) ( *mw* )



tran**z**on

# Jeff Tanenbaum, CAI, CES
## PRESIDENT



BIOGRAPHY:

Jeff Tanenbaum entered the Auction profession in 1985. Since that time Tanenbaum has emersed himself in all aspects of the business from operations and marketing, to auctioneering, valuation, business development and strategic planning. Tanenbaum's unique qualifications include his ability to see value where others may not, and to craft solutions that maximize value and create a win-win result.

Tanenbaum started his career as employee number one at Great American Group (now a division of B. Riley), helping to grow the company until his departure as Executive Vice President in 1994. In 1995, Tanenbaum launched Remarketing Associates which became Tiger Remarketing Services in 2010 and later Tiger Commercial & Industrial. Tanenbaum served as President of Tiger Commercial & Industrial and Executive Managing Director of Tiger Capital Group until his departure in 2019.

Over his 35-year tenure in the auction industry, Tanenbaum has participated in thousands of engagements, and personally managed over 1,000 auction sale events, working on behalf of such companies as Apple Computer and Mobil Oil, such financial institutions as Wells Fargo and PNC Bank, and such agencies as the US Bankruptcy Court and the FDIC.

Tanenbaum has served both the auction industry and his community, serving on the boards of the Industrial Auctioneers Association and the Southern California Auctioneers Association, as well as on the Boys & Girls Club Board for over 15 years. Tanenbaum has also conducted 100's of benefit auctions, raising millions of dollars for numerous causes throughout the United States.

SELECT PROJECTS:

**Apple Computer, Inc.**
50+ Auctions of Refurbished Products

**ITT Technical Institute (Bankruptcy Estate)**
Consolidation and Auctions of Over 100 Locations

**Prime Equip**
3 Month Liquidation Construction Equipment Rental Fleet

**Broadcom**
Worldwide Auctions of Excess Electronic Test Equipment

**EXPERIENCE:**

2020 - Present
ThreeSixty Asset Advisors, LLC
President

2010 - 2019
Tiger Capital Group
Executive Managing Director

1995 – 2010
Remarketing Associates, Inc.
President

2002 – 2005
Tranzon Asset Strategies
Executive Vice President

1985 - 1994
Great American Group
Executive Vice President

**MEMBERSHIPS / CERTIFICATIONS:**

Designee, Certified Auctioneers Institute (CAI)

Designee, Certified Estate Specialist (CES)

Officer, Industrial Auctioneers Association (former)

Officer, Southern California Auctioneers Association (former)

Member, National Auctioneers Association

Education, University of Southern California

## PROFESSIONAL QUALIFICATIONS

Michael C. Walters, President
Tranzon Asset Strategies
Direct: 949.439.4750
mwalters@tranzon.com

As President of Tranzon Asset Strategies, Mike  Walters possesses a wide scope of reference pertaining to nearly all property types and possesses the ability to successfully market real estate and capital assets. Over the past 35 years, Mr. Walters has provided professional services for the state and federal courts, lending institutions, developers, the private sector, and a number of government agencies, including the Federal Deposit Insurance Corporation (F.D.I.C.), Resolution Trust Corporation (R.T.C) and the U. S. Small Business Administration (U.S.S.B.A.). His experience includes the sale of real property capital assets and financial instruments at auction, as well as appraisals and full brokerage services.

Significant assignments include:

