Daniel A. Lev (CA Bar No. 129622)
  dlev@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Ronald Richards (CA Bar No. 176246)
  ron@ronaldrichards.com
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, California 90213
Telephone:  310.556.1001
Facsimile:  310.277.3325

Attorneys for Give Back, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>COLDWATER DEVELOPMENT, LLC,<br><br>        Debtor. | Case No. 2:21-bk-10335-BB<br><br>Chapter 11<br><br>Jointly Administered With:<br>Case No. 2:21-bk-10336-BB<br><br>**GIVE BACK LLC'S RESPONSE TO CHAPTER 11 TRUSTEE'S MOTION TO (I) APPROVE AUCTION AND BID PROCEDURES REGARDING THE SALE OF REAL PROPERTY; AND (II) SET SCHEDULING FOR A MOTION TO APPROVE THE SALE OF REAL PROPERTY**<br><br>DATE:    March 2, 2022<br>TIME:     10:00 a.m.<br>PLACE: Courtroom "1539" |
| In re<br><br>LYDDA LUD, LLC,<br><br>        Debtor. | |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

DAL 2733533v1

1    ☒    Affects Both Debtors

2

3    ☐    Affects Coldwater Development,
           LLC only

4    ☐    Affects Lydda Lud, LLC only

5

6        Give Back, LLC ("Give Back") hereby submits "Give Back LLC's Response

7 to Chapter 11 Trustee's Motion to (I) Approve Auction and Bid Procedures Regarding the

8 Sale of Real Property; and (II) Set Scheduling for a Motion to Approve the Sale of Real

9 Property" (the "Response"), in response to the "Chapter 11 Trustee's Notice of Motion

10 and Motion to (I) Approve Auction and Bid Procedures Regarding the Sale of Real

11 Property; and (II) Set Scheduling for a Motion to Approve the Sale of Real Property;

12 Memorandum of Points and Authorities and Declarations of Sam S. Leslie and David

13 Seror in Support Thereof" (the "Motion"), filed by Sam S. Leslie (the "Trustee"), the duly

14 appointed, qualified, and acting chapter 11 trustee for the estates of the jointly

15 administered debtors Coldwater Development, LLC ("Coldwater") and Lydda Lud, LLC

16 ("Lydda" and together with Coldwater, the "Debtors"), and represents as follows:

17 **I.**

18 **PREFATORY STATEMENT**

19        Give Back appreciates the time and effort the Trustee has put into

20 attempting to market the Debtors' six lots, however, these cases have run their course -

21 either the six lots should be sold for an amount necessary to pay Give Back's allowed

22 claim, in full, or relief from stay must finally be granted.  Just since these cases were filed

23 in January 2021, millions of dollars of interest have accrued on Give Back's debt while, at

24 the same time, Give Back has incurred untold attorneys' fees protecting its collateral and

25 preventing Mohamed Hadid from using straw buyers to perpetrate a fraud on this Court.

26 Only after evidence of Hadid's outright theft of estate property was brought to the Court's

27 attention was a real fiduciary finally placed in charge.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Now, after more than a year in chapter 11, the Trustee is on the precipice of

2    either finding a qualified bidder or conceding that the lots do not have the highly inflated

3    value that the Debtors have always proclaimed.  The reality is, unless there is a qualified

4    bidder, the scales now need to tip in favor of the lender.  This is even more crucial since,

5    for the first time since this Court ordered adequate protection payments to guard against

6    the accrual of property taxes and fees on past due property taxes, the Debtors and Hadid

7    have failed to deposit the funds into Give Back's account.  This has now created another

8    sense of urgency as Give Back, in accordance with the Court's prior orders, can

9    immediately move for relief from stay since it is now getting primed by the County of Los

10    Angeles.

11    So while the Trustee pursues an expedited sale to non-tainted third-parties,

12    Give Back only consents to a sale free and clear of its undisputed first priority lien to the

13    extent the sales proceeds are in an amount sufficient to pay the total amount of its

14    allowed secured claim as of the expected closing date, which has increased markedly

15    since the date its proof of claim was filed.  In addition, a reserve of $350,000 over the

16    amount of Give Back's claim must be established to cover the anticipated attorneys' fees

17    and accrued interest that Give Back will incur if any portion of its claim is disputed.

18    If, however, this Court cannot ensure that a sale to a third party bidder was

19    the result of a transparent, non-collusive bidding process, it should not allow the sale to

20    proceed at all.  The Court already was witness to one failed bid for the Coldwater lots,

21    which Give Back demonstrated was rife with fraud, direct lies to the Court, and concealed

22    facts.  In order to mitigate against the submission of any further fraudulent bids, the

23    bidding procedures should require that the Trustee produce certain documents and

24    discovery relative to any potential bidder prior to the sale.  If those documents are not

25    produced and Give Back cannot conduct an independent investigation into any potential

26    buyer, Give Back reserves the right to object to the sale.