- Zion's Bank NA – Representation of the lender in the disposition of REO properties nationwide, with sales to date in excess of $75,000,000
- Wells Fargo CMG – Ongoing representation of the lender in the disposition of REO properties nationwide, and marketed foreclosure auctions for environmentally and operationally challenged properties
- GE Commercial Finance – Representation of the lender in the disposition of REO properties nationwide
- USBank – Representation of the lender in the disposition of REO properties in the Western United States
- Sunwest Bank – Representation of the lender in the disposition of REO properties in Southern California; also worked with the lender on marketed foreclosure auctions for various properties
- Key Bank – Representation of the CMBS group in the disposition of real estate, including the marketed foreclosure auction of Residence Inn Manhattan Beach for $17,000,000
- Orange County Business Bank – Representation of the lender in the disposition of REO properties, including the sale of Speedway Commerce Center in North Las Vegas
- Home Paradise Investment Center LLC et al - Representation of the Court-Appointed Receiver in the disposition of residential properties throughout Southern California, with sales in excess of $8,000,000
- Capital Cove Bancorp, LLC et al - Representation of the Court-appointed Receiver in the disposition of properties nationwide, including 30+ residential properties, with sales in excess of $9,800,000
- Orange County Superior Court vs. Michael Petronella et al - Representation of the Court in an insurance fraud case, with the disposition of various assets across California, including residential and commercial real estate; luxury vehicles; construction equipment; high-end jewelry and luxury goods
- FutureGen Company et al - Representation of the Court-appointed Receiver in the disposition of residential properties in the Las Vegas metro area
- United States Bankruptcy Court in the matter of Saboa Entertainment LP - Employed by the court to handle the disposition of a state-of-the-art entertainment and recording facility in Burbank, California, with a final sale price of $5,650,000

- Crean Family Trust - Representation of the trust for the sale of properties located in Newport Beach, California, including a waterfront restaurant property that sold for $6,300,000; and a waterfront compound on 2+ acres that sold for $10,600,000
- United States Bankruptcy Court in the matter of Monterey Capital Co. LLC - Employed by the Court to handle the disposition of a 197-acre development parcel in Flagstaff, Arizona, with a final sale price of $5,700,000
- Secured Capital Investments LLC, et al - Representation of the Court-appointed Receiver in the disposition of commercial and residential properties nationwide,  with sales to date in excess of $4,200,000
- Federal Deposit Insurance Corporation - Contract with FDIC for sale of over 125 branch locations nationwide
- Danny Pang / PEM Group et al – Ongoing representation of the Court-appointed Receiver in the disposition of properties nationwide, with sales to date in excess of $50,000,000; properties include 351 California St. in San Francisco, which sold for $35,000,000; and the Joe's Crab Shack waterfront property in Newport Beach, which sold for $8,000,000+
- The Carolina Development Company, Inc. et al – Managed the sale of a 768-acre master planned development project outside of Dallas, TX for $35,000,000
- Orange County Superior Court Complex Litigation Case in the matter of National Investors Financial, Inc. – Representation of the Court-appointed Receiver in the disposition of development properties throughout California, with sales in excess of $30,000,000
- Olympus Real Estate Partners – Representation of the owner in the sale of Rosario Resort on Orcas Island, Washington

In addition to a Bachelor of Business Administration degree in Finance and Real Estate from the University of North Texas, Mike completed graduate studies in Finance and Real Estate at Southern Methodist University's Cox School of Business as well as graduate courses in Environmental Issues in Real Estate at Texas A & M University.

Mike Walters has the following professional affiliations and designations:

Licensed Real Estate Broker and Auctioneer
American Bankruptcy Institute
Mortgage Bankers Association
California Bankruptcy Forum
California Receivers Forum
Turnaround Management Association
CCIM-Candidate
National Association of Realtors
Auction Marketing Institute
National and Western States Auctioneers Associations

BOND NO. **999108939**                                  $25,000.00

                                                        COPY

### SURETY BOND

KNOW ALL MEN BY THESE PRESENTS, THAT, ThreeSixty Asset Advisors, LLC

herein after called the Principal (Auctioneer), and The Ohio Casualty Insurance Company
hereinafter called Surety, are held and firmly bound unto the United States of America and/or the
United States Trustee hereinafter called the Obligee in the aggregate sum of Twenty-five

Thousand Dollars And Zero Cents

_____ Dollars ($25,000.00 ) for the payment whereof to the Obligee, the Principal
and Surety hereby bind themselves, their successors and assigns, jointly and severally, firmly by
these presents.