27    And, to reiterate, since Give Back's single deed of trust covers all six lots, if

28    the Trustee only elicits offers for a portion of the six lots, Give Back only consents to a

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  sale to the extent the aggregate purchase price exceeds the amount of its allowed

2  secured claim, which is estimated to be well in excess of $33,000,000 as of a proposed

3  April or May closing date.[1]  However, without Give Back's express consent, there is no

4  avenue for the Trustee to obtain approval of a sale free and clear of Give Back's lien

5  under 11 U.S.C. § 363(f), unless the sales price obtained exceeds not only the amount

6  Give Back contends it is owed, but exceeds the aggregate amount of *all* claims held by

7  creditors who hold a lien or security interest in the lots, including senior tax liens.

8      Importantly, any credit bid (which the Trustee acknowledges can be made

9  pursuant to 11 U.S.C. § 363(k)) cannot and should not be interpreted as Give Back's

10  implied consent to an auction process that would result in a sales price to a third party in

11  an amount less than the full amount of Give Back's claim.  See In re Arch Hospitality,

12  Inc., 530 B.R. 588, 591 (Bankr. W.D.N.Y. 2015) ("Consent and failure to object are not

13  synonymous."); In re DeCelis, 349 B.R. 465, 468-69 (Bankr. E.D. Va. 2006) (co-owner's

14  silence and failure to object to a sale free and clear of his interest of real estate held with

15  debtor as tenant in common was not consent to the sale); In re Roberts, 249 B.R. 152

16  (Bankr. W.D. Mich. 2000) (language of Section 363(f)(2) supports requirement of express

17  consent; express consent cannot be implied as there may be another reason for failure to

18  object).

19      In addition, Section 363(f)(3) restricts the Trustee's efforts to argue that the

20  Court can approve a sale price which is less than the amount of Give Back's claim.  As

21  such, even though the Trustee has, for the moment, agreed that the amount of Give

22  Back's undisputed claim for purposes of its credit bid is $27,265,211.02, it is clear that, in

23  this Circuit, the price requirement under Section 363(f)(3) means that the amount to be

24  received from the sale must exceed the face amount due on account of all encumbrances

[1] Give Back will endeavor to provide the Trustee with a more up to date estimate of its secured claim.  In fact, shortly after his appointment, Give Back provided the Trustee a detailed statement evidencing its claim and Give Back has been completely cooperative with the Trustee and his counsel.

1   on the property to be sold.  <u>Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)</u>, 391

2   B.R. 25 (B.A.P. 9th Cir. 2008) ("… we join those courts cited above that hold that §

3   363(f)(3) does not authorize the sale free and clear of a lienholder's interest if the price of

4   the estate property is equal to or less than the aggregate amount of all claims held by

5   creditors who hold a lien or security interest in the property being sold.").  See also <u>In re</u>

6   <u>WDH Howell, LLC</u>, 298 B.R. 527 (D.N.J. 2003) (reversing bankruptcy court order allowing

7   debtors in possession to sell environmentally contaminated property for less than

8   aggregate amount due on account of mortgage claim as Section 363(f)(3) requires that

9   the sale price must exceed the face amount of claims secured by liens on the property);

10  <u>In re Perroncello</u>, 170 B.R. 189 (Bankr. D. Mass. 1994) (value, for purposes of Section §

11  363(f)(3), means face value, rather than fair market value, of lien claim, and court denied

12  debtor's motion to sell free and clear where sale price was less than total claims against

13  property).

14          Although a secured creditor can voluntarily agree to reduce the amount

15  owed on account of its lien on property being sold free and clear, or enter into an

16  agreement to carve-out monies from sale proceeds in favor of the estate, thus mooting

17  the issue of whether the price exceeds the lien amount, Give Back has not extended

18  these accommodations to the Trustee.  Thus, absent a sale price in excess of the

19  allowed amount of Give Back's claim, as of the date of an expected closing, the Trustee

20  has no ability to, in essence, "cram-down" a sale over Give Back's objection by forcing it

21  to accept only the "undisputed" amount of its lien.  In other words, the value of Give

22  Back's collateral determined by bids tendered at an auction has no bearing on the

23  measure of Give Back's allowed claim for purposes of a Section 363(f) sale.

24          In an effort to resolve this lingering issue, Give Back repeatedly requested

25  that the Debtors support their objection to nearly $6,000,000 of its claim, but no

26

27

28

1  substantive response was ever received.[2]  The Trustee also has not provided Give Back

2  with any support justifying his reliance on the Debtors' disputed claim number.  Thus, the

3  ongoing assertion that the undisputed amount of Give Back's claim is $27,265,211.02

4  simply is untenable.  The Debtors' calculations were based on an unsupported and

5  flawed interpretation of certain of the underlying loan documents, specifically the Note

6  and Forbearance Agreement.

7        If the amount of Give Back's claim is not resolved prior to any auction, Give

8  Back reserve all rights, and is not waiving any objections once an actual sale motion is

9  filed to confirm a buyer or buyers.  Therefore, if the Court permits an out-of-court auction

10 to proceed, it should only do so with the express understanding that a sale can be

11 approved only if the net sale price, exclusive of taxes, fees, commissions, and other

12 charges, exceeds the amount of Give Back's claim as calculated by Give Back, not the

13 Trustee or the Debtors, putting aside whether the sale price must also be in an amount

14 sufficient to satisfy the numerous other liens of record.  In other words, if the bidding

15 stops at any dollar amount which is short of Give Back's allowed claim, and Give Back

16 does not consent, the Court cannot approve the sale under any circumstances, and Give

17 Back must then be granted relief from stay.[3]

18

19

_____

20 [2] As noted, Give Back will endeavor to provide a more complete statement of its claim amount by the
21 hearing date.  Give Back reserves all rights to oppose any claim objection with all relevant evidence and argument and reserves the right to assert any and all other amounts that may due and owing under the
22 Loan Documents.