WHEREAS, the Principal and Obligee will from time to time conduct auctions on behalf of
the United States Trustee and/or the United States Bankruptcy Court, and as a condition to perform
such auctions the United States Trustee requires that a surety bond be posted to secure the faithful
performance of such auctions.

NOW, THEREFORE, the condition of this obligation is such that if the above bound
Principal shall faithfully perform the duties of an auctioneer and account for all monies received
and in all things comply with the requirements of the United States Trustee and/or the United
States Bankruptcy Court, then this obligation shall be null and void.

PROVIDED, HOWEVER, that the Surety or Principal may cancel this bond by giving
thirty (30) days prior notice in writing to the Obligee such notice to be given by certified mail.
Such cancellation shall not affect any liability incurred under this bond prior to the effective date of
such cancellation.

LIABILITY UNDER THIS BOND SHALL COMMENCE ON THE 10th _____ DAY OF
May _____ , 2021 _____ .

SIGNED, SEALED AND DATED THIS 10th    DAY OF May _____ , 2021 _____ .


ATTEST:

                                        ThreeSixty Asset Advisors, LLC
                                        Principal (Auctioneer)

                                        By _____

                                        The Ohio Casualty Insurance Company
                                        Surety

                                        By _____
                                        Jayne B. Maloney - Attorney in Fact

LMS-21040e 06/19

**EXHIBIT 3**                                           **25**

This Power of Attorney limits the acts of those named herein, and they have no authority to
bind the Company except in the manner and to the extent herein stated.



The Ohio Casualty Insurance Company

# POWER OF ATTORNEY

Principal: ThreeSixty Asset Advisors, LLC
Agency Name: E. R. Munro & Company                                                           Bond Number: 999108939
Obligee: United States of America
Bond Amount: ($25,000.00        ) Twenty-five Thousand Dollars And Zero Cents

**KNOW ALL PERSONS BY THESE PRESENTS:** that The Ohio Casualty Insurance Company, a corporation duly organized under the laws of the State of New Hampshire (herein collectively called the "Company"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint **Jayne B. Maloney** in the city and state of **Pittsburgh, PA**, each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested to by the secretary of the Company in their own proper persons.

**IN WITNESS WHEREOF,** this Power of Attorney has been subscribed by an authorized officer or official of the Company and the corporate seal of the Company has been affixed thereto this 26th day of September, 2016.

The Ohio Casualty Insurance Company



By: _____
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA
COUNTY OF MONTGOMERY    ss

On this 26th day of September, 2016, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of The Ohio Casualty Insurance Company and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as duly authorized officer.

**IN WITNESS WHEREOF,** I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.

Commonwealth of Pennsylvania - Notary Seal
Teresa Pastella, Notary Public
Montgomery County
My commission expires March 28, 2025
Commission number 1126044
Member, Pennsylvania Association of Notaries

By: _____
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-law and Authorizations of The Ohio Casualty Insurance Company, which is now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS:** Section 12. Power of Attorney.
Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**Certificate of Designation –** The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization –** By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature or electronic signatures of any assistant secretary of the Company or facsimile or mechanically reproduced or electronic seal of the Company, wherever appearing upon a certified copy of any power of attorney or bond issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, of The Ohio Casualty Insurance Company do hereby certify that this power of attorney executed by said Company is in full force and effect and has not been revoked.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed the seals of said Company this  10th    day of  May                    ,  2021    .



By: _____
Renee C. Llewellyn, Assistant Secretary

Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

For bond and/or Power of Attorney (POA) verification inquiries, please call 610-832-8240 or email HOSUR@libertymutual.com.

IN THE USBC                                  Bond No. 0659326
REGION 16 CENTRAL & SOUTHERN CALIF

KNOW ALL MEN BY THESE PRESENTS:  That we, TRANZON ASSET STRATEGIES
of the state of TRAL & SOUTHERN CALIF as Principal, and the
INTERNATIONAL FIDELITY INSURANCE COMPANY, as surety, are held and
firmly bound unto the United States of America as obligee in the
penal sum of Twenty Five Thousand  and No/100 ($25,000.00) Dollars
lawful money of the United States to be made, we bind ourselves, our
heirs, executors, administrators, successors or assigns, jointly and
severally, by these presents.

        THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, that whereas,
the Principal will from time to time conduct auctions on behalf of
the United States Bankruptcy Court, REGION 16 CENTRAL & SOUTHERN
CALIF and as a condition to perform such auctions the United States
Bankruptcy Court, REGION 16 CENTRAL & SOUTHERN CALIF requires that a
surety bond be posted to secure the faithful performance of such
auctions.

        NOW THEREFORE, if the said Principal shall faithfully perform
the duties of an auctioneer and account for all monies received and
in all things comply with the requirements of the United States
Bankruptcy Court, REGION 16 CENTRAL & SOUTHERN CALIF, appertaining
thereto, then this obligation to be void, otherwise to remain in
full force and effect.

        PROVIDED, that this bond shall be deemed continuous in form and,
that regardless of the number of years this bond shall continue or be
continued in force and of the number of premiums that shall be
payable or paid,  the surety shall not be liable hereunder for a
larger amount, in the aggregate, than the amount of this bond.

        This bond may be terminated at any time by the surety upon
sending notice in writing, by certified mail, to the obligee with
whom this bond is titled and at the expiration of thirty (30) days
from the mailing of be relieved from any liability for any acts or
omissions of the principal subsequent to said date.

        Signed, sealed, and effective this 25TH day of JUNE, 2014.

                                        TRANZON ASSET STRATEGIES


                          BY: _____
                              PRINCIPAL

                     INTERNATIONAL FIDELITY INSURANCE COMPANY

                          By _____
                             CATHERINE C. KEHOE, Attorney-in-fact


                              **EXHIBIT 4**                    **27**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.

A true and correct copy of the foregoing document entitled:   **CHAPTER 11 TRUSTEE'S MOTION FOR ORDER: APPROVING RETENTION OF THREESIXTY ASSET ADVISORS, LLC AND WFS INC. DBA TRANZON ASSET STRATEGIES AS AUCTIONEERS PURSUANT TO 11 U.S.C. § 327 AND APPROVING AUCTIONEER'S PROPOSED COSTS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF SAM S. LESLIE, JEFFREY J. TANENBAUM, AND MICHAEL C. WALTERS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**\*\*JUDGE'S COPY UNDER 25 PAGES IS SUSPENDED (GENERAL ORDER 21-05).**

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **February 2, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Eryk R Escobar     eryk.r.escobar@usdoj.gov
- M Douglas Flahaut     flahaut.douglas@arentfox.com
- Eric J Fromme     efromme@tocounsel.com, stena@tocounsel.com
- Asa S Hami     ahami@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com; cblair@sulmeyerlaw.com;ahami@ecf.inforuptcy.com
- Christopher J Harney     charney@tocounsel.com, stena@tocounsel.com
- Sam S Leslie (TR)     sleslie@trusteeleslie.com, trustee@trusteeleslie.com;C195@ecfcbis.com
- Daniel A Lev     dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- William N Lobel     wlobel@tocounsel.com, jokeefe@tocounsel.com;sschuster@tocounsel.com
- Aram Ordubegian     ordubegian.aram@arentfox.com
- Ronald N Richards     ron@ronaldrichards.com, morani@ronaldrichards.com
- David Seror     dseror@bg.law, ecf@bg.law
- Annie Y Stoops     annie.stoops@arentfox.com, yvonne.li@arentfox.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Dylan J Yamamoto     dylan.yamamoto@arentfox.com
- Robert M Yaspan     court@yaspanlaw.com, tmenachian@yaspanlaw.com

☐    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **February 2, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Sheri Bluebond
United States Bankruptcy Court
255 East Temple Street, Suite 1534
Los Angeles, CA  90012-3332

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 2, 2022 | NIKOLA A. FIELDS | /s/ Nikola A. Fields |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**