23 [3] Give Back continues to assert that unless the sales price exceeds the aggregate face value of all liens of record pursuant to Section 363(f)(3), this Court cannot approve a sale of all or a portion of the six lots free
24 and clear of Give Back's lien.  As noted, Give Back is not consenting to a sale pursuant to Section 363(f)(2) unless the full amount of its claim is paid, in full.  In addition, (i) to date, the Trustee has not (and cannot)
25 assert that the six lots can be sold free and clear of Give Back's lien under applicable non-bankruptcy law pursuant to Section 363(f)(1), (ii) to date, the Trustee has failed to make even the most basic evidentiary
26 showing demonstrating that there is a bona fide dispute as to the validity of Give Back's lien as required by Section 363(f)(4), and (iii) there simply is no identifiable legal or equitable proceeding under California law
27 under which Give Back could be compelled to accept a money satisfaction of its interest in the lots as would be required by Section 363(f)(5).  As such, Give Back reserves all rights with respect to the foregoing and will address these issues, if necessary, when the Trustee files his motion to confirm the sale or sales.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    In addition, since a sale predicated on Give Back's consent can only occur

2  if the eventual sale price exceeds the amount of Give Back's lien, the provisions of 11

3  U.S.C. § 506(b) dictate that Give Back is entitled to post-petition interest, fees, and costs.

4  Section 506(b) specifically provides that:

5        To the extent that an allowed secured claim is secured by

6        property the value of which, after any recovery under

7        subsection (c) of this section, is greater than the amount of

8        such claim, there shall be allowed to the holder of such

9        claim, interest on such claim, and any reasonable fees,

10       costs, or charges provided for under the agreement or State

11       statute under which such claim arose.

12  11 U.S.C. § 506(b).

13    In general, Section 506(b) provides for the allowance of fees (including

14  attorney's fees), costs and charges provided that (i) the claim is an allowed, secured

15  claim; (ii) the creditor holding the claim is oversecured; (iii) the fees, costs, and charges

16  are provided for by the agreement, or state statute, under which the creditor's claim

17  arose; and (iv) the fees, costs, and charges are reasonable.  See Eastman Nat'l Bank v.

18  Sun 'N Fun Waterpark LLC (In re Sun 'N Fun Waterpark LLC), 408 B.R. 361, 366 (B.A.P.

19  10th Cir. 2009); In re SNTL Corp., 380 B.R. 204 (B.A.P. 9th Cir. 2007); In re Karmai, 316

20  B.R. 544 (B.A.P. 9th Cir. 2004); In re Alpine Group, Inc., 151 B.R. 931 (B.A.P. 9th Cir.

21  1993).

22    Here, the Trustee seeks approval to sell all or a portion of the six lots for an

23  as of yet undetermined amount, subject to any potential overbids over the initial

24  designated highest bids.  Assuming the ultimate sale price exceeds the aggregate

25  amount of all liens of record, but, at a minimum, the senior tax liens and the allowed

26  amount of Give Back's claim, plus any other additional fees, interest, or charges properly

27  allowed, which it must in order for the Trustee to satisfy the requirements of Section

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

DAL 2733533v1                    7

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  363(f), Give Back is oversecured and entitled to the payment of its post-petition interest,

2  fees, and costs.

3        Thus, in the event Give Back is forced to litigate the amount of its claim or a

4  portion thereof with the Trustee, those fees and costs are recoverable under Section

5  506(b).  So too is the post-petition interest incurred on the unpaid disputed portion of

6  Give Back's claims.  Therefore, if the Trustee elects to dispute a portion of Give Back's

7  claim, Give Back requests that the Court order the Trustee to hold back in escrow an

8  amount equal to the disputed amount, plus an additional $300,000 to cover any

9  incremental post-petition interest, attorneys' fees, and costs incurred by Give Back.  As

10  further adequate protection, Give Back requests that the sale order expressly provide that

11  Give Back's lien will continue to attach to the net sales proceeds in the event any portion

12  of its claim is not paid on closing.

13        With respect to the actual bidding procedures, Give Back urges the Court to

14  follow the bidding procedures Give Back agreed to with Debtors last year.  As applied to

15  this auction process, those bidding terms would be as follows:

16        •       Give Back retains its statutory right to credit bid under 11 U.S.C. §

17  363(k).  In the event Give Back elects to invoke its statutory right to credit bid, its bid shall

18  be comprised of an amount up to $29,265,211.02, which represents the undisputed

19  amount of its secured claim, plus any additional amount which Give Back adds to the

20  amount of its bid.[4]

21        •       In the event Give Back is the successful bidder in an amount greater

22  than $29,265,211.02, the cash component of Give Back's bid shall be placed in a

23  segregated DIP or trustee account pending further order of the Bankruptcy Court and

24  subject to all liens, judgments, and encumbrances valid and existing upon sale closing.

25  _____

26  [4] This amount is $2,000,000 higher than the minimum amount agreed to by the Debtors and Give Back last
27  year, since that "undisputed" amount was predicated on an August 31, 2021, closing date.  Since that time,
as expected, at least an additional $2,000,000 in interest and other fees has accrued on the debt.

28

1    •      Give Back shall be entitled to invoke its statutory right to credit bid

2    under 11 U.S.C. § 363(k) at the time of the auction.

3    •      Give Back shall be deemed a qualified bidder and will not be

4    required to deliver a bid deposit in order to participate in the auction as a qualified bidder.

5    •      Give Back has no objection to a $250,000 registration fee, however,

6    the bidding procedures should be modified to provide that any party qualified to bid must

7    increase its initial bid deposit to the total amount of $2,000,000 no later than seven (7)

8    calendar days prior to the auction.[5]

9    •      Consistent with Give Back's earlier points, the bidding procedures

10   and any solicitation package must disclose that Give Back alleges that its secured claim

11   exceeds $33,000,000.[6]

12   •      Consistent with Give Back's earlier points, the bidding procedures

13   and any solicitation package must disclose that any party submitting a bid for less than all

14   or all six lots in an amount that is less than the full amount of Give Back's alleged

15   secured claim may not actually obtain title unless Give Back consents.

16   •      Consistent with Give Back's earlier points, the bidding procedures

17   and any solicitation package must disclose that the Trustee will hold back in escrow(s) an

18   amount equal to the disputed amount of Give Back's claim, plus an additional $300,000

19   to cover any incremental post-petition interest, attorneys' fees, and costs incurred by

20   Give Back.

21   •      Not later than twenty-four hours after the Trustee deems a potential

22   bidder to be a qualified bidder, the Trustee shall deliver to Give Back, through its counsel

23   _____

24   [5] A $250,000 deposit is simply insufficient and would encourage a party to submit illusory bids for the sole
     purpose of forcing other parties, including Give Back, to increase their bids.  It would be worth it for Hadid
25   to lose $250,000 through a straw-buyer to get a credit on the now $29,000,000 judgment Give Back has
     against him personally.

26   [6] As noted, Give Back does not want to leave the impression with any bidder that its claim is only
     $29,265,211.02 and this is all the Trustee needs to clear in order to transfer title.  Give Back simply wants
27   to ensure that all bidders are not misled as to the amount of Give Back's claim, while preserving the
     Trustee's right to object to any portion of the claim exceeding $29,265,211.02.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    of record Ronald Richards and Daniel A. Lev, via email, to the extent provided by the

2    qualified bidder, the following information: (a) the name and contact information for the

3    qualified bidder, including the members, managers, officers, and/or directors; (b) a valid

4    business address for the qualified bidder; (c) sufficient contact information for the

5    qualified bidder and all of its members, mangers, officers, and/or directors to enable Give

6    Back to serve discovery requests on such parties; (d) the source of the name of the good

7    faith deposit paid by the qualified bidder including the originating bank name and name

8    on the account of the depositor; (e) the operative purchase agreement or offer; and (f) a

9    description of all connections between Mohamed Hadid, on the one hand, and the

10   qualified bidder, its members, managers, officers, and/or directors.

11          Finally, Give Back does not believe there is a compelling reason for the

12   Court to depart from its prior ruling limiting the scenarios where Give Back would be

13   forced to pay a 3% buyer's premium.  In fact, judicial estoppel should prevent this change

14   to the auctioneer's employment.

15          As the Court will recall, just three weeks ago, the Court approved the

16   Trustee's retention of auctioneers after he assured the Court that, in the event Give Back

17   invoked its statutory right to credit bid, a buyer's premium would only be charged on any

18   cash portion that exceeded the value of its credit bid.  For example, if Give Back's

19   secured claim was $33,000,000, and it acquired the estates' lots by credit bidding all or a

20   portion of its claim, no buyer's premium would be assessed.  If, however, Give Back

21   elected to submit a bid in excess of its $33,000,000 claim, for example, $35,000,000,

22   then it would be responsible for a 3% buyer's premium on the $2,000,000 difference.

23          Here is the relevant exchange:

24          THE COURT: Not -- I think you mean the same thing, but you said it

25   differently, so I'll try it again.  It's not on your cash -- your credit bid portion, whatever we

26   figure out that number, whether that's a consensual number or whether that's a number

27   that I say, here's what you're allowed to credit bid.  That part doesn't under any

28   circumstance get subject to a buyer's premium.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1        MR. RICHARDS: Okay.

2        THE COURT: The only part that we get subject to a buyer's premium is if

3    you're exceeding that and the amount by which you exceed that -- your credit bid, which

4    would be an actual cash bid, that -- you'd end up paying a buyer's premium on the actual

5    cash portion, not on the credit bid portion.  Make sense?

6        MR. RICHARDS: Yes.[7]

7        Now, despite the fact that two representatives from the auctioneers and the

8    Trustee were present at the prior hearing, the Trustee claims that his counsel was

9    mistaken, and Give Back will, in fact, be required to pay a buyer's premium on the entire

10   amount of its bid.  This Court was clear - no part of the statutory credit bid amount would

11   be subject to a buyer's premium.  Counsel's alleged error has nothing to do with the

12   Court's view on the subject, and the Trustee should be judicially estopped from

13   attempting to circumvent the prior ruling through this Motion.

14       The Trustee's rationale for this sudden change is that "it was ultimately

15   determined that it would be fairer to other bidders and provide a more competitive bid

16   process if Give Back were required to pay a Buyer's Premium on its entire successful bid

17   not just the difference."  Why is this the case?

18       There certainly is no articulated reason in the Trustee's declaration showing

19   how infringing on Give Back's statutory credit bid rights will make for a more competitive

20   bid process.  To date, there has yet to be a single qualified bidder despite more than

21   twelve months (much longer if the pre-petition period is considered) of aggressive

22   marketing by the Debtors and now the Trustee.  And other than Mohamed Hadid's

23   unsubstantiated allegations, there is absolutely no evidence that Give Back has engaged

24   in any conduct meant to chill bidding.  Yet, that is what the Trustee insinuates when he

25

26   _____

27   [7] A rue and correct copy of the Transcript of February 9, 2022, Proceedings is attached hereto as Exhibit "A" and incorporated herein by reference.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  targets Give Back and seeks to impose what is, in essence, a *de facto* 11 U.S.C. § 506(c)

2  surcharge.[8]

3          As a reminder, the right to credit bid under 11 U.S.C. § 363(k) is an

4  important safeguard that ensures against the undervaluation of the secured claim at an

5  asset sale.  Credit bidding "allows the secured creditor to bid for its collateral using the

6  debt it is owed to offset the purchase price[,]" which "ensures that, if the bidding at the

7  sale is less than the amount of the claim the collateral secures, the secured creditor can,

8  if it chooses, bid up the price to as high as the amount of its claim."  Quality Props. Asset

9  Mgmt. Co. v. Trump Va. Acquisitions, LLC, 2012 WL 3542527, at *7 n. 13 (W.D. Va. Aug.

10  16, 2012).  Forcing Give Back to pay a 3% premium on the entirety of any credit bid, not

11  just the difference between its secured claim and the ultimate purchase price, infringes

12  on Give Back's statutory right and is meant to keep Give Back from participating in the

13  bidding process.

14          The Trustee certainly could have opted to retain a highly experienced

15  broker, like the Debtors did when they retained Hilton & Hyland.  If the Trustee chose that

16  path, then a commission would have been paid to the brokers from the sales proceeds,

17  assuming there were bids above any credit bid submitted by Give Back.[9]  Instead, the

18  Trustee has opted to liquidate the lots through a less conventional auction process.

19  While Give Back defers to the Trustee's business judgment, it should not be forced to

20  bear the burden of his choice of liquidators by being compelled to pay a 3% buyer's

21  premium on its credit bid.

22

23

24  _____

25  [8] Generally, in order to surcharge expenses pursuant to Section 506(c), the Trustee would have to prove
his expenses were reasonable, necessary, and provided a quantifiable benefit to Give Back.  Debbie

26  Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.), 255 F.3d
1061, 1068 (9th Cir. 2001).

27  [9] The commission due under the Debtors' listing agreement with Hilton & Hyland was $50,000 upon closing
of a sale of the two Coldwater lots or a 6% commission upon closing of a sale of all six lots.

28

Give Back, therefore, urges the Court to deny the Motion to the extent it imposes a *de facto* surcharge on Give Back, and limit the buyer's premium due to the auctioneers to any amount over and above Give Back's statutory credit bid amount.

## II.

## CONCLUSION

Based on the foregoing, Give Back respectfully requests that the Motion only be granted in a manner consistent with this Response, and for such other and further relief as the Court deems just and proper under the circumstances.

DATED: February 28, 2022        **Sulmeyer**Kupetz
                                A Professional Corporation


By: /s/ *Daniel A. Lev*
    Daniel A. Lev
    Attorneys for Give Back, LLC

DATED: February 28, 2022        Law Offices of Ronald Richards & Associates, APC


By: /s/ *Ronald Richards*
    Ronald Richards
    Attorneys for Give Back, LLC

**EXHIBIT A**

1              UNITED STATES BANKRUPTCY COURT

2          CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

3                          --oOo--

4  In Re:                    ) Case No. 2:21-bk-10335-BB
                             )
5  COLDWATER DEVELOPMENT, LLC ) Chapter 11
                             )
6                            ) Los Angeles, California
   Debtor,                   )
7  ----------------------------X February 9, 2022
                               10:00 A.M.
8
                                CHAPTER 11 TRUSTEE'S
9                               MOTION FOR ORDER:
                                APPROVING RETENTION OF
10                              THREESIXTY ASSET ADVISORS,
                                LLC AND WFS, INC. DBA
11                              TRANZON ASSET STRATEGIES
                                AS AUCTIONEERS PURSUANT TO
12                              11 U.S.C. §327 AND
                                APPROVING AUCTIONEERS'
13                              PROPOSED COSTS

14
                TRANSCRIPT OF ZOOM PROCEEDINGS
15          BEFORE THE HONORABLE SHERI BLUEBOND
                UNITED STATES BANKRUPTCY JUDGE
16

17  APPEARANCES:

18  For Mountain Recreation   THEODORE A. COHEN, ESQ.
    and Conservation          ELLEN MARTIN, ESQ.
19  Authority:                Sheppard Mullin Richter &
                                 Hampton, LLP
20                            333 South Hope Street, 48th Flr.
                              Los Angeles, California  90071
21
    For the Trustee:          DAVID SEROR, ESQ.
22                            JESSICA L. BAGDANOV, ESQ.
                              BG Law, LLP
23                            21650 Oxnard Street, #500
                              Woodland Hills, California  91367
24
    Proceedings produced by electronic sound recording;
25  transcript produced by transcription service.

```
 1   For Give Back, LLC:        RONALD N. RICHARDS, ESQ.
                                Law Office of Ronald Richards &
 2                                 Associates
                                PO Box 11480
 3                              Beverly Hills, California   90213

 4                              DANIEL A. LEV, ESQ.
                                SulmeyerKupetz
 5                              333 South Grand Avenue
                                Suite #3400
 6                              Los Angeles, California   90071

 7   For Interested Buyer:      IRA D. KHARASCH, ESQ.
                                Pachulski Stang Ziehl Jones
 8                              10100 Santa Monica Boulevard
                                13th Floor
 9                              Los Angeles, California   90067

10   For Santa Monica           MITCHELL ELLIOTT RISHE, ESQ.
     Mountain Conservancy:       Office of the Attorney General
11                              300 South Spring Street
                                Suite #1702
12                              Los Angeles, California   90013

13   Court Recorder:            Shemainee Carranza
                                U.S. Bankruptcy Court
14                              Central District of California
                                Edward R. Roybal Federal Building
15                                 and Courthouse
                                255 East Temple Street, Room #1639
16                              Los Angeles, California   90012
                                (855) 460-9641
17
     Court Transcriptionist:    Ruth Ann Hager, C.E.T.**D-641
18                              Ben Hyatt Certified Deposition
                                   Reporters
19                              17835 Ventura Boulevard
                                Suite #310
20                              Encino, California   91316

21

22

23

24

25
```

P 888.272.0022  F 818.343.7119



www.benhyatt.com

0015

Page                                                                    3

1    LOS ANGELES, CALIFORNIA, WEDNESDAY, FEBRUARY 9, 2022

2                        12:49 P.M.

3                         --oOo—

4            THE COURT:  Okay.  #10.00, Coldwater Development,

5    LLC, Chapter 11 Trustee's motion for an order approving

6    retention of Threesixty Asset Advisors.  Let's see.  Is

7    there anything else in Coldwater?  No.

8            All right.  So let me take appearances on #10.00.

9    Mr. Cohen, Ted Cohen, would you make an appearance, please?

10           MR. COHEN:  Yes, good afternoon, Your Honor.  Ted

11   Cohen and also Ellen Martin of Sheppard Mullin on behalf of

12   Mountain Recreation and Conservation Authority.

13           THE COURT:  Okay.  Thank you.  And, all right, so

14   we've got both of you.

15           David Seror, are you here?  There you are.

16           MR. SEROR:  (No audible response.)

17           THE COURT:  You're on mute.  Mr. Seror, you're on

18   mute.  Still mute.  There you go.

19           MR. SEROR:  Apologize.

20           THE COURT:  Okay.

21           MR. SEROR:  David Seror appearing on behalf of

22   Sam Leslie, the Chapter 7 Trustee.

23           THE COURT:  All right.  Whom I see here somewhere

24   on the screen, too.  There you are, Mr. Leslie, thank you.

25           Jessica Bagdanov, make your appearance.

Page                                                                    4

1              MS. BAGDANOV:  Good afternoon, Your Honor.

2    Jessica Bagdanov, BG Law on behalf of Sam Leslie, the

3    Chapter 7 Trustee.

4              THE COURT:  Okay.  Thank you.

5              Jeff Tanenbaum, would you make your appearance,

6    please?

7              MR. TANENBAUM:  Yes.  Jeff Tanenbaum, president

8    of Threesixty Asset Advisors.

9              THE COURT:  All right.  Thank you.  All right.

10             Michael Waters, did you want to make an

11   appearance?

12             MR. WATERS:  Mike Waters, Tranzon Asset

13   Strategies.

14             THE COURT:  Okay.  And Ira Kharasch, did you want

15   to make an appearance?

16             MR. KHARASCH:  Hi, Your Honor.  Ira Kharasch of

17   Pachulski Stang on behalf of interested buyer.

18             THE COURT:  Interested buyer.  Okay.  And Michael

19   Rishe, do you want to make an appearance?

20             MR. RISHE:  Good afternoon, Your Honor.  Mitchell

21   Rishe, Deputy Attorney General, for the Santa Monica

22   Mountains Conservancy and interested party.

23             THE COURT:  All right.  Anyone else whose name I

24   didn't call who wants to make an appearance on #10.00?

25             MR. LEV:  Yes, Your Honor.  Good afternoon.

Page                                                                    5

1  Daniel Lev, SulmeyerKupetz, on behalf of Give Back, LLC.

2          THE COURT:  All right.  Thank you.

3          Anyone else?

4          MR. RICHARDS:  Good afternoon, Your Honor.

5  Ronald Richards, Law Offices of Ronald Richards &

6  Associates, APC, on behalf of Give Back, LLC.

7          THE COURT:  All right.  Thank you.

8          Anyone else?

9          (No response.)

10         All right.  We'll get the right stack here.

11 Okay.  All right.  So the tentative says, is the Court

12 correct in understanding that there'll be another motion

13 seeking approval of sale procedures and that this motion is

14 merely to authorize the employment of the auctioneers; what

15 will the compensation formula be if the properties are sold

16 to a credit bidder.

17         So, yeah, I was trying to figure out how many

18 different motions because sometimes the motion to approve

19 the auctioneer is also the sales procedures, but it sounded

20 like maybe there was a separate motion -- I don't know.

21 Help me out here.

22         MR. SEROR:  Yes, Your Honor.  There's going to be

23 a separate sales procedures --

24         THE COURT:  Okay.

25         MR. SEROR:  -- bid procedures motion filed.

Page                                                                          6

1              THE COURT:  Okay.

2              MR. SEROR:  It's taken us frankly longer than it

3    should have to get to this point with the employment

4    application.  We had some issues with the U.S. Trustee's

5    Office that we have to work through.  Fortunately, those

6    have been resolved and we're able to proceed now with the

7    application that's before the Court.

8              THE COURT:  Okay.

9              MR. SEROR:  We will be filing a separate bid

10   procedures motion to lay out what the bid procedures will

11   be.

12             With regard to the second part of the Court's

13   tentative dealing with the credit bid, we do intend to seek

14   either a consent from Give Back or a court hearing

15   concerning the amount of the Give Back claim that can be

16   used to credit bid.  We have some issues about some of the

17   attorney's fees, some of the interest charged, et cetera,

18   so we will be working through that and that's why we've not

19   been able to proceed with the credit bid -- I'm sorry --

20   with the bid procedures motion to date, but we will be

21   doing that.

22             THE COURT:  Okay.  Well, assume we figure out

23   what the number is, how is the compensation calculated --

24             MR. SEROR:  Okay.

25             THE COURT:  -- if it ends up being --

Page                                                                    7

1              MR. SEROR:  If Give Back bids up to its allowed

2       credit bid, then the auctioneer will be compensated on a

3       fee basis stated in the application and the reimbursement

4       of marketing expenses as listed in the application.  No

5       further compensation will be paid.

6              In the event Give Back --

7              THE COURT:  Wait, wait.  What is that?  You just

8       said it will be what's in the application.  What does that

9       mean?  That's --

10             MR. SEROR:  Oh, I'm sorry.  The application

11      says -- just one second.  The application says that it

12      seeks --

13             THE COURT:  Its prior broker, stalking horse --

14      no, no, no.  That's something else.

15             MR. SEROR:  I believe it's $30,000 as a fee and

16      $25,000 in marketing costs.  I may have the two numbers

17      reversed but I believe that's what the application seeks.

18             THE COURT:  Okay.  So if it's -- let's say they

19      bought it all of the credit bid and there was no cash over

20      the credit bid, so they bought it within the credit bid.

21      They only get the $30,000 retainer, if you will, plus the

22      25K in costs.  And there'd be no buyer's premium?

23             MR. SEROR:  That's correct.

24             THE COURT:  Okay.  And then if they -- once we

25      figured out what that number is, what -- call that X, if

Page                                                                            8

1  they bid -- in order to get the property if they had to bid

2  X plus a couple hundred thousand dollars, but they still

3  had the successful bidder, then how does the fee work?

4           MR. SEROR:  Then the buyer's premium provisions

5  of the application would kick in and Give Back would have

6  to pay the full buyer's premium based on the amount that

7  its successful bid exceeds the credit bid amount -- allowed

8  credit bid amount.

9           THE COURT:  Only the cash increment of that.

10 They pay the buyer --

11          MR. SEROR:  The delta.

12          THE COURT:  Yeah, okay, but they don't have to go

13 back to dollar one to pay the buyer's premium.  Okay.

14          MR. SEROR:  That's correct.

15          THE COURT:  Is there also a commission on that or

16 that's -- that's just -- well, the buyer's broker, but

17 that's another quest -- that's --

18          MR. SEROR:  There is no separate commission.

19 It's just the buyer's premium as set forth in the

20 application.

21          THE COURT:  Okay.  All right.  Does that answer

22 your question, Mr. Richards or Mr. Lev, as to how that

23 would work?

24          MR. RICHARDS:  Just so I'm clear, the buyer's

25 premium would be on whatever the Court ruled would be the

Page                                                                    9

1   amount above the agreed-upon amount or credit bid, so it

2   wouldn't be on the full, let's say, hypothetical 35

3   million-dollar price; it would just be on whatever the

4   overbid would be?

5           THE COURT:  Not -- I think you mean the same

6   thing, but you said it differently, so I'll try it again.

7           It's not on your cash -- your credit bid portion,

8   whatever we figure out that number, whether that's a

9   consensual number or whether that's a number that I say,

10  here's what you're allowed to credit bid.  That part

11  doesn't under any circumstance get subject to a buyer's

12  premium.

13          MR. RICHARDS:  Okay.

14          THE COURT:  The only part that we get subject to

15  a buyer's premium is if you're exceeding that and the

16  amount by which you exceed that -- your credit bid, which

17  would be an actual cash bid, that -- you'd end up paying a

18  buyer's premium on the actual cash portion, not on the

19  credit bid portion.  Make sense?

20          MR. RICHARDS:  Yes.

21          THE COURT:  Okay.  Okay.  So I don't think we had

22  any other objections other than that, did we?  Is there any

23  other issues we --

24          MR. SEROR:  I don't believe so, Your Honor.

25          THE COURT:  Okay.  All right.  So subject to that

Page                                                              10

1  clarification, which I don't know if you want to help --

2  maybe we ought to put some language in the -- put some

3  language in your order to clarify that.  I think I have an

4  order.  Let's see.  I have --

5          MR. SEROR:  We'll submit an order with this

6  language in it --

7          THE COURT:  Okay.

8          MR. SEROR:  -- to make sure there's no confusion.

9          THE COURT:  Good.  Excellent.  All right.  So

10 that will be --

11         MR. RICHARDS:  Can that be a consent?  Can

12 counsel send that to Mr. Lev and I to approve, please?

13         THE COURT:  Right.  Yeah, run the form of the

14 order by Messrs. Lev and Richards, okay?

15         MR. SEROR:  Be happy to.  Your Honor, there's one

16 more thing.

17         THE COURT:  Um-hum.

18         MR. SEROR:  If I may.

19         THE COURT:  Um-hum.

20         MR. SEROR:  The Court continued a status

21 conference and a hearing on Give Back's relief from stay

22 motion to March 16th.  Frankly, we had thought that we'd be

23 able to have this application approved a couple weeks ago.

24 Again, we had some issues with the Trustee's Office.

25         Is it possible to have the continued hearing on

Page                                                                    11

1   March 30th instead of March 16th?  The extra two weeks

2   would really help us with the marketing.

3           THE COURT:  It's fine with me.  Is there

4   objection to that or are the parties all on board with

5   that?

6           (No response.)

7           I'm not hearing any objections.

8           Okay.  So March 16 we have Coldwater Development.

9   Okay.  On March 16 I've got a scheduling case management

10  conference and I've got a motion for relief from stay.  So

11  you want to move both of those to March 30?

12          MR. SEROR:  Yes, please.

13          THE COURT:  Okay.  All right.  So -- now so the

14  only sort of caveat to this is you're not going to see a

15  notice and you're not going to see anything until

16  March 16 -- the March 16 tentative gets posted, at which

17  point you'll see the notation I'm making right now.  Today

18  is the 9th.  At hearing held this date court continued

19  hearing to March 30, 2022 at request of Trustee off

20  calendar for February 9 -- no, for February 6 -- March

21  16th.  March 16.  Okay.  So now let's take this.  Okay.

22  Let me see.  Also Coldwater.  Okay.  Okay.  All right.  So

23  I have made the appropriate entries on that.

24          MR. SEROR:  Thank you very much, Your Honor.

25          THE COURT:  Thank you.

Page                                                              12

1  (End at 12:59 p.m.)

2                      *  *  *  *  *  *  *

3          I certify that the foregoing is a correct

4  transcript from the electronic sound recording of the

5  proceedings in the above-entitled matter.

6

7     *Ruth Ann Hager*

8  _____    Date:  2/11/2022

9  RUTH ANN HAGER, C.E.T.**D-641

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **GIVE BACK LLC'S RESPONSE TO CHAPTER 11 TRUSTEE'S MOTION TO (I) APPROVE AUCTION AND BID PROCEDURES REGARDING THE SALE OF REAL PROPERTY; AND (II) SET SCHEDULING FOR A MOTION TO APPROVE THE SALE OF REAL PROPERTY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>February 28, 2022</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**See Attached ECF List**

⊠ Service information continued on attached page.

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>February 28, 2022</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Via FedEx Overnight**
The Honorable Sheri Bluebond
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 28, 2022 | Cheryl Caldwell | */s/Cheryl Caldwell* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

<u>**ADDITIONAL SERVICE INFORMATION**</u> (if needed):

## 1. <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>

- **Jessica L Bagdanov**    jbagdanov@bg.law, ecf@bg.law
- **Theodore A Cohen**    tcohen@sheppardmullin.com, amontoya@sheppardmullin.com
- **Eryk R Escobar**    eryk.r.escobar@usdoj.gov
- **M Douglas Flahaut**    flahaut.douglas@arentfox.com
- **Eric J Fromme**    efromme@tocounsel.com, stena@tocounsel.com
- **Asa S Hami**    ahami@sulmeyerlaw.com,
  pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;ahami@ecf.inforuptcy.com
- **Christopher J Harney**    charney@tocounsel.com, stena@tocounsel.com
- **Sam S Leslie (TR)**    sleslie@trusteeleslie.com, trustee@trusteeleslie.com;C195@ecfcbis.com
- **Daniel A Lev**    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- **William N Lobel**    wlobel@tocounsel.com, jokeefe@tocounsel.com;sschuster@tocounsel.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **David Seror**    dseror@bg.law, ecf@bg.law
- **Annie Y Stoops**    annie.stoops@arentfox.com, yvonne.li@arentfox.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Dylan J Yamamoto**    dylan.yamamoto@arentfox.com
- **Robert M Yaspan**    court@yaspanlaw.com, tmenachian@yaspanlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**