DAVID SEROR – Bar No. 67488
JESSICA L. BAGDANOV – Bar No. 281020
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:   (818) 827-9099
Email:       dseror@bg.law
             jbagdanov@bg.law

Attorneys for Sam Leslie,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>COLDWATER DEVELOPMENT, LLC,<br>a California limited liability company,<br><br>Debtor. | Case No. 2:21-bk-10335-BB<br><br>Chapter 7<br><br>Jointly Administered with<br>Case No. 2:21-bk-10336-BB |
| In re<br><br>LYDDA LUD, LLC, a California limited liability company,<br><br>Debtor. | **CHAPTER 7 TRUSTEE'S MOTION TO:**<br><br>**(I) APPROVE SALE OF PROPERTY FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS, AND ENCUMBRANCES, EXCEPT AS OTHERWISE PROVIDED IN THE PURCHASE CONTRACT, PURSUANT TO 11 U.S.C. §§ 363(b) AND (f);** |
| ☒  Affects both Debtors.<br><br>☐  Affects Coldwater Development LLC only.<br><br>☐  Affects Lydda Lud, LLC only.<br><br>Debtors. | **(II) DETERMINE THAT BUYER IS ENTITLED TO PROTECTION PURSUANT TO 11 U.S.C. § 363(m); AND**<br><br>**(III) PROVIDE RELATED RELIEF;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF SAM S. LESLIE, MICHAEL C. WALTERS, JEFFREY J TANENBAUM AND MICHAEL EISNER IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:  March 30, 2022<br>Time: 10:00 a.m.<br>Place: Courtroom 1539 |

DOCS_LA:343007.2 31239/001

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................3

I.    INTRODUCTION ...............................................................................................................3

II.   RELEVANT BACKGROUND ...........................................................................................3

    A.    Procedural History ...................................................................................................3

    B.    Stipulation with LC Engineering Group, Inc. .........................................................4

    C.    Approval of the Employment of the Auctioneer......................................................5

    D.    Approval of the Bid Procedures...............................................................................6

    E.    The Marketing of the Property and Auction ............................................................7

III.  TERMS OF PROPOSED SALE .........................................................................................9

IV.   PROPOSED DISTRIBUTION OF SALE PROCEEDS....................................................10

V.    DISCUSSION .....................................................................................................................9

    A.    The Sale of the Property Should be Approved Because Good
          Business Reasons for the Sale Exist, the Purchase Price is Fair and
          Reasonable, and the Proposed Sale is in the Best Interests of the
          Estate and its Creditors .........................................................................................12

        1.    Sound Business Purpose. ...........................................................................13

        2.    Fair and Reasonable Price..........................................................................13

        3.    Adequate Marketing...................................................................................14

        4.    Good Faith ..................................................................................................14

    B.    The Court Should Authorize the Proposed Sale Free and Clear of All
          Liens, Interests, and Encumbrances Pursuant to 11 U.S.C. § 363(f)....................15

        1.    The Property May Be Sold Free and Clear of the Mechanic's
              Lien and Department of Industrial Relations Liens Pursuant to
              Section 363(f)(2).........................................................................................16

i

## **TABLE OF CONTENTS – Continued**

Page

2. The Property May Be Sold Free and Clear of the Mechanic's Lien Pursuant to Section 363(f)(3). ...........................................16

3. The Property May Be Sold Free and Clear of the Mechanic's Lien and Department of Industrial Relations Liens Pursuant to Section 363(f)(4). ......................................................................17

C. The Court Should Find that the Buyer is a Good Faith Purchaser........................18

VI. NOTICE..........................................................................................................19

VII. CONCLUSION...............................................................................................21

DECLARATION OF SAME S. LESLIE ...........................................................23

DECLARAITON OF MICHAEL C. WALTERS .............................................29

DECLARATION OF JEFFREY J. TANENBAUM .........................................31

DECLARATION OF MICHAEL EISNER.........................................................32

DOCS_LA:343007.2 31239/001

<u>**TABLE OF AUTHORITIES**</u>

<u>Page</u>

<u>**CASES**</u>

*Big Shanty Land Corp. v. Comer Properties, Inc.*,
    61 B.R. 272, 278 (Bankr. N.D. Ga. 1985) ...................................................................13

*Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot)*,
    94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) ............................................................15, 16

*Higgins v.Vortex Fishing Systems, Inc. (In re Vortex Fishing Sys., Inc.)*,
    277 F.3d 1057, 1062 (9th Cir. 2002) ...........................................................................17

*In re Abbotts Dairies of Pennsylvania, Inc.*,
    788 F.2d 143, 147 (3rd Cir. 1986) ...............................................................................14

*In re Alpha Industries, Inc.*,
    84 B.R. 703, 705 (Bankr. Mont. 1988) …………………………………………13

*In re Alves*,
    52 B.R. 353 (Bankr. D.R.I. 1985) ................................................................................12

*In re Canyon Partnership*,
    55 B.R. 520 (Bankr. S.D. Cal. 1985) ...........................................................................13

*In re Chung King, Inc.*,
    753 F.2d 547 (7th Cir. 1985) .......................................................................................13

*In re Daufuskie Island Props., LLC*,
    431 B.R. 626, 645 (Bankr. D.S.C. 2010) .....................................................................17

*In re Elliot*,
    94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) ............................................................15, 16

*In re Ex-Cel Concrete Company, Inc.*,
    178 B.R. 198, 203 (9th Cir. BAP 1995). .....................................................................16

*In re Gabel*,
    61 B.R. 661 (Bankr. W.D. La. 1985) ...........................................................................16

*In re Gerwer*,
    898 F.2d 730, 733 (9th Cir. 1990) ...............................................................................15

*In re Kellogg-Taxe*,
    2014 WL 1016045, at *6 (Bankr. C.D. Cal. Mar.17, 2014) (*citing In re Gaylord
    Grain L.L.C.,* 306 B.R. 624, 627 (8th Cir. BAP 2004)) ...................................17

*In re Paddlewheels, Inc.*,
    2007 WL 1035151 (Bankr. E.D.La. April 2, 2007).....................................................16

*In re Pine Coast Enterprise, Ltd.*,
    147 B.R. 30 (Bankr. N.D. Ill. 1992) ............................................................................18

iii

### TABLE OF AUTHORITIES - Continued

Page

### CASES

*In re Wilde Horse Enterprises, Inc.*,
    136 B.R. 830 (Bankr. C.D. Cal. 1991)...................................................................12

*Kham and Nate's Shoes No. 2 v. First Bank*,
    908 F.2d 1351 (7th Cir. 1990) .............................................................................18

*Matter of Phoenix Steel Corp.*,
    82 B.R. 334 (Bankr. D. Del. 1987) .......................................................................12

*Mutual Life Ins. Co. of New York v. Red Oak Farms, Inc. (In re Red Oak Farms, Inc.)*,
    36 B.R. 856, 858 (Bankr. W.D. Mo. 1984)...........................................................15

*SEC v. Capital Cove Bancorp LLC*,
    2015 WL 9701154, at *7 (C.D. Cal. Oct.13, 2015).............................................17

*T.C. Investors, et al. v. Joseph, et al. (In re M Capital Corp.)*,
    290 B.R. 743 (9th Cir. BAP 2003)........................................................................18

*Walter v. Sunwest Bank (In re Walter)*,
    83 B.R. 14, 19 (9th Cir. BAP 1988) .....................................................................13

### STATUTES

11 U.S.C. § 102(1)(A).........................................................................................................19

11 U.S.C. § 363...................................................................................................................12

11 U.S.C. § 363(b)..............................................................................................................21

11 U.S.C. § 363(b)(1)....................................................................................................12, 19

11 U.S.C. § 363(f)..........................................................................................................15, 21

11 U.S.C. § 363(f)(3)..........................................................................................................16

11 U.S.C. § 363(f)(4).....................................................................................................17, 18

### RULES

Local Bankruptcy Rule 6004-1(f)......................................................................................21

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, DEBTORS AND THEIR COUNSEL OF RECORD, CREDITORS, AND ALL OTHER INTERESTED PARTIES:**

Sam S. Leslie, the duly appointed and acting chapter 7 trustee (the "Trustee") for the bankruptcy estates ("Estates") of Coldwater Development, LLC ("Coldwater Debtor") and Lydda Lud, LLC ("Lydda Debtor") (together, the "Debtors"), hereby moves (the "Motion") this Court for an order approving of and authorizing the sale (the "Sale") of real property, as described in the Purchase Contract and Receipt for Deposit, attached to the Declaration of Sam S. Leslie (the "Leslie Decl.") as **Exhibit 1** (the "Purchase Contract"), including Land, Appurtenances, Mineral Rights, Improvements, and Appurtenances (collectively, and as further described in the Purchase Contract, the "Property") to Castle Real Estate, LLC ("Buyer"), pursuant to sections 363(b)(1) and (f) of Title 11 of the United States Code (the "Bankruptcy Code"), free and clear of all interests, including without limitation, liens, claims, encumbrances, leases, tenancies and other occupancies, options to purchase, agreements to sell, rights of first refusal or first offer (or any rights similar to the foregoing), rights of redemption, pledges, and charges (collectively, the "Claims, Rights, and Encumbrances"), except as otherwise provided in the Purchase Contract, with the unassigned Claims, Rights and Encumbrances to attach to the Sale proceeds, with the same priority and rights of enforcement as previously existed.

The Trustee seeks Court approval to sell the Property to the Buyer pursuant to the terms and conditions set forth in the Purchase Contract dated March 23, 2022. The Trustee requests the Court determine that Buyer is entitled to a good faith determination pursuant to Section 363(m) of the Bankruptcy Code. In addition, the Trustee requests that the Court grant certain related relief pursuant to the Bankruptcy Code and/or applicable law.

The Motion is based upon the concurrently filed Notice of the Motion and Memorandum of Points and Authorities, the Declarations of Sam Leslie, Michael C. Walters, Jeffrey J Tanenbaum, and Michael Eisner in support thereof, all papers and pleadings on file in these bankruptcy cases, and such other evidence that may be presented at the hearing on the Motion.

1

**WHEREFORE**, the Trustee respectfully requests that the Court enter a Sale Order, substantially in the form attached to the Purchase Contract, granting the Motion and providing the relief requested above, and granting such other and further relief as the Court deems just and proper under the circumstances.

DATED:  March 25, 2022                                    BG LAW LLP


                                    By: /s/ Jessica L. Bagdanov
                                        ————————————————————
                                        David Seror
                                        Jessica L. Bagdanov
                                        Attorneys for Sam Leslie, Chapter 7 Trustee

2

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I. INTRODUCTION

By the Motion, the Trustee proposes to sell the Estate's interest in the Property to Buyer for a purchase price of $1.7 million (the "Purchase Price"), payable in cash upon close of escrow and subject to existing secured liens along with the Buyer's assumption of the Estates' pre-closing property taxes in the approximate amount of $555,000. The Sale proposed herein provides maximum benefit to the Estate as it was obtained through the Auction conducted in compliance with the Bid Procedures Order. As discussed more fully below, the Property has been extensively marketed and the Purchase Price represents the highest and best offer to purchase the Property, especially in light of the fact that the Buyer is taking title to the Property subject to several liens and encumbrances, including the roughly $33 plus million obligation to secured creditor Give Back, LLC and all unpaid property taxes. In the Trustee's business judgment, the Purchase Price provides the best return to the Estates and their creditors. Thus, the Trustee submits that the proposed Sale is in the best interest of the Estates because the consideration for the Sale of the Property is fair and reasonable, and the Estates will benefit as a result of the Sale. The Trustee also requests that the Court find that the Buyer is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and is entitled to the protections thereof.

## II. RELEVANT BACKGROUND

### A. Procedural History

On January 15, 2021 (the "Petition Date"), the Debtors filed their voluntary petitions under Chapter 11 of title 11 of the Bankruptcy Code (the "Cases"). The Cases are jointly administered pursuant to this Court's Order entered January 21, 2021 in the Cases.

The Debtors collectively own six (6) highly prized, vacant, residential estate lots, totaling approximately 65.63 acres located in the Santa Monica Mountains above Beverly Hills, California (the "Property"). More specifically, the Coldwater Debtor owns two (2) lots identified by Assessor's Parcel Number 4387-021-018 and 4387-021-019, and the Lydda Debtor owns four (4) lots identified

---

[1] Unless otherwise stated, capitalized terms in this Memorandum have the same meanings ascribed to them in the preceding Motion.

as Assessor's Parcel Number 4387-022-001, 4387-022-002, 4387-020-001, 4387-020-009.

During the time period where the Debtors were debtors in possession, the Debtors engaged Hilton & Hyland as real estate brokers who conducted extensive marketing for nearly 10 months. These efforts are detailed in the Court's record. *See* Debtors' prior sale motion [Doc. 83], as amended [Doc. 90].

On December 7, 2021, the Office of the United States Trustee "("OUST") filed its Application to Appoint a Chapter 11 Trustee in the Cases [Doc. 192], pursuant to which the OUST sought the immediate appointment of a Chapter 11 Trustee.  Thereafter, this Court granted the OUST Application and appointed the Trustee in the Cases.  On December 7, 2021, the OUST filed its Notice of Appointment of Chapter 11 Trustee [Doc. 193], and pursuant to Court order entered December 7, 2021 [Doc. 195], Sam S. Leslie was appointed Chapter 11 Trustee in the Cases.

On February 9, 2022, the Trustee filed his *Motion to Convert Cases to Chapter 7 Cases* (the "Motion to Convert") [Doc. 236].  On March 7, 2022, the Court entered an order granting the Motion to Convert [Doc. 262] and converting the Cases to ones under chapter 7.  On March 9, 2022, the Sam S. Leslie was duly appointed as interim chapter 7 trustee in the Cases [Doc. 266], in which capacity he continues to serve.

**B.      Stipulation with LC Engineering Group, Inc.**

Prior to the Petition Date, and on or about January 19, 2019, Coldwater Debtor entered into an agreement (the "Consulting Agreement") with LC Engineering Group, Inc. ("LC Engineering") for LC Engineering to provide professional civil engineering services in connection with a proposed development on the Property.  Since his appointment, the Trustee learned of the Consulting Agreement with LC Engineering and that LC Engineering had provided services to the Debtors in connection with that agreement, including creating reports, drawings, specifications, field data, notes, and related materials (the "Work Product").  The Trustee also learned that LC Engineering was in possession of the Work Product.

The Trustee contended that the Consulting Agreement provides Coldwater Debtor with a property right to the Work Production, and therefore, the Work Product was property of the Estates. The Trustee sought immediate turnover of the Work Product in connection with his marketing of the

Property, in light of the fact that the Work Product contained information material to the value of the Property. Accordingly, the Trustee demanded turnover of the Work Product by LC Engineering. In response, LC Engineering asserted that the Trustee was not entitled to turnover of the Work Product until amounts due and owing to it pursuant to the Consulting Agreement were paid. In Coldwater Debtor's bankruptcy case, LC Engineering filed Proof of Claim 7-1 (the "LC Engineering Claim") asserting an unsecured claim in the amount of $53,036.95 for professional engineering services provided by LC Engineering under the Consulting Agreement.

In order to avoid the burden and expense associated with litigation relating to turnover of the Work Product, the Trustee and LC Engineering entered into a stipulation (the "Stipulation"), which provided that LC Engineering would turn over the Work Product to the Trustee and in exchange the LC Engineering Claim would be deemed an allowed administrative expense pursuant to section 503(b) of the Bankruptcy Code and shall be paid in full upon the close of escrow of the Property, conditioned upon the availability of funds. On March 8, 2022, the Court entered an order approving the Stipulation [Doc. 264]. Accordingly, the Trustee seeks authority to pay the LC Engineering Claim through escrow pursuant to the Stipulation.

### C.    Approval of the Employment of the Auctioneer

On February 2, 2022, the Trustee filed his *Motion for Order: Approving Retention of ThreeSixty Asset Advisors, LLC and WFS Inc. dba Tranzon Asset Strategies as Auctioneers Pursuant to 11 U.S.C. § 327 and Approving Auctioneer's Proposed Costs* (the "Employment Application") [Doc. 226]. Through the Employment Application, the Trustee sought to employ ThreeSixty Asset Advisors, LLC and WFS Inc. dba Tranzon Asset Strategies (the "Auctioneer") to facilitate the marketing and eventual sale of the Property.

As set forth in the Employment Application, and as relevant here, pursuant to the Listing Agreement, the Trustee agreed to marketing and sale expenses of the Auctioneer not to exceed $25,000 and a base fee / retainer of $30,000, collectively as an administrative cost of the estate payable upon availability of funds into the Estates or not later than the transfer of title to the Buyer (the "Marketing and Sale Expense"). The Marketing and Sale Expense shall be passed on at cost and shall include advertising, marketing materials, and sale venue costs. As set forth in the

Declaration of Michael C. Walters (the "Walters Decl."), the Auctioneer spent approximately

$25,000 on advertising, marketing materials, and sale venue costs, for a total Marketing and Sale

Expense of $55,000 (when combined with the retainer of $30,000).  The Trustee requests that the

Marketing and Sale Expense be paid to the Auctioneer through escrow in accordance with the

Employment Application.

Additionally, as set forth in the Listing Agreement, a 3% buyer's premium ("Buyer's

Premium") was charged to the Buyer, who was the winning bidder at the auction sale.  This fee was

based on the highest bid received at the auction sale and was added to the Buyer's bid.  In this case,

the Buyer's offer involved $1.7 million in cash price and the assumption of the estates' significant

pre-closing property taxes, in addition to purchasing the Property subject to significant secured debt.

The Trustee assigned a value of approximately $34,175,000 to the Buyer's offer, which takes into

consideration the cash value plus the value of taking the Property subject to the secured debt. The

3% Buyer's Premium was calculated on the entire value of the offer of approximately $34,175,000.

As relevant here, the Buyer is not represented by a registered broker.  Pursuant to the

Employment Application, in the event that the Buyer is not represented by a broker, as is here,

1.75% of the Buyer's Premium will be rebated back to the Estates. The remaining 1.25% will be

paid to the Auctioneer.[2]  Accordingly, the Estate will receive approximately $1,279,557.12 from the

Sale, which constitutes the $689,320 cash price for the Property plus the Estates' share of the

Buyer's Premium in the amount of $590,237.12.  The Auctioneer's share of the Buyer's Premium is

approximately $420,442.88.

On March 7, 2022, the Court entered an order approving the Employment Application [Doc.

261], including the compensation provided for thereunder.

### D.    Approval of the Bid Procedures

On February 17, 2022, the Trustee filed his *Motion to (I) Approve Auction and Bid*

*Procedures Regarding the Sale of Real Property; and (II) Set Scheduling for a Motion to Approve*

---

[2] The Bid Procedures Motion provided that, in the event Buyer did not have a broker, 1% would be paid to the Estate with the remaining 2% paid to the Auctioneer. The Auctioneer agreed to accommodate the Estate and provide the Estate with 1.75% to maximize benefit to the Estates.

*the Sale of Real Property* (the "Bid Procedures Motion") [Doc. 248].  On March 9, 2022, the Court

entered an order granting the Bid Procedures Motion (the "Bid Procedures Order") [Doc. 267].

Pursuant to the Bid Procedures Order, the scheduling for the Auction and the Motion were/are as

follows:

| Date | Event |
|---|---|
| March 24, 2022 | Auction Sale |
| March 25, 2022 | Deadline for Trustee to file and serve motion to confirm the sale of the Property to successful bidder (the "Motion") |
| March 29, 2022 | Deadline for any parties in interest to file and serve any oppositions to the Motion |
| Orally at the hearing | Deadline for any parties in interest to file and serve any replies to any oppositions to the Motion |
| March 30, 2022 at 10:00 a.m. | Hearing on the Motion |

### E.    The Marketing of the Property and Auction

As noted above, prior to the Trustee's appointment, the Property was extensively marketed

by the Debtors through Hilton & Hyland for nearly 10 months.  As set forth in the Walters Decl., the

Property further was extensively marketed through, among other things:

(a)    Print and digital ads ran in the Los Angeles Times, Wall Street Journal National, Beverly Hills Courier, and Bay Area News Group – San Jose Mercury News and East Bay Times;

(a)    A Google Ad Words campaign ran for 30 days;

(b)    Targeted posts were directed to real estate developers, home builders, investors and brokers in Los Angeles;

(c)    The Property was posted on 360 Asset Advisors website and the Tranzon website, where it is automatically linked with up to 73 additional websites, including area MLS services, Property Line, LoopNet, CCIM, CoStar, GlobeSt.com, and Auctioneers Association websites;

(d)    A dedicated auction site was created at www.Tranzon360.com;

(e)    Multiple email blasts were sent to the Tranzon and 360 databases of auction buyers. Emails were also sent through PropertyCampaign.com and PropertySend.com to brokers and investors nationwide;

(f)     A direct mail piece was targeted to high end brokers, developers and neighboring property owners.  A handwritten note was included with each mailing to try and establish rapport; and

(g)     A press release was distributed nationwide through PR Newswire.  In addition, the Auctioneer reached out directly to reporters at the Los Angeles Times, New York Times, Wall Street Journal, and the Beverly Hills Courier who had previously written articles on the Property.  The press release was picked up by 87 media outlets including The Real Deal, Yahoo Finance, Market Watch, The Street and Morning Star.

The foregoing marketing efforts of the Property achieved results.  Specifically:

(a)     The Los Angeles Times digital ads included 135,019 impressions and 158 ad server clicks;

(b)     The Beverly Hills Courier digital ads included 8,169 views and 32 ad server clicks;

(c)     The Bay Area News Group digital ads included over 42,000 impressions and 45 ad server clicks;

(d)     The property-specific page on the Tranzon website received 6,317 views;

(e)     There were 332 site visits to the dedicated auction website at Tranzon360.com;

(f)     The Google campaign included 25,055 searches, 173,813 displays and 4,099 clicks; and

(g)     There were a total of 2,519 views of the press release.

The Auctioneer received 71 inquiries from prospective bidders, of which 48 downloaded the Property Information Package and 11 of them completed the confidentiality agreement to view the due diligence materials.  Three groups expressed interest in being a stalking horse bidder, including the Buyer.  The Auctioneer conducted three showings of the Property to prospective bidders as part of their due diligence.

Prior to the Auction, an executed Purchase Contract and Deposit were received from the Buyer.  A deposit was also received from Give Back LLC, a secured creditor. Consistent with the Court approved Bid Procedures, the Auctioneer conducted the Auction of the Property on March 24,

2022 at 11:00 AM in a meeting room at the Beverly Hilton, 9876 Wilshire Blvd. in Beverly Hills. The two qualified bidders that were in attendance were Give Back, LLC and representatives from the Buyer. Also in attendance were the Trustee and his Trustee's counsel. At 11:00 AM, Jeff Tanenbaum, the auctioneer, opened the auction and announced the terms of sale. He presented the opening bid from the Buyer and called for overbids. No additional bids were received and bidding was closed, with the Buyer being the high bidder, subject to Court approval.

**III.    TERMS OF PROPOSED SALE**

The Trustee and the Buyer entered into the Purchase Contract on or about March 23, 2022. The following is a summary of the terms of the Purchase Contract. Interested parties should consult the Purchase Contract (**Exhibit 1** to the Leslie Decl.) for the full and complete terms and conditions of the proposed Sale of the Property. In the event the following summary of the terms of Sale is found to conflict with the Purchase Contract, the terms of the Purchase Contract shall be controlling.

1.    Sale Price:  Trustee proposes to sell the Property to the Buyer, subject to Court approval, for $689,320, plus the Buyer's Premium of $1,010,680, for a total purchase price of $1,700,000 ("Purchase Price"). Additionally, the Buyer is assuming all of the estates' pre-closing property taxes related to the Property.

2.    Asset to be Sold:  The Property, as defined in the Purchase Contract.

3.    Earnest Money Deposit:  Prior to the Auction, the Buyer remitted a deposit of $250,000 to the Trustee (the "Deposit").

4.    No Representations or Warranties:  The Property will be sold by the Trustee on an **"As-Is, Where Is, With All Faults"** basis in its present condition, with no representations or warranties of any kind or character, express or implied, whatsoever.

5.    Contingencies:  As of the date of filing this Motion, any due diligence contingencies have been removed, and Buyer has funded the Deposit.

6.    Free and Clear, Permitted Exceptions: The Sale of the Property shall be free and clear of Claims, Rights, and Encumbrances, except as provided for the Purchase Contract. Pursuant to the Purchase Contract, the transfer of the Property shall be by Quitclaim Deed and is subject to the following Claims, Rights, and Encumbrances: (a) all unpaid property taxes, (b) covenants,

9

conditions and restrictions of record, (c) easements of record, and (d) local, state and federal laws, ordinances or governmentalregulations, including but not limited to, building and zoning laws, ordinances and regulations, now or hereafter in effect relating to the Property (collectively, the "Permitted Exceptions"). **Additionally, as set forth in the Purchase Contract, the Buyer is acquiring ownership of the Property subject to the lien, security interest, and deed of trust of Give Back, LLC (the "Give Back Obligation").**

7.    Liquidated Damages, Buyer Default:  If, after Bankruptcy Court approval of the Sale to Buyer, the Buyer fails to complete the purchase contemplated by the Purchase Contract, the Trustee shall retain the Deposit as liquidated damages.

8.    Closing Costs:  Buyer  will pay closing costs, including but not limited to, document preparation fees, transfer taxes, and its portion of escrow fees.  The Trustee will pay standard coverage title insurance premiums and his portion of the escrow fees.

9.    Close of Escrow:  Escrow shall close on or before the date which is fourteen (14) days after the date upon which the order approving the Sale (the "Sale Order") becomes a final, non-appealable order of the Bankruptcy Court (unless waived by the Buyer); provided that in no event shall the close of escrow occur later than thirty (30) days after following the entry of the Sale Order.

10.    Bankruptcy Court Jurisdiction:  The United States Bankruptcy Court for the Central District of California shall have exclusive jurisdiction to interpret and enforce the Purchase Contract.

11.    Tax Consequences:  The Trustee expresses no opinion as to whether there are tax consequences to the Sale.

## IV.    PROPOSED DISTRIBUTION OF SALE PROCEEDS

The Motion seeks authority to sell the Property free and clear of Claims, Rights, and Encumbrances, except as otherwise provided for in the Purchase Contract.  Pursuant to the Purchase Contract, the Buyer is taking title to the Property subject to the Permitted Exceptions and the Give Back Obligation.

Other than the Permitted Exceptions and the Give Back Obligation, the Preliminary Title Report, attached as **Exhibit 2** to the Leslie Decl., identifies encumbrances as follows (all of which the Trustee disputes):

10

1.  A Claim of Mechanic's Lien filed by Ral Design & Management, Inc., in the amount of $430,098.00, and any other amount due thereunder, recorded on March 19, 2021 as instrument no. 20210445146 in the Official Records Recorder's Office, Los Angeles County (the "Mechanic's Lien");

2.  The Certificate of Lien filed by Department of Industrial Relations, State of California, Case No. UEF10538684 against Mohammed AnWar Hadid, Individually and as substantial share hold of Coldwater Development, LLC, recorded January 7, 2019 as instrument no. 20190014936 in the Official Records Recorder's Office, Los Angeles County.  A copy of this lien is attached to the Leslie Decl. as **Exhibit 3**; and

3.  The Certificate of Lien filed by Department of Industrial Relations, State of California, Case No. UEF10538684 against Coldwater Development, LLC, recorded January 7, 2019 as instrument no. 20190014940 in the Official Records Recorder's Office, Los Angeles County. A copy of this lien is attached to the Leslie Decl. as **Exhibit 4** (and together with item 2, the "Department of Industrial Relations Liens").

As discussed below, there are bona fide disputes regarding the Mechanic's Lien and the Department of Industrial Relations Liens.  Accordingly, the Trustee seeks authorization for distribution of the Sale proceeds through escrow as follows:

(a)  Closing costs consisting of the cost of a standard coverage title insurance policy and the Trustee's portion of escrow fees;

(b)  The Marketing and Sale Expense;

(c)  The Buyer's Premium as provided for above (in part to the Estate and in part to the Auctioneer); and

(d)  Payment of the LC Engineering Claim pursuant to the Stipulation.

After payment of these items, the Trustee will hold the remainder of the net Sale proceeds pending further order of the Court.

///

///

11

**V.    DISCUSSION**

      **A.**    **The Sale of the Property Should be Approved Because Good Business Reasons**

          **for the Sale Exist, the Purchase Price is Fair and Reasonable, and the Proposed**

          **Sale is in the Best Interests of the Estate and its Creditors**

The Sale as contemplated by the Purchase Contract is in the best interests of the Estate and should be approved.  Section 363 of the Bankruptcy Code authorizes the Trustee to sell Estate property following notice and a hearing on terms that are fair and reasonable and the result of an arms-length transaction.  Specifically, section 363(b)(1) states in pertinent part that: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

In determining whether the sale of assets outside of the ordinary course of business should be approved, bankruptcy courts usually consider several factors, including: (1) whether a sufficient business reason exists for the sale; and (2) whether the proposed sale is in the best interest of the estate, which in turn consists of the following factors: (a) that terms of the sale are fair and reasonable; (b) that the proposed sale has been adequately marketed; (c) that the proposed sale terms have been properly negotiated and proposed in good faith; and (d) that the purchaser is involved in an arms-length transaction with the seller.  *See In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ("In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, *i.e.*, it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, and that it is an 'arms-length' transaction."); *Matter of Phoenix Steel Corp.*, 82 B.R. 334, 335-356 (Bankr. D. Del. 1987) (In determining whether a proposed sale of equipment is proper under § 363, courts should consider whether the proposed sale is fair and equitable, whether there was a good business reason for completing the sale, and whether the transaction is proposed in good faith.); *In re Alves*, 52 B.R. 353, 355 (Bankr. D.R.I. 1985) (whether to approve a sale under § 363 depends upon the integrity of sale and the best interest of bankruptcy estate).

In the instant case, as discussed below, the Trustee has satisfied all of the applicable elements

concerning the proposed sale of the Property.

### 1.    Sound Business Purpose

The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (9th Cir. BAP 1988) has adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under section 363(b).  The facts pertaining to the sale at issue here amply substantiate the Trustee's business decision that the contemplated sale of the Property to the Buyer pursuant to the terms of the Purchase Contract serves the best interests of the estate and merits the approval of this Court. Specifically, the Trustee has sound reasons for the sale to maximize return to the Estates by liquidation of the Property.  Based on the foregoing, it is respectfully submitted that the Sale proposed herein provides maximum benefit to the Estate. Thus, in the Trustee's business judgment, the proposed Sale to Buyer as contemplated by the Purchase Contract will maximize the benefit to the Estates, and, therefore, represents a sound exercise of the Trustee's business judgment.

### 2.    Fair and Reasonable Price

In order for a sale to be approved under section 363(b), the purchase price must be fair and reasonable.  *See generally, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985).  The trustee is given substantial discretion in this regard.  *Id.*  In addition, Courts have broad discretion with respect to matters under section 363(b).  *See Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985).  In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold.  *Wilde Horse Enterprises, Inc.*, 136 B.R. at 841 (*citing In re Chung King, Inc.*, 753 F.2d 547 (7th Cir. 1985); *In re Alpha Industries, Inc.*, 84 B.R. 703, 705 (Bankr. Mont. 1988).

As noted above, the Auctioneer engaged in expansive marketing efforts regarding the sale of the Property.  Even prior to the Trustee's appointment as chapter 11 trustee, the Debtors had extensively marketed the Property during the entirety of the bankruptcy case. The Debtors' principal marketed the Property prepetition as well. Despite all of these efforts, the Trustee did not receive any competing bids for purchase of the Property.  The Buyer's offer was obtained after the Bid Procedures were approved by the Court, which were designed and approved as a means to ensure

13

that the highest price possible was obtained for Property under the circumstances.  Additionally, the

Buyer is taking title to the Property subject to the Permitted Exceptions and Give Back Obligation,

which amounts to roughly $30 million[3] in obligations assumed by the Buyer without the need for the

Estates to engage in litigation regarding the validity of the asserted secured claims.  Based on the

foregoing, the Trustee submits that the Purchase Price represents fair and reasonable value for the

Property.

### 3.    Adequate Marketing

The intensive marketing efforts undertaken by the Auctioneer are set forth in detail above

and are not repeated here. The Trustee also notes the Debtors' prior efforts as detailed in their sale

motion previously filed with the Court. In consideration of the foregoing marketing efforts, the

Property has been adequately marketed.

### 4.    Good Faith

When a Bankruptcy Court authorizes a sale of assets pursuant to section 363(b)(1), it is

required to make a finding with respect to the "good faith" of the purchaser.  *In re Abbotts Dairies*,

788 F.2d at 149. Such a procedure ensures that Section 363(b)(1) will not be employed to

circumvent creditor protections.  *Id.* at 150.  The good faith requirement focuses principally on

whether there is any evidence of "fraud, collusion between the purchaser and other bidders or the

trustee, or an attempt to take grossly unfair advantage of other bidders."  *In re Abbotts Dairies of*

*Pennsylvania, Inc.*, 788 F.2d 143,147 (3rd Cir. 1986); *Wilde Horse Enterprises*, 136 B.R. at 842.

Here, as discussed above, the Auction was conducted pursuant to the Court-approved Bid

Procedures Order.  The terms of the Purchase Contract are the result of good faith and arms-length

negotiations between parties represented by counsel. As also discussed below, the Trustee is

informed and believes that, other than in connection with the proposed sale of the Property, the

Buyer has no prior connections with the Debtors, and that various entities that have indirect

economic and ownership interests in the Buyer also have indirect economic and ownership interests

---

[3] Give Back contends that the Give Back Obligation is approximately $33.45 million through April
15, 2022.

1   in Give Back, LLC, the Debtors' secured creditor.  The Trustee respectfully submits that the good

2   faith requirement has been satisfied.

3       **B.**    **The Court Should Authorize the Proposed Sale Free and Clear of All Liens,**

4           **Interests, and Encumbrances Pursuant to 11 U.S.C. § 363(f)**

5       Pursuant to section 363(f) of the Bankruptcy Code, the Trustee may sell the Property free and

6   clear of liens, interests, claims, and encumbrances, with such liens, interests, claims, and

7   encumbrances to attach to the Sale proceeds, with the same priority and rights of enforcement as

8   previously existed.  Specific to this Property, the Trustee seeks to sell the Property free and clear of

9   all interests in the Property except for the Permitted Exceptions and the Give Back Obligation.  In

10  particular, the Trustee seeks to sell the Property free and clear of the Mechanic's Lien and the

11  Department of Industrial Relations Liens.

12      The Court has the power to authorize the sale of property free and clear of liens, claims, or

13  interests. *See* 11 U.S.C. § 363(f); *In re Gerwer*, 898 F.2d 730, 733 (9th Cir. 1990).  Section 363(f)

14  permits a sale of property "free and clear of any interest in such property of an entity other than the

15  estate" if ***any one*** of the following five conditions is met:

16          (1) applicable nonbankruptcy law permits sale of such property free and
            clear of such interest;
17
            (2) such entity consents;
18
            (3) such interest is a lien and the price at which such property is to be
19          sold is greater than the aggregate value of all liens on such property;
            (4) such interest is in bona fide dispute; or
20
            (5) such entity could be compelled, in a legal or equitable proceeding,
21          to accept a money satisfaction of such interest.
22
    11 U.S.C. § 363(f). Section 363(f) is written in the disjunctive; thus, satisfaction of any one of the
23
    five conditions is sufficient to sell property free and clear of liens. *See e.g., Citicorp Homeowners*
24
    *Services, Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988); *Mutual Life Ins. Co. of*
25
    *New York v. Red Oak Farms, Inc. (In re Red Oak Farms, Inc.)*, 36 B.R. 856, 858 (Bankr. W.D. Mo.
26
    1984).
27

28

1.   **The Property May Be Sold Free and Clear of the Mechanic's Lien and Department of Industrial Relations Liens Pursuant to Section 363(f)(2)**

In regard to section 363(f)(2), the "consent" of an entity asserting an interest in the property sought to be sold, as referenced in section 363(f)(2), can be implied if such entity fails to make a timely objection to the sale after receiving notice of the sale. *Elliot*, 94 B.R. at 345; *see also, In re Ex-Cel Concrete Company, Inc.*, 178 B.R. 198, 203 (9th Cir. BAP 1995).

1995) ("The issue here is whether there was consent or non-opposition by Citicorp."); *In re Paddlewheels, Inc.*, 2007 WL 1035151 (Bankr. E.D.La. April 2, 2007) ("The Sale Motion complies with section 363(f) of the Bankruptcy Code, in that the Trustee either obtained the consent of Whitney to the sale of the Vessel to Purchaser or Whitney had no objection to the Sale."); *In re Gabel*, 61 B.R. 661 (Bankr. W.D. La. 1985) (implied consent is sufficient to authorize a sale under § 363(f)(2)).

To the extent that Ral Design & Management, Inc. or the Department of Industrial Relations consents by one of the two means discussed above, the Court should approve the Sale of the Property free and clear of such alleged secured creditors' liens pursuant to section 363(f)(2), provided that all alleged liens shall attach to the proceeds of the Sale with the same extent, validity, and priority as the alleged pre-petition liens.

2.   **The Property May Be Sold Free and Clear of the Mechanic's Lien Pursuant to Section 363(f)(3)**

Pursuant to section 363(f)(3) of the Bankruptcy Code, the Trustee may sell the Property free and clear of the Mechanic's Lien if "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property."  The proposed Purchase Price is an amount well in excess of the total amount owed on the Mechanic's Lien.  Thus, the Trustee submits that the Property may be sold pursuant to section 363(f)(3) free and clear of the Mechanic's Lien, provided that all alleged liens shall attach to the proceeds of the Sale with the same extent, validity, and priority as the alleged pre-petition lien.  However, as noted below, the Trustee disputes that this is a duly perfected secured lien.

16

**3.     The Property May Be Sold Free and Clear of the Mechanic's Lien and**

**Department of Industrial Relations Liens Pursuant to Section 363(f)(4)**

To satisfy section 363(f)(4), there need only be an objective basis for a factual or legal dispute as to the validity of the interest. *In re Kellogg-Taxe,* 2014 WL 1016045, at \*6 (Bankr. C.D. Cal. Mar.17, 2014) (*citing In re Gaylord Grain L.L.C.,* 306 B.R. 624, 627 (8th Cir. BAP 2004)); *In re Daufuskie Island Props., LLC,* 431 B.R. 626, 645 (Bankr. D.S.C. 2010); *see also Higgins v.Vortex Fishing Systems, Inc. (In re Vortex Fishing Sys., Inc.),* 277 F.3d 1057, 1062 (9th Cir. 2002) (adopting objective test for determining whether claim supporting involuntary petition is subject to *bona fide* dispute). "[T]he moving party must 'provide **some** factual grounds to show some objective basis for the dispute." *SEC v. Capital Cove Bancorp LLC,* 2015 WL 9701154, at \*7 (C.D. Cal. Oct.13, 2015) (emphasis added). ***The court "'need not determine the probable outcome of the dispute, but merely whether one exists.'"*** *Capital Cove Bancorp,* 2015 WL 9701154, at \*7 (citing and quoting *Kellogg-Taxe,* 2014 WL 1016045, at \*6 (emphasis added). Notably, there is no requirement that a complaint be filed to establish a bona fide dispute as to a lien or claim.

Here, the Mechanic's Lien and Department of Industrial Relations Liens are in bona fide dispute. As to the Mechanic's Lien, Ral Design & Management, Inc. has filed Proof of Claim 3-1 in the Coldwater Debtor's case asserting an **un**secured claim in the amount of $259,727.45 based on an unpaid settlement. The settlement appears to be based on unpaid services provided by Ral Design & Management, Inc. to the Coldwater Debtor, which is the basis of the Mechanic's Lien. Additionally, the Mechanic's Lien was recorded post-petition and in violation of the automatic stay, and therefore is void. Accordingly, the Trustee disputes that Ral Design & Management, Inc. holds a claim secured by the Property.

As to the Department of Industrial Relations Liens, neither lien contains an amount owed to the Department of Industrial Relations. *See* **Exhibits 3 and 4.** The Trustee is still conducting his investigation into the nature and basis of the liens, and amounts owed there under, if any. Additionally, the Department of Industrial Relations did not file a proof of claim in either of the Debtors' cases, even though it is listed as an **unsecured** creditor in Coldwater Debtor's Schedule E/F [Doc. 22] and has received notice of the bankruptcy cases. Thus, the Trustee submits that there is a

17

1   bona fide dispute as to whether any amounts are owed to the Department of Industrial Relations on

2   account of the liens.

3       Based on the foregoing, the Trustee submits that the Property may be sold pursuant to

4   Section 363(f)(4) free and clear of the Mechanic's Lien and the Department of Industrial Relations

5   Liens, provided that all alleged liens shall attach to the proceeds of the Sale with the same extent,

6   validity, and priority as the alleged pre-petition liens.

7       **C.**    **The Court Should Find that the Buyer is a Good Faith Purchaser**

8       Pursuant to section 363(m) of the Bankruptcy Code, the Court should make a finding that a

9   Buyer is a good faith purchaser.  A purchaser of property is protected from the effects of reversal on

10  appeal of the authorization to sell or lease as long as the Court finds that the purchaser acted in good

11  faith and the appellant fails to obtain a stay of the sale.  *See* 11 U.S.C. § 363(m).  Although the

12  Bankruptcy Code does not define "good faith," courts have provided guidance as to the appropriate

13  factors to consider. *See In re Pine Coast Enterprise, Ltd.*, 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992)

14  ("The requirement that a purchaser act in good faith speaks to the integrity of its conduct in the

15  course of the sale proceeding."); *Kham and Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1355

16  (7th Cir. 1990) (The purpose of § 363(m) is to disable courts from backtracking on promises with

17  respect to bankruptcy sales in the absence of bad faith).  In *T.C. Investors, et al. v. Joseph, et al. (In*

18  *re M Capital Corp.)*, 290 B.R. 743 (9th Cir. BAP 2003), the Bankruptcy Appellate Panel held that a

19  bankruptcy court may not make a finding of good faith in the absence of evidence, but may make

20  such a finding if appropriate evidence is presented.  290 B.R. at 746–747.

21      In the instant case, the Trustee requests that the Court make a finding that the Buyer is a good

22  faith purchaser within the meaning of section 363(m).  The Trustee has no relation to the Buyer and

23  did not know the Buyer prior to its involvement in the Cases.  The Buyer is not an "insider" or

24  otherwise an "affiliate" of either of the Debtors, as those terms are defined in section 101(31) of the

25  Bankruptcy Code.  As noted above, and out of full and complete disclosure, the Trustee is informed

26  that various entities that have indirect economic and ownership interests in the Buyer also have

27  indirect economic and ownership interests in Give Back, LLC, who is a secured creditor on the

28  Property.

18

Notwithstanding, the Trustee submits that the Purchase Contract was negotiated at arms-length, and the proposed Purchase Price is fair consideration for the Property, especially in light of the fact that the Buyer is taking title to the Property subject to the Permitted Exceptions and the Give Back Obligation.  Leslie Decl.  Specifically, the Trustee submits that the Buyer is purchasing the Property in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and otherwise has proceeded in good faith in all respects in connection with the Sale in that, *inter alia*: (i) the Trustee was free to deal with any other party interested in acquiring the Property in accordance with the Bid Procedures Order; (ii) the Buyer complied with the provisions of the Bid Procedures Order; (iii) the Buyer agreed to subject its bid, in the form of the Purchase Contract, to the competitive Bid Procedures set forth in the Bid Procedures Order; (iv) all payments and other consideration to be provided by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (v) the Buyer has not engaged in any action or inaction that would cause or permit the Purchase Contract or the Sale to be avoided or would impose any costs or damages under section 363(n) of the Bankruptcy Code; (vi) no common identity of directors or controlling stockholders exists between the Buyer and the Debtors; (vii) the negotiation and execution of the Purchase Contract was at arms' length and in good faith at all times, and each Party was represented by separate and competent counsel and other professionals; and (viii) the Purchase Contract was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors.

Based on the foregoing, the Trustee respectfully submits that a finding of good faith within the meaning of section 363(m) is appropriate.

**VI.    NOTICE**

Section 363(b)(1) of the Bankruptcy Code provides that the Trustee, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Section 102(1) defines "after notice and a hearing" as after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances.  11 U.S.C. § 102(1)(A).

19

Bankruptcy Rule 6004(a) provides, in pertinent part, that notice of a proposed sale not in the ordinary course of business must be given pursuant to Bankruptcy Rule 2002(a)(2), (c)(1), (i) and (k), and, if applicable, in accordance with section 363(b)(2).  Fed. R. Bankr. P. 6004(a).  Bankruptcy Rule 2002(a)(2) requires at least 21 days' notice by mail of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortens the time or directs another method of giving notice. Fed. R. Bankr. P. 2002(a)(2).  Here, the Court shortened the notice period pursuant to the Bid Procedures Orders, and the Trustee complied with the Bid Procedures Order by filing and serving the Notice of the Motion and the Motion on Mach 25, 2022.

Bankruptcy Rule 2002(c)(1) requires that the notice of a proposed sale include the date, time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections.  It also provides that the notice of sale or property is sufficient if it generally describes the property.  Fed. R. Bankr. P. 2002(c)(1).

The Trustee submits that adequate notice of the proposed Sale has been given.  The Trustee has or will have complied with all of the above provisions of the Bankruptcy Code, the Bankruptcy Rules and Local Bankruptcy Rules, as modified by the Bid Procedures Orders.  Specifically, actual written notice of the Sale hearing, which includes all of the required information set forth above, including, without limitation, the date, time and place of the hearing on the Motion to approve the Sale of the Property to the Buyer and the deadline for objecting to the Motion, the Auction, the Motion, and all notices and deadlines with respect to the foregoing, has been served on all known interested persons and entities pursuant to Bankruptcy Rule 2002, including, but not limited to the following parties:

(a)    the United States Trustee;

(b)    any party asserting Claims, Rights, and Encumbrances;

(c)    all taxing authorities having jurisdiction over any of the Property, including the Internal Revenue Service, the California Franchise Tax Board and the County of Los Angeles;

(d)    all persons known or reasonably believed to have asserted liens on any of the Property;

20

(e)    all persons known or reasonably believed to have expressed an interest in purchasing the Property;

(f)    all of the Debtors' known creditors; and

(g)    all other parties that have filed a notice of appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule 9010(b) and in any limited or ancillary proceeding in connection with these bankruptcy cases.

Additionally, concurrently with the filing of this Motion, notice on the Court-approved form F 6004-2 was submitted to the Court's clerk for publication on the Court's website pursuant to Local Bankruptcy Rule 6004-1(f).

Based on the foregoing, the Trustee submits that all applicable notice requirements have been satisfied.

## VII.    CONCLUSION

Based on the foregoing, the Trustee respectfully requests that the Court enter an order granting the Motion and entering a Sale Order substantially in the form attached to the Purchase Contract and including the following relief:

1.    Finding that notice of the Motion was adequate and proper under the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules for the Central District of California;

2.    Authorizing sale of the Property to Buyer, pursuant to sections 363(b) and (f) of the Bankruptcy Code, free and clear of Claims, Rights, and Encumbrances, except as otherwise provided in the Purchase Contract, with the Claims, Rights and Encumbrances to attach to the Sale proceeds, with the same priority and rights of enforcement as previously existed ;

3.    Authorizing the Trustee to execute any and all documents that may be necessary or convenient to consummate the Sale, including the authority to execute quitclaim deed(s) on behalf of the Estates;

4.    Authorizing sale of the Property to Buyer on the terms and conditions set forth herein, on an **AS-IS, WHERE-IS** basis, without any representations or warranties by the Trustee;

5.    Authorizing payment through escrow of closing costs consisting of the cost of a standard coverage title insurance policy and the Trustee's portion of escrow fees;

21

6.      Authorizing payment through escrow of the Market and Sale Expense;

7.      Authorizing payment through escrow of the Buyer's Premium as provided for above (in part to the Estate and in part to the Auctioneer); and

8.      Authorizing payment through escrow of the LC Engineering Claim to the terms of the Stipulation;

9.      Authorizing the Trustee to hold the balance of the Sale proceeds pending further order of the Court;

10.      Finding that the Buyer is a good faith purchaser of the Property pursuant to section 363(m) of the Bankruptcy Code and is entitled to all benefits and protections provided thereby; and

11.      Granting such further relief as may be just and appropriate under the circumstances of this case.

DATED:  March 25, 2022                      BG LAW LLP


By: /s/ Jessica L. Bagdanov
    David Seror
    Jessica L. Bagdanov
    Attorneys for Sam Leslie, Chapter 7 Trustee

22

# DECLARATION OF SAM S. LESLIE

I, Sam S. Leslie, declare as follows:

1.      I am the duly appointed, qualified, and acting Chapter 7 trustee in the bankruptcy cases of the above-named Debtors.  I have personal knowledge of the facts contained herein, or have gained such knowledge from my review of records I normally maintain as Trustee, and if called as a witness, I could and would competently testify to these facts.

2.      I make this declaration in support of the Motion.  All initial capitalized terms used but not defined herein shall have the same meaning as is affixed to them in the Motion.

3.      Prior to the Petition Date, and on or about January 19, 2019, Coldwater Debtor entered into the Consulting Agreement with LC Engineering for LC Engineering to provide professional civil engineering services in connection with a proposed development on the Property. Since my appointment, I learned of the Consulting Agreement with LC Engineering and that LC Engineering had provided services to the Debtors in connection with that agreement, including creating reports, drawings, specifications, field data, notes, and related materials (the "Work Product").  I also learned that LC Engineering was in possession of the Work Product.

4.      I contend that the Consulting Agreement provides Coldwater Debtor with a property right to the Work Product, and therefore, the Work Product was property of the Estates. Accordingly, I demanded turnover of the Work Product by LC Engineering in order to assist the Auctioneer with marketing efforts, because I believed the Work Product to contain drawings and reports relevant to potential development capabilities regarding the Property.  In response, LC Engineering asserted that I was not entitled to turnover of the Work Product until amounts due and owing pursuant to the LC Engineering Claim were paid in full.

5.      In order to avoid the burden and expense associated with litigation relating to turnover of the Work Product, LC Engineering and I entered into the Stipulation, which was approved by the Court on March 8, 2022 [Doc. 264].  Accordingly, I request authority to pay the LC Engineering Claim through escrow pursuant to the Stipulation.

DOCS_LA:343007.2 31239/001

6.      Through my investigation into the assets of the Estates, I determined that a sale of the Property was in the best interests of the Estates and their creditors as a liquidation of the Property will maximize the value of the Property to the Estates.

7.      Accordingly, on February 2, 2022, I caused the Employment Application to be filed. On March 7, 2022, the Court entered an order approving the Employment Application [Doc. 261], including the compensation and reimbursement of the Marketing and Sale Expense provided for thereunder.

8.      I am informed that the Auctioneer spent $25,000 on advertising, marketing materials, and sale venue costs, for a total Marketing and Sale Expense of $55,000 (when combined with the retainer of $30,000).  I request that the Marketing and Sale Expense be paid to the Auctioneer through escrow.

9.      Pursuant to the Employment Application, the Buyer's Premium of 3% was added to the Buyer's bid and become part of the total purchase price of the Property.  As explained in the Motion, 1.75% shall be paid to the Estate, and 1.25% shall be paid to the Auctioneer.

10.     Prior to the Auction, I received the Purchase Contract and Deposit from the Buyer. A true and correct copy of the fully executed the Purchase Contract is attached hereto as **Exhibit 1**.

11.     I also received a Deposit from Give Back LLC, a secured creditor.

12.     Consistent with the Court approved Bid Procedures, the Auctioneer conducted the Auction of the Property on March 24, 2022 at 11:00 AM in a meeting room at the Beverly Hilton, 9876 Wilshire Blvd. in Beverly Hills.

13.     I was present at the Auction along with my counsel.  The two qualified bidders that were in attendance, were Give Back, LLC and representatives from the Buyer.

14.     At 11:00 AM, Jeff Tanenbaum, the auctioneer, opened the auction and announced the terms of sale.  He presented the opening bid from the Buyer and called for overbids.  No additional bids were received and bidding was closed, with the Buyer being the high bidder and buyer subject to Court approval.

15.     In this case, the Buyer's offer involved $1.7 million in cash price in addition to purchasing the Property subject to significant secured debt. After discussions with the Auctioneer, I

24

assigned a value of approximately $34,175,000 to the Buyer's offer, which takes into consideration the cash value plus the value of taking the Property subject to the secured debt. The 3% Buyer's Premium was calculated on the entire value of the offer of approximately $34,175,000.

16.    By establishing the cash value of the offer, and allocating the Buyers' Premium accordingly, we were able to conform the bid to the Bid Procedures and allow for an apples-to-apples overbid at the Auction.

17.    Accordingly, the Estate will receive approximately $1,279,557.12 from the Sale, which constitutes the $689,320 cash price for the Property plus the Estates' share of the Buyer's Premium in the amount of $590,237.12.  The Auctioneer's share of the Buyer's Premium is approximately $420,442.88.

18.    As the Estates will receive approximately $1,279,557.12 from the Sale, I believe the Sale will result in a meaningful distribution to unsecured creditors.

19.    On or about December 30, 2021, I received a preliminary title report regarding the Property prepared by Stewart Title of California, Inc.  A true and correct copy of the preliminary title report is attached hereto as **Exhibit 2**.

20.    Based on the foregoing, I request that the Court approve the terms of the Sale as those terms are set forth in the Motion.  As noted, I seek authority to sell the Property free and clear of Claims, Rights, and Encumbrances, except as otherwise provided for in the Purchase Contract.

21.    Pursuant to the Purchase Contract, the Buyer is taking title to the Property subject to the Permitted Exceptions and the Give Back Obligation.  Other than the Permitted Exceptions and the Give Back Obligation, the Preliminary Title Report identifies encumbrances as follows: (i) the Mechanic's Lien; (ii) the Department of Industrial Relations Liens, copies of which are attached hereto as **Exhibits 3 and 4**.  As noted in the Motion, I believe there are bona fide disputed regarding the Mechanic's Lien and the Department of Industrial Relations Liens.

22.    With respect to the Mechanic's Lien, Ral Design & Management, Inc. filed Proof of Claim 3-1 in the Coldwater Debtor's case asserting an unsecured claim in the amount of $259,727.45 based on an unpaid settlement.  The settlement appears to be based on unpaid services provided by Ral Design & Management, Inc. to the Coldwater Debtor, which is the basis of the

Mechanic's Lien. Additionally, the Mechanic's Lien was recorded post-petition and in violation of the automatic stay, and therefore is void. Accordingly, I dispute that Ral Design & Management, Inc. holds a claim secured by the Property.

23. As to the Department of Industrial Relations Liens, neither lien contains an amount owed to the Department of Industrial Relations, and I am still conducting my investigation into the nature and basis of the liens, and amounts owed there under, if any. Additionally, the Department of Industrial Relations did not file a proof of claim in either of the Debtors' cases, even though Coldwater Debtor listed it as unsecured priority creditor in its Schedule E/F [Doc. 22] and it has received notice of the bankruptcy cases. Thus, I submit that there is a bona fide dispute as to whether any amounts are owed to the Department of Industrial Relations on account of the liens.

24. As noted in the Motion, I request authorization to pay through escrow: (i) closing costs consisting of the cost of a standard coverage title insurance policy and my portion of escrow fees; (ii) the Marketing and Sale Expense; (iii) the Buyer's Premium (in part to the Estate and in part to the Auctioneer); and (iv) the LC Engineering Claim. After payment of these items, I will hold the remainder of the net Sale proceeds pending further order of the Court.

25. As noted in the Motion, I am informed that the Auctioneer engaged in expansive marketing efforts regarding the sale of the Property. Those efforts resulted in the current offer for the Property. That offer was obtained after the Bid Procedures were approved by the Court, and is the product of negotiations between my counsel and Buyer's counsel.

26. The Purchase Contract was negotiated at arms-length, and I believe the proposed Purchase Price is fair consideration for the Property, especially in light of the fact that the Buyer is taking title to the Property subject to the Permitted Exceptions and the Give Back Obligation. Additionally, given the extensive marketing the Property has undergone, both by the Auctioneer and the Debtors prior to my appointment, I do not believe that further marketing efforts will garner better or higher bids for the Property.

27. I have no relation to the Buyer and I did not know the Buyer prior to its involvement in the Cases. Additionally, the Buyer is not an "insider" or otherwise an "affiliate" of either of the Debtors, as those terms are defined in section 101(31) of the Bankruptcy Code.

28.     However, out of full and complete disclosure, I am informed that various entities that have indirect economic and ownership interests in the Buyer also have indirect economic and ownership interests in Give Back, LLC, who is a secured creditor on the Property.

29.     Notwithstanding, I submit that the Purchase Contract was negotiated at arms-length, and the proposed Purchase Price is fair consideration for the Property.  Specifically, I submit that the Buyer is purchasing the Property in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and otherwise has proceeded in good faith in all respects in connection with the Sale in that, *inter alia*: (i) I was free to deal with any other party interested in acquiring the Property in accordance with the Bid Procedures Order; (ii) the Buyer complied with the provisions of the Bid Procedures Order; (iii) the Buyer agreed to subject its bid, in the form of the Purchase Contract, to the competitive Bid Procedures set forth in the Bid Procedures Order; (iv) all payments and other consideration to be provided by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (v) the Buyer has not engaged in any action or inaction that would cause or permit the Purchase Contract or the Sale to be avoided or would impose any costs or damages under section 363(n) of the Bankruptcy Code; (vi) no common identity of directors or controlling stockholders exists between the Buyer and the Debtors; (vii) the negotiation and execution of the Purchase Contract was at arms' length and in good faith at all times, and each party was represented by separate and competent counsel and other professionals; and (viii) the Purchase Contract was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors.

30.     I believe that adequate notice of the proposed Sale will be given.  Concurrently with the filing of the Motion, notice on the Court-approved form F 6004-2 will be submitted to the Court's clerk for publication on the Court's website pursuant to Local Bankruptcy Rule 6004-1(f). Also, notice of the Motion will be given to the Debtors, the United States Trustee, all creditors and lienholders of record, and all interested parties pursuant to Federal Rule of Bankruptcy Procedure 2002(a).

31.     Based on the foregoing, I respectfully submit that the Sale proposed herein provides maximum benefit to the Estates. Thus, in my business judgment, the proposed Sale to Buyer as

1 | contemplated by the Purchase Contract will maximize the benefit to the Estates, and, therefore,

2 | represents a sound exercise of my business judgment, and the Motion should be granted.

3 |     I declare under penalty of perjury under the laws of the United States of America that the

4 | foregoing is true and correct.

5 |     Executed this 25th day of March, 2022, at Palm Springs, California.

7 | Sam S. Leslie

DOCS_LA:343007.2 31239/001

## <u>DECLARATION OF MICHAEL C. WALTERS</u>

I, Michael C. Walters, declare as follows:

1.     I am the regional president of Tranzon Asset Strategies ("Tranzon"), one of the Court-approved auctioneers in these Cases. I have personal knowledge of the facts contained in this declaration and am authorized to make this declaration on behalf of Tranzon.

2.     I make this declaration in support of the Motion.  All initial capitalized terms used but not defined herein shall have the same meaning as is affixed to them in the Motion.

3.     After the Court's approval of my employment as Auctioneer, I commenced efforts to market the Property through, among other things:

(a)    Print and digital ads ran in the Los Angeles Times, Wall Street Journal National, Beverly Hills Courier, and Bay Area News Group – San Jose Mercury News and East Bay Times;

(b)    A Google Ad Words campaign ran for 30 days;

(c)    Targeted posts were directed to real estate developers, home builders, investors and brokers in Los Angeles;

(d)    The Property was posted on 360 Asset Advisors website and the Tranzon website, where it is automatically linked with up to 73 additional websites, including area MLS services, Property Line, LoopNet, CCIM, CoStar, GlobeSt.com, and Auctioneers Association websites;

(e)    A dedicated auction site was created at www.Tranzon360.com;

(f)    Multiple email blasts were sent to the Tranzon and 360 databases of auction buyers. Emails were also sent through PropertyCampaign.com and PropertySend.com to brokers and investors nationwide;

(g)    A direct mail piece was targeted to high end brokers, developers and neighboring property owners.  A handwritten note was included with each mailing to try and establish rapport; and

(h)    A press release was distributed nationwide through PR Newswire.  In addition, we reached out directly to reporters at the Los Angeles Times, New York Times, Wall Street Journal, and the Beverly Hills Courier who had previously written articles on

Street Journal, and the Beverly Hills Courier who had previously written articles on the Property.  The press release was picked up by 87 media outlets including The Real Deal, Yahoo Finance, Market Watch, The Street and Morning Star.

4.      The foregoing marketing efforts of the Property achieved results.  Specifically:

(a)   The Los Angeles Times digital ads included 135,019 impressions and 158 ad server clicks;

(b)   The Beverly Hills Courier digital ads included 8,169 views and 32 ad server clicks;

(c)   The Bay Area News Group digital ads included over 42,000 impressions and 45 ad server clicks;

(d)   The property-specific page on the Tranzon website received 6,317 views;

(e)   There were 332 site visits to the dedicated auction website at Tranzon360.com;

(f)   The Google campaign included 25,055 searches, 173,813 displays and 4,099 clicks; and

(g)   There were a total of 2,519 views of the press release.

5.      Tranzon and ThreeSixty received 71 inquiries from prospective bidders, of which 48 downloaded the Property Information Package and 11 of them completed the confidentiality agreement to view the due diligence materials.

6.      Three groups expressed interest in being a stalking horse bidder, including the Buyer.

7.      Tranzon and ThreeSixty conducted three showings of the Property to prospective bidders as part of their due diligence.

8.      In total, Tranzon and ThreeSixty spent approximately $25,000 on advertising, marketing materials, and sale venue costs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 25th day of March, 2022, at ___Irvine___, California.

_____
Michael C. Walters

## DECLARATION OF JEFFREY J TANENBAUM

I, Jeffrey J Tanenbaum, declare as follows:

1.      I am the president of ThreeSixty Asset Advisors ("ThreeSixty"), one of the Court-approved auctioneers in these Cases. I have personal knowledge of the facts contained in this declaration and am authorized to make this declaration on behalf of ThreeSixty.

2.      I make this declaration in support of the Motion.  All initial capitalized terms used but not defined herein shall have the same meaning as is affixed to them in the Motion.

3.      A true and correct recitation of the marketing efforts on the Property undertook by ThreeSixty in conjunction with Tranzon is set forth in the Declaration of Michael C. Walters.

4.      Prior to the Auction, an executed Purchase Contract and Deposit were received from the Buyer.

5.      I conducted the Auction of the Property on March 24, 2022 at 11:00 AM in a meeting room at the Beverly Hilton, 9876 Wilshire Blvd. in Beverly Hills.

6.      There were two qualified bidders in attendance, Give Back, LLC and representatives from the Buyer.

7.      Also in attendance were the Trustee and his Trustee's counsel.

8.      At 11:00 AM, I opened the auction and announced the terms of sale.  I presented the opening bid from the Buyer and called for overbids.

9.      No additional bids were received and bidding was closed, with the Buyer being the high bidder, subject to Court approval.

10.      Given the extensive marketing history for this Property, I do not believe that further marketing of the Property will result in additional bidders, and Buyer's offer is the highest and best received.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 25th day of March, 2022, at _____Ventura_____, _____California_____.

_____
Jeffrey J Tanenbaum

I, Michael Eisner, being duly sworn, says:

1.      I am the manager of Castle Real Estate, LLC ("Buyer"), which is the proposed buyer of the Property, as described in the Purchase Contract, including Land, Appurtenances, Mineral Rights, Improvements, and Appurtenances (collectively, and as further described in the Purchase Contract, the "Property"), free and clear of all interests.

2.      The statements set forth in this declaration (the "Declaration") are based upon my personal knowledge, upon information and belief, and upon records kept in the ordinary course of business that were reviewed by me or other personnel of the Buyer or its affiliates and I am duly authorized to make this declaration on behalf of the Buyer.

3.      I submit this declaration in support of the *Debtors' Motion (A) Authorizing the Sale of Property Free and Clear of Interests, Including Liens, Claims, Liabilities, and Encumbrances; (B) Granting the Buyer the Protections Afforded to a Good Faith Purchaser; and (C) Granting Related Relief* (the "Motion"), which is being filed concurrently herewith.[1]

4.      The Buyer is not an "insider" or otherwise an "affiliate" of either of the Debtors, as those terms are defined in section 101(31) of the Bankruptcy Code.

5.      Various entities that have indirect economic and ownership interests in the Buyer also have indirect economic and ownership interests in the secured creditor of the Debtors, Give Back, LLC.

6.      It is my belief that the Buyer is purchasing the Property in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and otherwise has proceeded in good faith in all respects in connection with the Sale in that, *inter alia*, (i) the Trustee was free to deal with any other party interested in acquiring the Property in accordance with the Bid Procedures Order; (ii) the Buyer complied with the provisions of the Bid Procedures Order; (iii) the Buyer agreed to subject its bid, in the form of the Purchase Contract, to the competitive Bid Procedures set forth in the Bid Procedures Order; (iv) all payments and other consideration to be provided by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (v) the Buyer has not engaged in any action or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[1]    A capitalized term used but not defined herein shall the meaning ascribed to it in the Motion.

1  inaction that would cause or permit the Purchase Contract or the Sale to be avoided or would impose

2  any costs or damages under section 363(n) of the Bankruptcy Code; (vi) no common identity of

3  directors or controlling stockholders exists between the Buyer and the Debtors; (vii) the negotiation

4  and execution of the Purchase Contract was at arms' length and in good faith at all times, and each

5  Party was represented by separate and competent counsel and other professionals; and (viii) the

6  Purchase Contract was not entered into for the purpose of hindering, delaying, or defrauding present

7  or future creditors of the Debtors.

8      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

9  correct.

10     Executed this 25th day of March, 2022 at Los Angeles, California.

11

12  _____

13  Michael Eisner

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:336916.1 38393/002

## PURCHASE CONTRACT AND RECEIPT FOR DEPOSIT

This is more than a receipt for money, it is a legally binding contract. Read it carefully.

Date: March 23, 2022                                                      Los Angeles County, California

Received from **Castle Real Estate, LLC**, a Delaware limited liability company (herein called "**Buyer**"), the sum of **Two Hundred Fifty Thousand Dollars** (**$250,000.00**) (the "**Deposit**") evidenced by readily available funds payable to Sam Leslie, Chapter 7 Trustee for the Bankruptcy Estate of Coldwater Development, LLC, Case No. 2:21-bk-10335-BB in the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**"), jointly administered with the Bankruptcy Estate of Lydda Lud, LLC, Case No. 2:21-bk-10336-BB (together, the "**Estates**" or the "**Seller**"; and such Cases together, the "**Bankruptcy Case**"), as the deposit on account of a bid price of as follows:

|  |  |
|---|---|
| a) High Bid | $  689,320.00 |
| b) Buyer's Premium | $1,010,680.00 |
| c) Total Purchase Price (=1a + 1b) | $1,700,000.00 |

for the purchase of the property described below (the "**Property**").

1.  The Property consists of the following:

1.1     All of the Estates' rights, title and interests in and to the real property located in the City of Los Angeles, County of Los Angeles, State of California which is legally described on **Exhibit A** attached to this Agreement and incorporated herein by reference (the "**Land**"), together with all rights, privileges, easements and appurtenances to the Land (including, without limitation, all minerals, oil, gas and other hydrocarbon substances, and all geothermal, sand, rock, or gravel resources, on and under the Land (collectively, "**Mineral Rights**"), as well as all development rights, air rights, water rights, riparian rights and water stock relating to the Land and any rights-of-way, easements or other appurtenances used in connection with the beneficial use and enjoyment of the Land and all roadways adjoining or servicing the Land (collectively, including the Mineral Rights, the "**Appurtenances**").

1.2     All of the Estates' rights, title and interests in and to all buildings and related improvements and all fixtures now or hereafter located on the Land, including, without limitation, (i) all storage facilities and all houses, sheds, warehouses, mobile homes, and other buildings, (ii) all irrigation and drainage equipment located on the Land, including, without limitation, wells, well casings, pumps, motors, engines, electrical panels, gearheads, sand filters and pressure systems pumps, pivots, sprinklers, drip irrigation systems, tow lines, hand lines, irrigation pipe, drainage pipe and culverts, (iii) all enclosures of the Land or any part thereof, including, without limitation, fences, gates, shuts, posts, poles, barbed wire and electric wire, (iv) all electric, gas and water lines and equipment located on the Land, including, without limitation, transformers, circuit breakers, switch boxes, fuse and breaker panels, regulators, cut on/off valves, wiring and pipe, and (v) all trees, vines and other permanent plantings, whether mature or immature, now or hereafter growing on the Land, together with all trellises, wires, end posts, and stakes relating thereto (collectively, the "**Improvements**").

Page 1                          Buyer Initials ____  Seller Initials ____

**EXHIBIT 1**                                              **34**

      1.3     All of the Estates' rights, titles and interest in and to any materials to be used or which have been used to construct or provide improvements to any part of the Land, and all purchase orders entered into in the ordinary course of business with respect thereto that are open as of the Closing Date (as hereinafter defined).

      1.4     All of the Estates' right, title and interest in and to any and all engineering reports, analyses and studies, surveys and plans and specifications commissioned or prepared in connection with development, improvement, use or operation of the Land and/or the Improvements.

      1.5     To the extent transferable or assignable, all of the Estates' rights, title and interest in and to other intangible property and rights relating to the Land and/or used in connection with the Land, including, but not limited to all governmental licenses, authorizations and permits and other entitlements (and all applications therefor) pertaining to the Land or the development, ownership, management or operation thereof, and all prepaid items (including prepaid real property tax).

      1.6     All of the Estates' rights, title and interest in and to the machinery, tools, equipment and other tangible personal property located on the Land and used in the development, improvement, operation or maintenance of the Land.

      1.7     All claims and causes of action of the Estates as of the Closing Date (regardless of whether or not such claims and causes of action have been asserted by an Estate) to the extent relating to the ownership, development, improvement or operation of the Land and/or the Improvements following the Closing Date, *excluding*, however, the Estates' rights (if any) in any claims or causes of action asserted in the case *Mohamed Hadid and AM Family Fund, LLC, Plaintiffs v. Give Back, LLC and Alexander Von Furstenberg, Defendants*, pending in Los Angeles Superior Court (Case No. 21SMCV00967).

Except as expressly provided herein, Buyer is not assuming and shall not be liable for any liabilities or obligations with respect to the Property arising on or prior to the Closing Date.

Buyer acknowledges and agrees that, notwithstanding anything to the contrary set forth herein, at the Close of Escrow Buyer shall acquire ownership of the Property subject to the lien and security interest in the Land and certain or all of the other Property created by the Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of March 16, 2017 (the "**Deed of Trust**") and recorded in the Official Records maintained in the Los Angeles County, California Recorder's Office as Instrument # 20170310860, which secures, among other things, payment of the promissory note dated March 17, 2017 in the stated principal amount of $25,000,000 made by Coldwater Development LLC, a California limited liability company, and Lydda Lud, LLC, a California limited liability company (jointly and severally, as borrower) held by Give Back, LLC, a Delaware limited liability company (as successor in interest to Romspen California Mortgage Limited Partnership, an Ontario limited partnership), which was made pursuant to the Loan Agreement dated as of March 17, 2017.

      2.     Buyer will deposit into escrow with A&A Escrow ("**Escrow Holder**"), in an escrow account opened and administered by Escrow Holder in respect of the sale of the Property, the balance of the Total Purchase Price as follows:

**Balance of all funds necessary to close escrow is due 48 hours prior to the scheduled Closing Date in cash by wire transfer or immediately available federal funds to a bank account designated by Escrow Holder.**

      3.     This Purchase Contract and Receipt for Deposit (this "**Agreement**") constitutes escrow instructions to the Escrow Holder.

Buyer Initials _____ Seller Initials _____

**35**

4.      The consummation of the transactions contemplated by this Agreement, including the sale and transfer of the Property to Buyer and payment of the Total Purchase Price to Seller, is referred to herein as the "**Closing**" or "**Close of Escrow**". The Close of Escrow shall occur on or before the date which is fourteen (14) days after the date upon which the Sale Order (as defined in **Section 14**) becomes a final, non-appealable order of the Bankruptcy Court (the "**Closing Date**"); provided that in no event shall the Closing Date occur later than May 31, 2022 (the "**Outside Date**"). If the conditions precedent to Closing set forth herein have not been satisfied or waived on or before the Outside Date, then any Party who is not in default hereunder may terminate this Agreement. Alternatively, the Parties may mutually agree in writing to an extended Closing Date. Until this Agreement is either terminated or the Parties have agreed in writing upon an extended Closing Date, the Parties shall diligently continue to work to satisfy all conditions to Closing and the transaction contemplated herein shall close as soon as such conditions are satisfied or waived. If this Agreement is terminated as a result of failure of any condition precedent to Closing set forth in this Contract, the Seller shall return the Deposit to Buyer. If Seller does not accept Buyer's offer and execute this Contract and deliver its signed counterpart hereof to Buyer within the time provided in **Section 22** hereof, the Seller shall return the Deposit to Buyer.

5.      Title is to be conveyed by quitclaim deed and is subject to the following: (a) all unpaid property taxes, (b) covenants, conditions and restrictions of record, (c) easements of record, and (d) local, state and federal laws, ordinances or governmentalregulations, including but not limited to, building and zoning laws, ordinances and regulations, now or hereafter in effect relating to the Property (collectively, the "**Permitted Exceptions**"). Seller shall deliver or cause to be delivered t o Buyer, as a condition precedent to Buyer's obligation to purchase the Property pursuant hereto, a standard coverage American Land Title Association owner's policy issued by a title insurance company reasonably satisfactory to Buyer showing title to the Property vested in Buyer (or its designee), subject only to the Permitted Exceptions, and containing all endorsements reasonably requested by Buyer and no requirements for effectiveness of coverage to be afforded thereby which have not been satisfied at or prior to the Closing (the "**Title Insurance Policy**"). Buyer agrees to accept title to the Property subject to the Permitted Exceptions, excepting monetary liens and encumbrances which shall be eliminated by Seller prior to the Close of Escrow. If Seller is unable to furnish the Title Insurance Policy on the date set for the Close of Escrow, then Seller shall be given until the Outside Date to cure any defects and procure the Title Insurance Policy. If Seller fails to deliver title as above, Buyer, as its sole remedy, may terminate this Contract and the Deposit shall be returned to Buyer.

6.      On the Closing Date, Seller shall make the following deliveries to Buyer:

6.1   A quitclaim deed(s) in form and substance reasonably satisfactory to Buyer and duly executed and acknowledged by Seller, pursuant to which Seller conveys to Buyer all of Seller's right, title and interest in and to the Land, Appurtenances and Improvements;

6.2   A bill of sale and Assignment of intangible property executed by Seller in form and substance reasonably satisfactory to Buyer with respect to any tangible and intangible personal property included in the Property, together with an assignment of all assignable permits and warranties benefitting the Property.

6.2   A statement under Section 1445 of the Internal Revenue Code with respect to the Property (the "**FIRPTA Statement**").

7.      There will be no prorations as of the Closing Date, and Buyer shall accept the Property subject to all unpaid property taxes. Buyer will be required to pay closing costs, including but not limited to, document preparation fees, documentary transfer taxes, and its portion of escrow fees. The Seller will pay standard coverage title insurance premiums and its portion of the escrow fees.

8.    Possession of the Property shall be delivered to Buyer upon the Close of Escrow, free and clear of any liens or other encumbrances (including leases and other rights to occupy or possess all or any portion thereof) (other than Permitted Exceptions) and free of tenants, occupants or other persons or entities in possession of all or any portion thereof.

9.    Buyer's obligation to consummate the transactions contemplated herein shall be subject to the satisfaction or waiver by Buyer of each of the following conditions:

9.1  Seller shall have performed in all material respects the covenants on Seller's part to be performed which are required to be performed before the Closing.

9.2  Seller shall have executed and be prepared to deliver to Buyer the documents described in Sections 6.1, 6.2, 6.3 and 6.4 hereof.

9.3  The Bankruptcy Court shall have entered the Sale Order in form and substance satisfactory to Buyer in its sole discretion, and the Sale Order shall not have been reversed or stayed or modified in any material respect as of the Closing Date, and the Sale Order shall have become final and non-appealable.

9.4  The Title Company shall have irrevocably committed to issue to Buyer, at Closing, the Title Insurance Policy.

9.5  No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

10.    **"AS-IS" CONDITION**. Except as otherwise specifically stated in this Contract the Property is sold **"As-Is, Where Is, With All Faults"**, in its present condition, with no representations or warranties of any kind or character, express or implied, whatsoever. Seller and their agents shall not be responsible for any relief, including damages, rescission, reformation, allowance or adjustment based on the failure of the Property to conform to any specific standard or expectation. Buyer acknowledges and agrees that Property is being sold in an "as is, where is, with all faults" condition and Seller makes no warranty or representation of any kind or character regarding the Property, including any structure thereon or any matter relating to such Property or any such structure and further acknowledges that no agent acting on behalf of Seller was authorized to make any such warranty or representation. Buyer acknowledges that Seller has not occupied the property and is not  aware of any material facts affecting the value and desirability of the Property.  Seller will not provide a Transfer Disclosure Statement, wood-destroying pest report, lead-based paint disclosure, mold disclosure or any other disclosure with regard to the condition of the property. Buyer acknowledges that Buyer is responsible for the cost of smoke detector compliance and water heaters to be properly anchored, braced or strapped. Buyer further acknowledges that it has been given a full and complete opportunity to investigate the Property, including the right and opportunity to obtain its own consultants to examine the Property, any structure thereon, title matters, the nature, provisions and effect of all health, fire, environmental, building, zoning, subdivision and other use and occupancy laws, ordinances and regulations applicable thereto, and that Buyer is relying solely upon its own investigation and not upon any statement made by Seller or its agents. Buyer waives any right to rescind this transaction or to make a claim for damages based upon a claim of misrepresentation or omission by Seller or its agents and acknowledges that this waiver is a material part of the consideration to the Seller. Buyer and Buyer's successors expressly waive any and all rights.

11.    UPON CLOSE OF ESCROW, BUYER SHALL ASSUME THE RISK THAT ADVERSE MATTERS, INCLUDING BUT NOT LIMITED TO, CONSTRUCTION DEFECTS AND ADVERSE PHYSICAL AND ENVIRONMENTAL CONDITIONS, MAY NOT HAVE BEEN REVEALED BY BUYER'S INVESTIGATIONS, AND BUYER, UPON CLOSE OF ESCROW, SHALL BE DEEMED TO HAVE WAIVED, RELINQUISHED AND RELEASED SELLER (INCLUDING THE TRUSTEE FOR SELLER APPOINTED IN THE BANKRUPTCY CASE) FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION (INCLUDING CAUSES OF ACTION IN TORT), LOSSES, DAMAGES, LIABILITIES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES AND COURT COSTS) OF ANY AND EVERY KIND OR CHARACTER, KNOWN OR UNKNOWN, WHICH BUYER MIGHT HAVE ASSERTED OR ALLEGED AGAINST SELLER (INCLUDING THE TRUSTEE) AT ANY TIME BY REASON OF OR ARISING OUT OF ANY LATENT OR PATENT CONSTRUCTION DEFECTS OR PHYSICAL CONDITIONS, VIOLATIONS OF ANY APPLICABLE LAWS (INCLUDING, WITHOUT LIMITATION, ANY ENVIRONMENTAL LAWS) AND ANY AND ALL OTHER MATTERS REGARDING THE CONDITION OF THE PROPERTY. BUYER AGREES THAT SHOULD ANY CLEANUP, REMEDIATION OR REMOVAL OF HAZARDOUS SUBSTANCES OR OTHER ENVIRONMENTAL CONDITIONS ON THE PROPERTY BE REQUIRED AFTER THE DATE OF CLOSING, SELLER SHALL NOT BE LIABLE TO BUYER FOR SUCH CLEAN-UP, REMOVAL OR REMEDIATION.  AS PART OF THE PROVISIONS OF THIS SECTION 11, BUT NOT AS A LIMITATION THEREON, BUYER HEREBY AGREES, REPRESENTS AND WARRANTS THAT THE MATTERS RELEASED HEREIN ARE NOT LIMITED TO MATTERS WHICH ARE KNOWN OR DISCLOSED, AND BUYER HEREBY WAIVES ANY AND ALL RIGHTS AND BENEFITS WHICH IT NOW HAS, OR IN THE FUTURE MAY HAVE CONFERRED UPON IT, BY VIRTUE OF SECTION 1542 OF THE CIVIL CODE OF THE STATE OF CALIFORNIA, WHICH PROVIDES AS FOLLOWS:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Seller and Buyer acknowledge that the compensation to be paid to Seller for the Property has been decreased to take into account that the Property is being sold subject to the provisions of this **Section 11**. Seller and Buyer agree that the provisions of this **Section 11** shall survive the Close of Escrow.

12.    IF BUYER FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY AS HEREIN PROVIDED BY REASON OF ANY DEFAULT BY BUYER, SELLER SHALL BE RELEASED FROM ITS OBLIGATION TO SELL THE PROPERTY TO BUYER AND MAY PROCEED AGAINST BUYER UPON ANY CLAIM OR REMEDY WHICH IT MAY HAVE IN LAW OR EQUITY; PROVIDED, HOWEVER, THAT BY PLACING THEIR INITIALS HERE    BUYER: ( ___ ) AND SELLER: ( ___ )  AGREE THAT SELLER SHALL RETAIN THE DEPOSIT AS ITS LIQUIDATED DAMAGES IN RESPECT OF ANY SUCH CLAIM AND SHALL HAVE NO OTHER RIGHT OR REMEDY WITH RESPECT THERETO.

IF BUYER AND SELLER INITIAL THE ABOVE PROVISION, THEN BUYER AND SELLER AGREE THAT SELLER WILL INCUR DAMAGES BY REASON OF BUYER'S DEFAULT WHICH ARE IMPRACTICAL AND EXTREMELY DIFFICULT TO ASCERTAIN. BUYER AND SELLER, IN A REASONABLE EFFORT TO ASCERTAIN SELLER'S DAMAGES, HAVE AGREED BY INITIALING THE ABOVE PROVISION THAT THE TOTAL DEPOSIT SHALL BE DEEMED TO CONSTITUTE A REASONABLE ESTIMATE OF SELLER'S DAMAGES. ACCORDINGLY, IF BUYER DEFAULTS IN ITS OBLIGATION TO PURCHASE THE PROPERTY, SELLER SHALL HAVE THE RIGHT TO AN AMOUNT EQUAL TO THE DEPOSIT AS LIQUIDATED DAMAGES. THE DEPOSIT SHALL CONSTITUTE SELLER'S SOLE MONETARY REMEDY FOR BUYER'S SAID DEFAULT, UNLESS BUYER WRONGFULLY CONTESTS SELLER'S RETENTION OF SAID DEPOSIT, IN WHICH INSTANCE

SELLER SHALL ALSO BE ENTITLED TO ALL COSTS AND EXPENSES, INCLUDING ACTUAL ATTORNEYS' FEES, INCURRED BY SELLER AS A RESULT OF BUYER'S WRONGFUL ACTION.

13.     Notwithstanding any term or provision of this Contract, if Seller accepts this offer, Buyer hereby delivers to Seller an amount equal to One Hundred Dollars ($100.00) from the Initial Earnest Money (the "**Independent Consideration**") as independent consideration to Seller for having entered into this Contract. The Independent Consideration shall be nonrefundable if the Close of Escrow does not occur for any reason related to a Buyer termination under this Contract, or due to a failure of a condition to the Close of Escrow, and to the extent that this Contract requires  any funds to be refunded to Buyer, any amount so refunded shall not include the Independent Consideration.

14.     Promptly following the mutual execution and delivery of this Agreement by the parties (and in no event later than five (5) business days thereafter), Seller shall make a motion for an order from the Bankruptcy Court approving this Agreement and the sale of the Property to Buyer in accordance with the terms hereof, which order must be in substantially the form attached hereto as **Exhibit B** and otherwise in form and substance satisfactory to Buyer in its sole discretion (the "**Sale Order**"). Following the filing of the such motion, Seller shall use reasonable, good faith efforts to obtain Bankruptcy Court approval and entry of the Sale Order, and Buyer shall cooperate in all reasonable respects in such efforts. Both Buyer's and Seller's obligations to consummate the transactions contemplated by this Agreement shall be conditioned upon the Bankruptcy Court's entry of the Sale Order. If the Bankruptcy Court declines to issue the Sale Order, then this Agreement shall automatically terminate and Seller and Buyer shall be relieved of any further liability or obligation hereunder, and the Deposit shall be returned to Buyer. This Agreement automatically shall terminate if the Approval Order is for any reason whatsoever not entered by the Bankruptcy Court on or before April 15, 2022, or the Closing does not occur by the Outside Date.

15.     Time is of the essence. All modifications or extensions to this Contract shall be in writing signed by the parties.

16.     Buyer acknowledges that Seller is the Chapter 11 Trustee for the United States Bankruptcy Court, Central District of California/Los Angeles Division, Case No 2:21-bk-10335-BB / 2:21-bk-10336-BB. Any dispute or action pertaining to this Contract shall be brought in and shall be subject to the jurisdiction of said Court, or if that Court does not have jurisdiction for any reasons, in any court of competent jurisdiction located in Los Angeles County, California. In any such action or dispute the prevailing party shall be entitled to reasonable attorney's fees and costs.

17.     Buyer acknowledges that this sale is to be submitted to and is subject to the confirmation and approval of the United States Bankruptcy Court, Central District of California/Los Angeles Division. Seller covenants to seek said approval from the Court at the earliest opportunity.

18.     This Contract may be executed in multiple counterparts, all of which when taken together shall constitute one Contract. For purposes of executing this Contract, a document signed and transmitted by facsimile machine or telecopier or electronic mail shall be treated as an original document. The signature of any party thereon shall be considered as an original signature, and the document transmitted shall be considered to have the same binding legal effect as an original signature on an original document.

19.     THIS CONTRACT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE SUBSTANTIVE FEDERAL LAWS OF THE UNITED STATES AND THE LAWS OF THE STATE OF CALIFORNIA.

20.     This Agreement and the Exhibits hereto constitute the entire agreement and supersede all prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof and thereof and supersede and cancel all prior agreements, negotiations, correspondence, undertakings, understandings and communications of the Parties, oral and written, with respect to the subject matter hereof, and are not intended to confer upon any person or entity other than the Parties hereto and thereto and those Released Parties who are not signatories of this Agreement any rights or remedies hereunder.  Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

21.     This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties hereto.

22.    Buyer acknowledges that Buyer has read and understands the terms and conditions of purchase as set forth in this Contract, and agrees to purchase the Property at, for and upon the terms of this Contract and for the stated Total Purchase Price. Buyer agrees that Buyer's execution and delivery of this Contract to Seller shall constitute an irrevocable offer to purchase made to Seller but shall not be binding upon Seller unless and until actually executed by Seller or Seller's duly authorized agent. Buyer hereby agrees that this offer shall remain irrevocable until 5:00 PM Pacific Time on the tenth (10th) business day following its execution of this Contract. Notice from Seller of its acceptance or rejection of Buyer's offer under this Section 22 may be given by telephone and confirmed by letter at a later date. Failure of Seller to notify Buyer by the foregoing date and time that Seller rejects Buyer's offer shall not constitute an acceptance by the Seller of Buyer's offer.

**BUYER**:

**CASTLE REAL ESTATE, LLC,**
a Delaware limited liability company

By: _____
    Name: Michel Eisner
    Its:  Manager

Address:

c/o Eisner, LLP
9601 Wilshire Boulevard, 7th Floor
Beverly Hills, California 90210
Attention:  Michael Eisner, Esquire
Telephone: (310)855-3200
Facsimile: (310) 855-3201
email:  meisner@eisnerlaw.com

## ACCEPTANCE

The undersigned Seller accepts and agrees to sell the Property on the above terms and conditions, subject to overbid and Bankruptcy Court confirmation.  Seller has employed Tranzon Asset Strategies and their agents as Broker/Auctioneer and Seller agrees to pay for its services pursuant to their separate agreement.

Seller Signature: _____

Seller: Sam S. Leslie, Chapter 7 Trustee for **COLDWATER DEVELOPMENT LLC**, a California limited liability company, and **LYDDA LUD, LLC**, a California limited liability company, Debtors

**Seller's Broker agrees to the foregoing:**

Broker Signature _____    Date: _3-24 -22_____

WFS, Inc. dba Tranzon Asset Strategies
9891 Irvine Center Drive, Suite 200
Irvine, CA 92618
949.727.9011
BRE License 01850659

**42**

**Exhibit A**

# LEGAL DESCRIPTION

**The land referred to herein is situated in the State of California, County of Los Angeles, City of Beverly Hills and described as follows:**

PARCEL 1:  APN 4387-020-001

THE EAST HALF OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 1 SOUTH, RANGE 15 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT OF SAID LAND IN THE DISTRICT LAND ON JUNE 25, 1887.

PARCEL 2:  APN 4387-020-009

THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 1 SOUTH, RANGE 15 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THEREFROM THAT PORTION OF SAID LAND LYING NORTHWESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHERLY LINE OF SAID SOUTHWEST QUARTER, DISTANT THEREON SOUTH 88 DEGREES 42 MINUTES 03 SECONDS EAST 434.00 FEET FROM THE NORTHWEST CORNER OF SAID SOUTHWEST ONE-QUARTER; THENCE SOUTHWESTERLY IN A DIRECT LINE TO A POINT IN THE WESTERLY LINE OF SAID SOUTHWEST QUARTER; DISTANT THEREON SOUTHERLY 200.00 FEET FROM SAID NORTHWEST QUARTER SECTION CORNER.

PARCEL 3:  APN 4387-022-001 & 4387-022-002

THAT PORTION OF LOTS 5 AND 6 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING WESTERLY OF THE WESTERLY AND NORTHERLY BOUNDARY LINES OF TRACT NO. 20500, AS PER MAP RECORDED IN BOOK 580 PAGES 25 AND 26 OF MAPS, RECORDS OF SAID COUNTY, SAID WESTERLY AND NORTHERLY LINES OF SAID TRACT NO. 20500 BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF LOT 1 OF SAID TRACT NO. 20550; THENCE ALONG THE WESTERLY BOUNDARY LINE OF SAID TRACT NO. 20500 NORTH 2 DEGREES 44 MINUTES 45 SECONDS WEST 200.00 FEET TO THE NORTHWEST CORNER OF SAID LOT 1 OF TRACT NO. 20500; THENCE ALONG THE NORTHERLY LINE OF SAID TRACT NO. 20500; NORTH 86 DEGREES 27 MINUTES 03 SECONDS EAST 214.00 FEET TO AN ANGLE POINT IN THE BOUNDARY OF SAID TRACT NO. 20500, NORTH 13 DEGREES 11 MINUTES 03 SECONDS EAST 292.01 FEET TO THE NORTHWEST CORNER OF SAID LOT 6 OF SAID TRACT NO. 20500, BEING A POINT ON THE NORTHERLY LINE OF SAID LOTS OF THE COLDWATER CANYON TRACT.

EXCEPT THAT PORTION, IF ANY, OF SAID LOT 6 LYING WITHIN THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 1, RANGE 15 WEST, SAN BERNARDINO MERIDIAN.

PARCEL 4:  APN 4387-021-019

THAT PORTION OF LOT 1, OF COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

BEGINNING AT A POINT IN THE WESTERLY PROLONGATION OF THE NORTHERLY LINE OF LOT 7 OF TRACT NO. 11859, AS PER MAP RECORDED IN BOOK 255 PAGES 22 AND 23 OF MAPS; IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SAID POINT BEING DISTANT ALONG SAID PROLONGATION AND NORTHERLY LINE NORTH 78 DEGREES 17 MINUTES 00 SECONDS WEST 311.77 FEET FROM THE NORTHEASTERLY CORNER OF SAID LOT 7; THENCE ALONG SAID PROLONGATION SOUTH 78 DEGREES 17 MINUTES 00 SECONDS EAST 31.03 FEET TO A POINT DISTANT NORTH 78 DEGREES 17 MINUTES 00 SECONDS WEST 150.74 FEET FROM THE NORTHWESTERLY CORNER OF SAID LOT 7; THENCE SOUTH 51 DEGREES 53 MINUTES 58 SECONDS WEST TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 1; THENCE ALONG SAID SOUTHERLY LINE OF SAID LOT 1 NORTH 85 DEGREES 57 MINUTES 00 SECONDS WEST TO THE SOUTHWEST CORNER OF SAID LOT 1; THENCE ALONG THE WESTERLY LINE OF SAID LOT 1 NORTH 00 DEGREES 34 MINUTES 40 SECONDS EAST 213.54 FEET TO THE NORTHWEST CORNER OF SAID LOT 1; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 1 SOUTH 88 DEGREES 22 MINUTES 30 SECONDS EAST 1277.69 FEET TO THE NORTHWESTERLY CORNER OF THE LAND DESCRIBED IN THE DEED TO CHARLES B. DIAMOND, RECORDED ON JULY 24, 1961 AS INSTRUMENT NO. 1259 IN BOOK D-1296 PAGES 51 AND 52, OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE ALONG THE WESTERLY LINE OF SAID LAND TO DIAMOND, SOUTH 05 DEGREES 06 MINUTES 00 SECONDS WEST 224.43 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 5:  APN 4387-021-019

THAT PORTION OF LOT 2 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 2; THENCE SOUTH 85 DEGREES 57 MINUTES 00 SECONDS EAST ALONG THE NORTHERLY LINE OF SAID LOT 2 TO A POINT IN THAT CERTAIN COURSE RECITED AS "SOUTH 51 DEGREES 53 MINUTES 58 SECONDS WEST 96.80 FEET" IN THE CORPORATION GRANT DEED RECORDED ON APRIL 15, 1964 AS INSTRUMENT NO. 2263 IN BOOK D-2434 PAGES 681 AND 682, OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE ALONG SAID CERTAIN COURSE SOUTH 51 DEGREES 53 MINUTES 58 SECONDS WEST TO THE WESTERLY LINE OF THAT CERTAIN PARCEL OF LAND DESCRIBED IN THE DEED OF TRUST RECORDED ON FEBRUARY 6, 1962 AS INSTRUMENT NO. 186 IN BOOK T-2216, PAGE 834, OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE SOUTH 57 DEGREES 54 MINUTES 35 SECONDS WEST 143.29 FEET TO A POINT IN THAT CERTAIN COURSE RECITED AS "NORTH 55 DEGREES 00 MINUTES 00 SECONDS WEST 100.00 FEET" IN THE DEED OF TRUST RECORDED ON APRIL 4, 1963 AS INSTRUMENT NO. 2537 IN BOOK T-2938 PAGE 145 OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SAID POINT BEING DISTANT SOUTH 55 DEGREES 00 MINUTES 00 SECONDS EAST 12.00 FEET FROM THE WESTERLY TERMINUS OF SAID LAST MENTIONED CERTAIN COURSE; THENCE NORTH 55 DEGREES 00 MINUTES 00 SECONDS EAST 42.00 FEET; THENCE SOUTH 35 DEGREES 00 MINUTES 00 SECONDS WEST 23.84 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE EASTERLY, HAVING A RADIUS OF 146.00 FEET SAID CURVE BEING TANGENT AT ITS SOUTHEASTERLY TERMINUS WITH A LINE THAT IS PARALLEL WITH AND DISTANT SOUTHWESTERLY 1.00 FOOT, MEASURED AT RIGHT ANGLES, FROM THE NORTHWESTERLY PROLONGATION OF THE TANGENT PORTION OF THE NORTHEASTERLY LINE OF LOT 2 OF TRACT NO. 11859, AS PER MAP RECORDED IN BOOK 255, PAGES 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE SOUTHERLY ALONG SAID CURVE TO A POINT ON THE SOUTHERLY LINE OF LOT 2 OF SAID COLDWATER CANYON TRACT; THENCE NORTH 76 DEGREES 50 MINUTES 30 SECONDS

**45**

WEST ALONG SAID SOUTHERLY LINE TO AN ANGLE POINT IN SAID SOUTHERLY LINE DISTANT SOUTH 89 DEGREES 08 MINUTES 15 SECONDS EAST 672.10 FEET FROM THE SOUTHWEST CORNER OF SAID LAST MENTIONED LOT 2 OF THE COLDWATER CANYON TRACT; THENCE CONTINUING ALONG SAID SOUTHERLY LINE NORTH 89 DEGREES 08 MINUTES 15 SECONDS WEST 672.10 FEET TO THE SOUTHWEST CORNER OF SAID LOT 2; THENCE ALONG THE WESTERLY LINE OF SAID LOT 2 NORTH 00 DEGREES 34 MINUTES 40 SECONDS EAST 222.09 FEET TO THE POINT OF BEGINNING.

PARCEL 6:  APN 4387-021-019

THAT PORTION OF LOT 3 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 3; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 3 SOUTH 89 DEGREES 08 MINUTES 15 SECONDS EAST 672.10 FEET TO AN ANGLE IN SAID NORTHERLY LINE; THENCE SOUTH 76 DEGREES 50 MINUTES 30 SECONDS EAST TO A POINT IN THAT CERTAIN CURVE RECITED AS "A TANGENT CURVE CONCAVE EASTERLY, HAVING A RADIUS OF 146.00 FEET, SAID CURVE BEING TANGENT AS ITS SOUTHEASTERLY TERMINUS, WITH A LINE THAT IS PARALLEL WITH AND DISTANT SOUTHWESTERLY 1.00 FOOT, MEASURED AT RIGHT ANGLES FROM THE NORTHWESTERLY PROLONGATION OF THE TANGENT PORTION OF THE NORTHEASTERLY LINE OF LOT 2 OF SAID TRACT NO. 11859 IN THE CORPORATION GRANT DEED RECORDED ON APRIL 15, 1964 AS INSTRUMENT NO. 2263 IN BOOK D-2434, PAGES 681 AND 682, OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; SOUTHEASTERLY ALONG SAID CURVE TO THAT CERTAIN POINT DESCRIBED IN SAID CORPORATION GRANT DEED AS BEING "AN ARC DISTANCE OF 221.11 FEET" (FROM THE BEGINNING OF SAID CURVE IN SAID DEED); THENCE SOUTH 41 DEGREES 00 MINUTES 00 SECONDS WEST 111.09 FEET; THENCE SOUTH 66 DEGREES 48 MINUTES 37 SECONDS 12.00 FEET; THENCE SOUTH 23 DEGREES 11 MINUTES 23 SECONDS WEST 103.00 FEET; THENCE SOUTH 71 DEGREES 15 MINUTES 00 SECONDS EAST 31.00 FEET; THENCE SOUTH 15 DEGREES 45 MINUTES 00 SECONDS WEST 36.00 FEET; THENCE SOUTH 71 DEGREES 15 SECONDS 00 MINUTES EAST 23.15 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE SOUTHWESTERLY, HAVING A RADIUS OF 47.00 FEET; THENCE EASTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 2 DEGREES 02 MINUTES 22 SECONDS, AN ARC DISTANCE OF 17.26 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHERLY, HAVING A RADIUS OF 103.00 FEET; THENCE EASTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 37 DEGREES 15 MINUTES 57 SECONDS", AN ARC DISTANT OF 66.99 FEET; ALONG THE PROLONGATION OF A RADIAL LINE OF SAID LAST MENTIONED CURVE SOUTH 02 DEGREES 31 MINUTES 25 SECONDS WEST 39.36 FEET, MORE OR LESS, TO THE SOUTHERLY LINE OF SAID LOT 3 OF SAID COLDWATER CANYON TRACT; THENCE ALONG SAID LOT 3 OF SAID COLDWATER CANYON TRACT; THENCE ALONG SAID SOUTHERLY LINE NORTH 77 DEGREES 35 MINUTES 30 SECONDS WEST 384.04 FEET, MORE OR LESS TO AN ANGLE POINT IN SAID SOUTHERLY LINE; THENCE CONTINUING ALONG SAID SOUTHERLY LINE SOUTH 88 DEGREES 30 MINUTES 30 SECONDS WEST 716.84 FEET TO THE SOUTHWEST CORNER OF SAID LOT 3; THENCE ALONG THE WESTERLY LINE OF SAID LOT 3 NORTH 00 DEGREES 34 MINUTES 40 SECONDS EAST 402.58 FEET TO THE POINT OF BEGINNING.

PARCEL 7:  APN 4387-021-018

THAT PORTION OF LOT 4 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

**46**

BEGINNING AT A POINT ON THE SOUTHERLY LINE OF SAID LOT 4, DISTANT THEREON NORTH 79 DEGREES 33 MINUTES 10 SECONDS WEST 235.00 FEET FROM THE SOUTHEASTERLY TERMINUS OF THAT CERTAIN BOUNDARY LINE OF SAID LOT 4 SHOWN AS HAVING A BEARING AND DISTANCE OF SOUTH 79 DEGREES 33 MINUTES 10 SECONDS EAST 1057.13 FEET; THENCE NORTHWESTERLY ON A DIRECT LINE TO A POINT ON THE NORTHERLY LINE OF SAID LOT 4, DISTANT THEREON SOUTH 88 DEGREES 30 MINUTES 30 SECONDS WEST 40.00 FEET FROM THE NORTHEASTERLY TERMINUS OF THAT CERTAIN NORTHERLY LINE SHOWN AS HAVING A BEARING AND LENGTH OF SOUTH 88 DEGREES 30 MINUTES 30 SECONDS WEST 716.84 FEET.

APN:  4387-021-018, 4387-021-019, 4387-022-001, 4387-022-002, 4387-020-001, 4387-020-009

(End of Legal Description)

MAP

THE MAP CONNECTED HEREWITH IS BEING PROVIDED AS A COURTESY AND FOR INFORMATIONAL PURPOSES ONLY; THIS MAP SHOULD NOT BE RELIED UPON. FURTHERMORE, THE PARCELS SET OUT ON THIS MAP MAY NOT COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES. STEWART ASSUMES NO LIABILITY, RESPONSIBILITY OR INDEMNIFICATION RELATED TO THE MAPS NOR ANY MATTERS CONCERNING THE CONTENTS OF OR ACCURACY OF THE MAP.

47

**Exhibit B**

**48**

1   David Seror (CA Bar No. 67488)
    Jessica L. Bagdanov (CA Bar No. 281020)
2   BG Law LLP
    21650 Oxnard Street, Suite 500
3   Woodland Hills, CA 91367
    Phone:      818-827-9000
4   Facsimile: 818-827-9099
    Email:      dseror@bg.law
5               jbagdanov@bg.law

6   Counsel for Sam S. Leslie, Chapter 7 Trustee

7                    **UNITED STATES BANKRUPTCY COURT**

8                     **CENTRAL DISTRICT OF CALIFORNIA**

9                         **LOS ANGELES DIVISION**

10  In re:                                      Case No.  2:21-bk-10335-BB

11                                              Chapter 11

12  COLDWATER DEVELOPMENT, LLC,                 Jointly Administered with
    A California limited liability company,     Case No. 2:21-bk-10336-BB
13
                        Debtor.                 **ORDER:**
14
                                                **(A) AUTHORIZING THE SALE OF**
15  In re:                                      **PROPERTY FREE AND CLEAR OF**
                                                **INTERESTS, INCLUDING LIENS, CLAIMS,**
16                                              **LIABILITIES, AND ENCUMBRANCES;**
    LYDDA LUD, LLC, a California limited
17  liability company,                          **(B) GRANTING THE BUYER THE**
                                                **PROTECTIONS AFFORDED TO A GOOD**
18                      Debtor.                 **FAITH PURCHASER; AND**

19                                              **(C) GRANTING RELATED RELIEF**

20                                              Sale Hearing:
    ☒ Affects Both Debtors.                     Date:       March 30, 2022
21                                              Time:       10:00 a.m.
    ☐ Affects Coldwater Development LLC only.   Courtroom:  1539
22                                                          255 East Temple Street
    ☐ Affects Lydda Lud, LLC only.                         Los Angeles, CA  90012
23
24                      Debtors.

25

26

27         Upon the sale motion filed on March 25, 2022 [Docket No. __] (the "Sale Motion") by Sam

28  S. Leslie, the Chapter 7 Trustee (the "Trustee") for the estates of the above-captioned debtors (the

"Debtors"), and in accordance with and pursuant to the Order (1) Approving Bidding Procedures, and (2) Scheduling the Sale Hearing ("Bid Procedures Order") [Docket No. 267], for the entry of an order (this "Order") authorizing the Debtors, by and through the Trustee, and the Buyer (as defined herein) to consummate the Purchase Contract dated March 23, 2022, attached hereto as **Exhibit 1** (together with documents referred therein, necessary thereto, or ancillary thereto, the "Purchase Contract").[1] The relief requested includes, among other things:

       i.    approval of and authorization to consummate the sale of the Property, as described in the Purchase Contract, including Land, Appurtenances, Mineral Rights, Improvements, and Appurtenances (collectively, and as further described in the Purchase Contract, the "Property") to Castle Real Estate, LLC ("Buyer"), free and clear of all interests (as such term is used in section 363(f) of the Bankruptcy Code), including without limitation, liens, claims, encumbrances, leases, tenancies and other occupancies, options to purchase, agreements to sell, rights of first refusal or first offer (or any rights similar to the foregoing), rights of redemption, pledges, and charges (collectively, the "Claims, Rights, and Encumbrances"), except as otherwise provided in the Purchase Contract;

       ii.    granting the Buyer the protections afforded to a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; and

       iii.    granting certain related relief pursuant to the Bankruptcy Code and/or applicable law (with the foregoing (i) through (iii) collectively referred to as the "Sale").

      It appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and this United States Bankruptcy Court for the Central District of California, Los Angeles Division (this "Court") having jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Sale Motion and opportunity for objections or requests for hearing having been filed; and notice of the Sale having been filed; and good and sufficient opportunity to object and to be heard with respect to the Sale, the Sale Motion and the relief requested therein having been afforded to all interested persons and entities; and based on the

---

[1]   Unless stated otherwise, all capitalized terms not defined herein shall have the same meaning as set forth in the Purchase Contract. In the event of any inconsistency between this Order and the Sale Motion, the Order shall govern.

DOCS_LA:342932.6 31239/001

statements of counsel and the evidence presented in support of the relief requested by the Trustee at the hearing on the Sale Motion (the "Sale Hearing"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Sale Motion and supporting declarations, and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES THAT:[2]**

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. § 1334(a). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Sale Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2).

B.    This Order constitutes a final and appealable decision within the meaning of 28 U.S.C. § 158(a). Notwithstanding Rule 6006(d) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and to the extent necessary under Bankruptcy Rule 9014, this Court expressly finds that there is no just reason for the delay in the effectiveness of this Order, nor any just reason to delay its effect on all holders of rights in and to, and against the Property and the parties to the Purchase Contract (the "Parties"), and expressly directs the entry of this Order as set forth herein.

C.    The statutory and rule predicates for the relief requested in the Sale Motion are (i) sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(a), 365(b), 365(e), and 365(f) of Title 11 of the United States Code ("Bankruptcy Code"), (ii) Bankruptcy Rules 2002(a)(2), 2002(c)(1), 6004(a), 6004(c), 6004(f), 6004(h), 6006(a), 6006(c), 6006(f), and 6006(g), and (iii) Rule 6004-1 of this Court ("Local Rules").

**Notice of the Sale, Auction, and Cure Amounts**

D.    Actual written notice of the Sale Hearing, the Auction, the Sale Motion, the Sale, and all notices and deadlines with respect to the foregoing, and a reasonable opportunity to object or be heard with respect to the foregoing and the relief requested therein has been afforded to all known interested persons and entities (together, the "Parties-in-Interest"), including, but not limited to the following parties:

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. *See* Fed. R. Bankr. P. 7052.

3

      a.     the United States Trustee;

      b.     any party asserting Claims, Rights, and Encumbrances;

      c.     all taxing authorities having jurisdiction over any of the Property, including the Internal Revenue Service and the County of Los Angeles;

      d.     all persons known or reasonably believed to have asserted liens on any of the Property;

      e.     all persons known or reasonably believed to have expressed an interest in purchasing the Property;

      f.     all of the Debtors' known creditors; and

      g.     all other parties that have filed a notice of appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule 9010(b) and in any limited or ancillary proceeding in connection with these bankruptcy cases.

E.     The Trustee has articulated good and sufficient reasons for this Court to grant the relief requested in the Sale Motion, including, without limitation, the Sale of the Property by the Debtors acting by and through the Trustee pursuant to section 363(b) of the Bankruptcy Code.

F.     The Sale Notice provided all Parties-in-Interest with timely and proper notice of the Sale, Auction, Sale Hearing, and any deadlines to object to the Sale.

G.     As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, and Sale has been provided in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, and 9014 to all Parties-in-Interest. The Trustee has also complied with all obligations to provide notice of the Sale Motion, Auction, Sale Hearing, and Sale required by the Bid Procedures Order. The notices described above were good, sufficient, and appropriate under the circumstances, and no further or other notice of the Sale Motion, Auction, Sale Hearing, or Sale is required.

H.     Disclosures of the Purchase Contract, Auction, Sale, and Sale Hearing were good, complete, and adequate, and a reasonable opportunity to object or to be heard regarding the Sale was afforded to all Parties-in-Interest.

4

**Good Faith of the Buyer**

I.      The Buyer is not an "insider" or otherwise an "affiliate" of either of the Debtors, as those terms are defined in section 101(31) of the Bankruptcy Code.

J.      The Buyer is purchasing the Property in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of those provisions, and otherwise has proceeded in good faith in all respects in connection with the Sale in that, *inter alia*: (i) the Trustee was free to deal with any other party interested in acquiring the Property in accordance with the Bid Procedures Order; (ii) the Buyer complied with the provisions of the Bid Procedures Order; (iii) the Buyer agreed to subject its bid, in the form of the Purchase Contract, to the competitive Bid Procedures set forth in the Bid Procedures Order; (iv) all payments and other consideration to be provided by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (v) the Buyer has not engaged in any action or inaction that would cause or permit the Purchase Contract or the Sale to be avoided or would impose any costs or damages under section 363(n) of the Bankruptcy Code; (vi) no common identity of directors or controlling stockholders exists between the Buyer and the Debtors; (vii) the negotiation and execution of the Purchase Contract was at arms' length and in good faith at all times, and each Party was represented by separate and competent counsel and other professionals; and (viii) the Purchase Contract was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors.

K.      In the absence of a stay pending appeal, the Buyer is authorized to rely on this Order in closing the Sale on the terms and conditions set forth in the Purchase Contract and this Order.

**Highest and Best Offer**

L.      Along with the prior marketing by the Debtors, the Trustee conducted an extensive and adequate marketing and sale process in accordance with, and has otherwise complied in all material respects with, the Bid Procedures Order. The sale process set forth in the Bid Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Property.

M.      On March 24, 2022, the Trustee, in accordance with the Bid Procedures and the Bid Procedures Order conducted the Auction.

N.      At the conclusion of the Auction, the Trustee determined that the bid evidenced by the Purchase Contract is the highest and best offer for the Property.

O.      The Trustee's determination that the Purchase Contract constitutes the highest and best offer constitutes a valid and sound exercise of his business judgment.

P.      The Property was adequately marketed by the Trustee and his advisors, along with the prior marketing of the Property by the Debtors, and the consideration provided by the Buyer under the Purchase Contract constitutes the highest and best offer for the Property and will provide greater recoveries for the Debtors' estates than would be provided by any other available alternative.

Q.      Approval of the Sale Motion and the Purchase Contract and the consummation of the Sale are in the best interests of the Debtors, their creditors, their estates, and any other Parties-in-Interest.

R.      The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale.

S.      The consideration provided by the Buyer is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

T.      The Buyer is not a successor to the Debtors or their respective estates by reason of any theory of law or equity, and the Buyer shall not assume or in any way be responsible for any liability or obligation of any of the Debtors or their respective estates by reason thereof. The Buyer is not a mere continuation of the Debtors or their estates, and there is no continuity between the Buyer and any of the Debtors. The Buyer is not holding itself out to the public as a continuation of the Debtors. The Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and either of the Debtors.

**Validity of Transfers**

U.      The Trustee has full power and authority to execute and deliver the Purchase Contract and all other documents contemplated thereby on behalf of the Debtors and to perform the Debtors' obligations thereunder, and no further consents or approvals are required for the Debtors to consummate the Sale, except as otherwise set forth in the Purchase Contract.

**Section 363(f) of the Bankruptcy Code**

V.      The Trustee may sell the Property free and clear of all Claims, Rights, and Encumbrances because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those holders of Claims, Rights, and Encumbrances who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  As to any other holders of Claims, Rights, and Encumbrances who filed objections to the Sale Motion not otherwise withdrawn at the Sale Hearing, such Claims, Rights, and Encumbrances fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Claims, Rights, and Encumbrances either paid in full or assumed by the Buyer upon the Closing Date, or attach to the cash proceeds of the Sale ultimately attributable to the Property in which such creditor alleges an interest, in the same order of priority, with the same validity, force, and effect that such creditor had prior to the Sale, subject to any and all claims and defenses the Trustee may possess with respect thereto.

W.      The Buyer shall have no obligations with respect to any liabilities of the Debtors' estates except as specifically set forth in, and solely to the extent provided pursuant to, the Purchase Contract, and the Sale will not subject the Buyer, the Property, or any of the Buyer's assets to any liability for any Claims, Rights, and Encumbrances whatsoever (including, without limitation, under any theory of equitable law, antitrust, setoff, or successor or transferee liability).  As set forth in the Purchase Contract, the Buyer is acquiring ownership of the Property subject to the lien, security interest, and deed of trust of Give Back, LLC.

DOCS_LA:342932.6 31239/001

### Compelling Circumstances for an Immediate Sale

X.      To maximize the value of the Property, it is essential that the Sale occur within the time constraints set forth in the Purchase Contract.  Time is of the essence in consummating the Sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### General Provisions

1.      The relief requested in the Sale Motion is granted and approved, and the Sale contemplated thereby and by the Purchase Contract is approved as set forth in this Order.

2.      All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to this Court or by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

### Approval of the Purchase Contract

3.      The Purchase Contract, and all the terms and conditions thereof, are hereby approved.

4.      Pursuant to section 363(b) of the Bankruptcy Code, the Trustee on behalf of the Debtors is authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale of the Property to the Buyer pursuant to and in accordance with the terms of the Purchase Contract, (b) close the Sale as contemplated by the Purchase Contract and this Order, and (c) execute and deliver, perform under, consummate, implement, and close fully the Purchase Contract, together with all additional instruments and documents that may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Contract and such other ancillary documents.

5.      This Order shall be binding in all respects upon the Trustee, the Debtors, all creditors of the Debtors, all holders of equity interests in each Debtor, all holders of any interests, liens, claims, liabilities and encumbrances (whether known or unknown) against either Debtor or on all or any portion of the Property, the Buyer and all successors and assigns of the Buyer, and any successor trustees, if any, subsequently appointed in either of the bankruptcy cases.  In the event either of the

1   bankruptcy cases are dismissed, this Order shall remain enforceable by the Buyer in any court of

2   competent jurisdiction notwithstanding any order dismissing the bankruptcy cases.

3   **Transfer of the Assets**

6.      Pursuant to sections 105(a), 363(b), 363(f), 365(b), 365(f), and 541(a)(7) of the

Bankruptcy Code, the Trustee on behalf of the Debtors is authorized to consummate the Sale as set

forth in the Purchase Contract and transfer the Property on the Closing Date.  Such Property shall be

transferred pursuant to the Purchase Contract to the Buyer "as is where is" with all faults subject to

and in accordance with the Purchase Contract upon and as of the Closing Date, and upon Buyer's

payment in full of the Purchase Price, such transfer shall constitute a legal, valid, binding, and effective

transfer of the Property free and clear of all Claims, Rights, and Encumbrances, except as otherwise

provided in the Purchase Contract. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of

title to the Property, shall be free and clear of any and all Claims, Rights, and Encumbrances

(including, without limitation, any and all claims pursuant to any successor-in-interest or fraudulent

transfer liability theory). To the extent such Claims, Rights, and Encumbrances are not paid in full or

assumed by the Buyer upon the Closing Date, all Claims, Rights, and Encumbrances on the Property

shall attach solely to the proceeds of the Sale with the same validity, priority, force, and effect that

they now have as against the Property, subject to any and all claims and defenses the Trustee, Debtors

and their estates may possess with respect thereto.

7.      Except as expressly permitted or otherwise specifically provided in the Purchase

Contract or this Order, all persons or entities holding Claims, Rights, and Encumbrances in all or any

portion of the Property arising under or out of, in connection with, or in any way relating to the

Debtors, the Property, the operation of the Debtors' business prior to the Closing Date, the

consummation of the Sale and transfer of the Property to the Buyer, hereby are forever barred,

estopped, and permanently enjoined from asserting against the Buyer, or its successors or assigns, and

the Property, such persons' or entities' Claims, Rights, and Encumbrances in and to the Property and/or

against the Buyer. On the Closing Date, each creditor is authorized to execute such documents and

take all other actions as may be necessary to release Claims, Rights, and Encumbrances on the

Property, if any, as provided herein, as such Claims, Rights, and Encumbrances may have been

9

recorded or may otherwise exist. The Sale authorized herein shall be of full force and effect, regardless of either Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business. Upon consummation of the Sale as set forth in the Purchase Contract, the Buyer shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any lien or encumbrance with respect to the Property (but not the proceeds thereof) that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

8.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee on behalf of the Debtors to sell and transfer the Property to the Buyer in accordance with the terms of the Purchase Contract and this Order.

9.    All persons and entities that are in possession of some or all of the Property on the Closing Date are directed to surrender possession of such Property to the Buyer or its assignee at Closing in accordance with the Purchase Contract.

10.    The provisions of this Order authorizing the Sale of the Property by the Trustee free and clear of Claims, Rights, and Encumbrances shall be self-executing, and neither of the Trustee, the Buyer, or any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents, or other instruments to effectuate, consummate, and/or implement the provisions hereof with respect to the Sale; *provided*, *however*, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the Purchase Contract.

11.    Without limiting the foregoing, a certified copy of this Order may be filed by the Buyer with the appropriate clerk or clerks and/or agencies or departments and/or recorded to act to cancel any of the Claims, Rights, and Encumbrances on the Property of record.

12.    If any person or entity that has filed statements or other documents or agreements evidencing interests, liens, claims, liabilities, and encumbrances on all or a portion of the Property shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by

10

appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Claims, Rights, and Encumbrances on the Property, which the Person or entity has or may assert with respect to all or any portion of the Property, the Debtors and Buyer are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Property.

13.    This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons or entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any agreement or lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Contract.

14.    Any and all governmental recording offices and all other parties, persons, or entities are authorized to accept this Order for recordation on or after the Closing as conclusive evidence of the free and clear, and unencumbered, transfer of all rights, title, interest in, and ownership of and to the Property conveyed to the Buyer at Closing.

### Protections of the Buyer

15.    Effective upon the Closing Date, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer, its successors and assigns, its property, or the Property, with respect to any (a) Claims, Rights, and Encumbrances arising under, out of, in connection with or in any way relating to the Debtors, the Buyer, the Property, or the operation of the businesses to which the Property relates prior to or in connection with or relating to the Closing of the Sale, or (b) successor liability or liability under any other theory at law or in equity with respect to transferee liability, including, without limitation, with

11

respect to the foregoing (a) and (b), the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer or its successors, assigns, assets, or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Buyer or its successors, assigns, assets, or properties; (iii) creating, perfecting, or enforcing any Claims, Rights, and Encumbrances against the Buyer or its successors, assigns, assets, or properties; (iv) asserting any setoff, right or subrogation, or recoupment of any kind against any obligation due the Buyer or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; (vi) revoking, terminating or failing or refusing to issue or renew any licenses, permits, or authorizations to operate any of the Property or conduct any of the businesses operated with the Property or (vii) commencing any action, in any manner or place, arising from, out of, or in connection with the negotiation and formulation of the Purchase Contract, and the consummation of the Sale, including any actions necessary in aid thereof.

16.    Except as otherwise expressly set forth in this Order or the Purchase Contract, the Buyer shall not have any liability or other obligation of the Debtors arising under or related to any of the Property.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Purchase Contract, the Buyer shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date.  The Buyer has given, and the Debtors' estates have received, substantial, fair and reasonably equivalent consideration under the Purchase Contract for the benefit of the holders of any Claims, Rights, and Encumbrances.  The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor or transferee liability of the Buyer,

which releases shall be deemed to have been given in favor of the Buyer by all holders of Claims, Rights, and Encumbrances against any of the Debtors or in any of the Property.

17.    The Sale contemplated by the Purchase Contract is undertaken by the Buyer without collusion and in good faith, as those terms are understood in sections 363(m) and 363(n) of the Bankruptcy Code and applicable law, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization and consummation of the Sale are duly stayed pending such appeal.  The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and applicable law and as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

18.    The Sale contemplated in the Purchase Contract may not be avoided, and no damages may be assessed against the Buyer under section 363(n) of the Bankruptcy Code or applicable law.

### Other Provisions

19.    This Order and the Purchase Contract shall be binding in all respects upon all creditors (whether known or unknown), counterparties, and Parties-in-Interest, the Trustee, the Debtors and their affiliates, the Buyer, and any subsequent trustees appointed in these bankruptcy cases and the Purchase Contract shall not be subject to rejection.

20.    The Trustee and the Buyer are authorized to close the Sale on or after fourteen (14) days after entry of this Order. The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase Contract or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; *provided*, *however*, that this Court shall retain jurisdiction over any and all disputes and matters arising from or related to the Purchase Contract, the Sale and the implementation, interpretation, and enforcement of this Order.

21.    No bulk sales or any similar law of any state or jurisdiction applies in any way to the Sale.

22.    The Purchase Contract and any related agreements, documents, or other instruments (other than this Order) may be modified, amended, or supplemented by the parties thereto and in

DOCS_LA:342932.6 31239/001

**61**

accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

23.    To the extent there are any inconsistencies between the terms of this Order and the Purchase Contract (including any ancillary documents executed in connection therewith), the terms of this Order shall govern.

24.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25.    To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these bankruptcy cases, the terms of this Order shall govern.

26.    This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms of the Order and the Purchase Contract, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors by and through the Trustee are a party or which had been assigned by the Debtors and/or Debtors to the Buyer, to protect the Buyer and its assets, including the Property, against any Claims, Rights, and Encumbrances and to adjudicate, if necessary, any and all disputes relating in any way to the Sale.

# # #

# **EXHIBIT 1**

**Purchase Contract**



**Mindy Beckham**
Title Officer

Stewart Title of California, Inc.
2801 Townsgate Rd #111
Westlake Village, CA  91361
Phone:  (805) 367-5628
Fax:
Mindy.Beckham@stewart.com

# PRELIMINARY REPORT

Order No.:          1549295
Your File No.:     1431717
Buyer/Borrower Name:
Seller Name:       Coldwater Development LLC

Property Address:  Vacant land - 6 parcels, Beverly Hills, CA  90210
Vacant Land, Beverly Hills, CA  90210

In response to the above referenced application for a Policy of Title Insurance, Stewart Title of California, Inc. hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Stewart Title Guaranty Company Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referenced to as an Exception on Schedule B or not excluded from coverage pursuant to the printed Schedules, Conditions, and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on covered Risks of said policy or policies are set forth in Exhibit A attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.  Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limits of Liability for certain coverages are also set forth in Exhibit A.  Copies of the policy forms should be read. They are available from the office which issued this report.

Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.

It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.

This report, (and any supplements or amendments thereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance a binder or commitment should be requested.

| Dated as of December 30, 2021 at 7:30AM | |
|---|---|

**When replying, please contact:**    Mindy Beckham, Title Officer

Stewart Title of California, Inc.
2801 Townsgate Rd #111
Westlake Village, CA  91361
(805) 367-5628
Mindy.Beckham@stewart.com

**EXHIBIT 2**                    **64**

**IF ANY DECLARATION, GOVERNING DOCUMENT (FOR EXAMPLE, COVENANT, CONDITION OR RESTRICTION) OR DEED IDENTIFIED AND/OR LINKED IN THIS TITLE PRODUCT CONTAINS ANY RESTRICTION BASED ON AGE, RACE COLOR, RELIGION, SEX, GENDER, GENDER IDENTITY, GENDER EXPRESSION, SEXUAL ORIENTATION, FAMILIAL STATUS, MARITAL STATUS, DISABILITY, VETERAN OR MILITARY STATUS, GENETIC INFORMATION, NATIONAL ORIGIN, SOURCE OF INCOME AS DEFINED IN SUBDIVISION (p) OF SECTION 12955, OR ANCESTRY, THAT RESTRICTION VIOLATES STATE AND FEDERAL FAIR HOUSING LAWS AND IS VOID, AND MAY BE REMOVED PURSUANT TO SECTION 12956.2 OF THE GOVERNMENT CODE BY SUBMITTING A "RESTRICTIVE COVENANT MODIFICATION" FORM, TOGETHER WITH A COPY OF THE ATTACHED DOCUMENT WITH THE UNLAWFUL PROVISION REDACTED TO THE COUNTY RECORDER'S OFFICE. THE "RESTRICTIVE COVENANT MODIFICATION" FORM CAN BE OBTAINED FROM THE COUNTY RECORDER'S OFFICE AND MAY BE AVAILABLE ON ITS WEBSITE. THE FORM MAY ALSO BE AVAILABLE FROM THE PARTY THAT PROVIDED YOU WITH THIS DOCUMENT. LAWFUL RESTRICTIONS UNDER STATE AND FEDERAL LAW ON THE AGE OF OCCUPANTS IN SENIOR HOUSING OR HOUSING FOR OLDER PERSONS SHALL NOT BE CONSTRUED AS RESTRICTIONS BASED ON FAMILIAL STATUS.**

## PRELIMINARY REPORT

**The form of Policy of Title Insurance contemplated by this report is:**

☒  Standard Coverage Owner's Policy

☐  Extended Coverage Owner's Policy

☐  CLTA/ALTA Homeowners Policy

☒  Standard Coverage Loan Policy

☐  Extended Coverage Loan Policy

☐  Short Form Residential Loan Policy

☐

## SCHEDULE A

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

FEE

**Title to said estate or interest at the date hereof is vested in:**

Lydda Lud, LLC, a California limited liability company, subject to proceedings pending in the bankruptcy court where a petition for relief was filed by Lydda Lud, LLC, debtor, date of filling March 9, 2021, in the United States Bankruptcy Court for Central District of California - Los Angeles Division, Case No. 2:21-BK-10335-BB, disclosed by Lydda Lud, LLC, Chapter 11 Bankruptcy - Voluntary Petition filed May 13, 2021 as Instrument No. 20210767751 and May 26, 2021 as Instrument No. 20210845805, of Official Records, as to Parcels 1, 2 and 3

Coldwater Development LLC, a California limited liability company, subject to proceedings pending in the bankruptcy court where a petition for relief was filed by Lydda Lud, LLC, debtor, date of filling March 9, 2021, in the United States Bankruptcy Court for Central District of California - Los Angeles Division, Case No. 2:21-BK-10335-BB, disclosed by Lydda Lud, LLC, Chapter 11 Bankruptcy - Voluntary Petition filed May 26, 2021 as Instrument No. 20210845804, of Official Records, as to Parcels 4, 5 and 6

# LEGAL DESCRIPTION

**The land referred to herein is situated in the State of California, County of Los Angeles, City of Beverly Hills and described as follows:**

PARCEL 1:  APN 4387-020-001

THE EAST HALF OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 1 SOUTH, RANGE 15 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT OF SAID LAND IN THE DISTRICT LAND ON JUNE 25, 1887.

PARCEL 2:  APN 4387-020-009

THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 1 SOUTH, RANGE 15 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THEREFROM THAT PORTION OF SAID LAND LYING NORTHWESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHERLY LINE OF SAID SOUTHWEST QUARTER, DISTANT THEREON SOUTH 88 DEGREES 42 MINUTES 03 SECONDS EAST 434.00 FEET FROM THE NORTHWEST CORNER OF SAID SOUTHWEST ONE-QUARTER; THENCE SOUTHWESTERLY IN A DIRECT LINE TO A POINT IN THE WESTERLY LINE OF SAID SOUTHWEST QUARTER; DISTANT THEREON SOUTHERLY 200.00 FEET FROM SAID NORTHWEST QUARTER SECTION CORNER.

PARCEL 3:  APN 4387-022-001 & 4387-022-002

THAT PORTION OF LOTS 5 AND 6 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING WESTERLY OF THE WESTERLY AND NORTHERLY BOUNDARY LINES OF TRACT NO. 20500, AS PER MAP RECORDED IN BOOK 580 PAGES 25 AND 26 OF MAPS, RECORDS OF SAID COUNTY, SAID WESTERLY AND NORTHERLY LINES OF SAID TRACT NO. 20500 BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF LOT 1 OF SAID TRACT NO. 20550; THENCE ALONG THE WESTERLY BOUNDARY LINE OF SAID TRACT NO. 20500 NORTH 2 DEGREES 44 MINUTES 45 SECONDS WEST 200.00 FEET TO THE NORTHWEST CORNER OF SAID LOT 1 OF TRACT NO. 20500; THENCE ALONG THE NORTHERLY LINE OF SAID TRACT NO. 20500; NORTH 86 DEGREES 27 MINUTES 03 SECONDS EAST 214.00 FEET TO AN ANGLE POINT IN THE BOUNDARY OF SAID TRACT NO. 20500, NORTH 13 DEGREES 11 MINUTES 03 SECONDS EAST 292.01 FEET TO THE NORTHWEST CORNER OF SAID LOT 6 OF SAID TRACT NO. 20500, BEING A POINT ON THE NORTHERLY LINE OF SAID LOTS OF THE COLDWATER CANYON TRACT.

EXCEPT THAT PORTION, IF ANY, OF SAID LOT 6 LYING WITHIN THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 1, RANGE 15 WEST, SAN BERNARDINO MERIDIAN.

PARCEL 4:  APN 4387-021-019

**67**

THAT PORTION OF LOT 1, OF COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

BEGINNING AT A POINT IN THE WESTERLY PROLONGATION OF THE NORTHERLY LINE OF LOT 7 OF TRACT NO. 11859, AS PER MAP RECORDED IN BOOK 255 PAGES 22 AND 23 OF MAPS; IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SAID POINT BEING DISTANT ALONG SAID PROLONGATION AND NORTHERLY LINE NORTH 78 DEGREES 17 MINUTES 00 SECONDS WEST 311.77 FEET FROM THE NORTHEASTERLY CORNER OF SAID LOT 7; THENCE ALONG SAID PROLONGATION SOUTH 78 DEGREES 17 MINUTES 00 SECONDS EAST 31.03 FEET TO A POINT DISTANT NORTH 78 DEGREES 17 MINUTES 00 SECONDS WEST 150.74 FEET FROM THE NORTHWESTERLY CORNER OF SAID LOT 7; THENCE SOUTH 51 DEGREES 53 MINUTES 58 SECONDS WEST TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 1; THENCE ALONG SAID SOUTHERLY LINE OF SAID LOT 1 NORTH 85 DEGREES 57 MINUTES 00 SECONDS WEST TO THE SOUTHWEST CORNER OF SAID LOT 1; THENCE ALONG THE WESTERLY LINE OF SAID LOT 1 NORTH 00 DEGREES 34 MINUTES 40 SECONDS EAST 213.54 FEET TO THE NORTHWEST CORNER OF SAID LOT 1; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 1 SOUTH 88 DEGREES 22 MINUTES 30 SECONDS EAST 1277.69 FEET TO THE NORTHWESTERLY CORNER OF THE LAND DESCRIBED IN THE DEED TO CHARLES B. DIAMOND, RECORDED ON JULY 24, 1961 AS INSTRUMENT NO. 1259 IN BOOK D-1296 PAGES 51 AND 52, OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE ALONG THE WESTERLY LINE OF SAID LAND TO DIAMOND, SOUTH 05 DEGREES 06 MINUTES 00 SECONDS WEST 224.43 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 5:  APN 4387-021-019

THAT PORTION OF LOT 2 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 2; THENCE SOUTH 85 DEGREES 57 MINUTES 00 SECONDS EAST ALONG THE NORTHERLY LINE OF SAID LOT 2 TO A POINT IN THAT CERTAIN COURSE RECITED AS "SOUTH 51 DEGREES 53 MINUTES 58 SECONDS WEST 96.80 FEET" IN THE CORPORATION GRANT DEED RECORDED ON APRIL 15, 1964 AS INSTRUMENT NO. 2263 IN BOOK D-2434 PAGES 681 AND 682, OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE ALONG SAID CERTAIN COURSE SOUTH 51 DEGREES 53 MINUTES 58 SECONDS WEST TO THE WESTERLY LINE OF THAT CERTAIN PARCEL OF LAND DESCRIBED IN THE DEED OF TRUST RECORDED ON FEBRUARY 6, 1962 AS INSTRUMENT NO. 186 IN BOOK T-2216, PAGE 834, OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE SOUTH 57 DEGREES 54 MINUTES 35 SECONDS WEST 143.29 FEET TO A POINT IN THAT CERTAIN COURSE RECITED AS "NORTH 55 DEGREES 00 MINUTES 00 SECONDS WEST 100.00 FEET" IN THE DEED OF TRUST RECORDED ON APRIL 4, 1963 AS INSTRUMENT NO. 2537 IN BOOK T-2938 PAGE 145 OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SAID POINT BEING DISTANT SOUTH 55 DEGREES 00 MINUTES 00 SECONDS EAST 12.00 FEET FROM THE WESTERLY TERMINUS OF SAID LAST MENTIONED CERTAIN COURSE; THENCE NORTH 55 DEGREES 00 MINUTES 00 SECONDS EAST 42.00 FEET; THENCE SOUTH 35 DEGREES 00 MINUTES 00 SECONDS WEST 23.84 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE EASTERLY, HAVING A RADIUS OF 146.00 FEET SAID CURVE BEING TANGENT AT ITS SOUTHEASTERLY TERMINUS WITH A LINE THAT IS PARALLEL WITH AND DISTANT SOUTHWESTERLY 1.00 FOOT, MEASURED AT RIGHT ANGLES, FROM THE NORTHWESTERLY PROLONGATION OF THE TANGENT PORTION OF THE NORTHEASTERLY LINE OF LOT 2 OF TRACT NO. 11859, AS PER MAP RECORDED IN BOOK 255, PAGES 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE SOUTHERLY ALONG SAID CURVE TO A POINT ON THE SOUTHERLY LINE OF LOT 2 OF SAID COLDWATER CANYON TRACT; THENCE NORTH 76 DEGREES 50 MINUTES 30 SECONDS

WEST ALONG SAID SOUTHERLY LINE TO AN ANGLE POINT IN SAID SOUTHERLY LINE DISTANT SOUTH 89 DEGREES 08 MINUTES 15 SECONDS EAST 672.10 FEET FROM THE SOUTHWEST CORNER OF SAID LAST MENTIONED LOT 2 OF THE COLDWATER CANYON TRACT; THENCE CONTINUING ALONG SAID SOUTHERLY LINE NORTH 89 DEGREES 08 MINUTES 15 SECONDS WEST 672.10 FEET TO THE SOUTHWEST CORNER OF SAID LOT 2; THENCE ALONG THE WESTERLY LINE OF SAID LOT 2 NORTH 00 DEGREES 34 MINUTES 40 SECONDS EAST 222.09 FEET TO THE POINT OF BEGINNING.

PARCEL 6:  APN 4387-021-019

THAT PORTION OF LOT 3 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 3; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 3 SOUTH 89 DEGREES 08 MINUTES 15 SECONDS EAST 672.10 FEET TO AN ANGLE IN SAID NORTHERLY LINE; THENCE SOUTH 76 DEGREES 50 MINUTES 30 SECONDS EAST TO A POINT IN THAT CERTAIN CURVE RECITED AS "A TANGENT CURVE CONCAVE EASTERLY, HAVING A RADIUS OF 146.00 FEET, SAID CURVE BEING TANGENT AS ITS SOUTHEASTERLY TERMINUS, WITH A LINE THAT IS PARALLEL WITH AND DISTANT SOUTHWESTERLY 1.00 FOOT, MEASURED AT RIGHT ANGLES FROM THE NORTHWESTERLY PROLONGATION OF THE TANGENT PORTION OF THE NORTHEASTERLY LINE OF LOT 2 OF SAID TRACT NO. 11859 IN THE CORPORATION GRANT DEED RECORDED ON APRIL 15, 1964 AS INSTRUMENT NO. 2263 IN BOOK D-2434, PAGES 681 AND 682, OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; SOUTHEASTERLY ALONG SAID CURVE TO THAT CERTAIN POINT DESCRIBED IN SAID CORPORATION GRANT DEED AS BEING "AN ARC DISTANCE OF 221.11 FEET" (FROM THE BEGINNING OF SAID CURVE IN SAID DEED); THENCE SOUTH 41 DEGREES 00 MINUTES 00 SECONDS WEST 111.09 FEET; THENCE SOUTH 66 DEGREES 48 MINUTES 37 SECONDS 12.00 FEET; THENCE SOUTH 23 DEGREES 11 MINUTES 23 SECONDS WEST 103.00 FEET; THENCE SOUTH 71 DEGREES 15 MINUTES 00 SECONDS EAST 31.00 FEET; THENCE SOUTH 15 DEGREES 45 MINUTES 00 SECONDS WEST 36.00 FEET; THENCE SOUTH 71 DEGREES 15 SECONDS 00 MINUTES EAST 23.15 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE SOUTHWESTERLY, HAVING A RADIUS OF 47.00 FEET; THENCE EASTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 2 DEGREES 02 MINUTES 22 SECONDS, AN ARC DISTANCE OF 17.26 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHERLY, HAVING A RADIUS OF 103.00 FEET; THENCE EASTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 37 DEGREES 15 MINUTES 57 SECONDS", AN ARC DISTANT OF 66.99 FEET; ALONG THE PROLONGATION OF A RADIAL LINE OF SAID LAST MENTIONED CURVE SOUTH 02 DEGREES 31 MINUTES 25 SECONDS WEST 39.36 FEET, MORE OR LESS, TO THE SOUTHERLY LINE OF SAID LOT 3 OF SAID COLDWATER CANYON TRACT; THENCE ALONG SAID LOT 3 OF SAID COLDWATER CANYON TRACT; THENCE ALONG SAID SOUTHERLY LINE NORTH 77 DEGREES 35 MINUTES 30 SECONDS WEST 384.04 FEET, MORE OR LESS TO AN ANGLE POINT IN SAID SOUTHERLY LINE; THENCE CONTINUING ALONG SAID SOUTHERLY LINE SOUTH 88 DEGREES 30 MINUTES 30 SECONDS WEST 716.84 FEET TO THE SOUTHWEST CORNER OF SAID LOT 3; THENCE ALONG THE WESTERLY LINE OF SAID LOT 3 NORTH 00 DEGREES 34 MINUTES 40 SECONDS EAST 402.58 FEET TO THE POINT OF BEGINNING.

PARCEL 7:  APN 4387-021-018

THAT PORTION OF LOT 4 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE SOUTHERLY LINE OF SAID LOT 4, DISTANT THEREON NORTH 79 DEGREES 33 MINUTES 10 SECONDS WEST 235.00 FEET FROM THE SOUTHEASTERLY TERMINUS OF THAT CERTAIN BOUNDARY LINE OF SAID LOT 4 SHOWN AS HAVING A BEARING AND DISTANCE OF SOUTH 79 DEGREES 33 MINUTES 10 SECONDS EAST 1057.13 FEET; THENCE NORTHWESTERLY ON A DIRECT LINE TO A POINT ON THE NORTHERLY LINE OF SAID LOT 4, DISTANT THEREON SOUTH 88 DEGREES 30 MINUTES 30 SECONDS WEST 40.00 FEET FROM THE NORTHEASTERLY TERMINUS OF THAT CERTAIN NORTHERLY LINE SHOWN AS HAVING A BEARING AND LENGTH OF SOUTH 88 DEGREES 30 MINUTES 30 SECONDS WEST 716.84 FEET.

APN:  4387-021-018, 4387-021-019, 4387-022-001, 4387-022-002, 4387-020-001, 4387-020-009

(End of Legal Description)

MAP

THE MAP CONNECTED HEREWITH IS BEING PROVIDED AS A COURTESY AND FOR INFORMATIONAL PURPOSES ONLY; THIS MAP SHOULD NOT BE RELIED UPON. FURTHERMORE, THE PARCELS SET OUT ON THIS MAP MAY NOT COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES. STEWART ASSUMES NO LIABILITY, RESPONSIBILITY OR INDEMNIFICATION RELATED TO THE MAPS NOR ANY MATTERS CONCERNING THE CONTENTS OF OR ACCURACY OF THE MAP.

# <u>SCHEDULE B</u>

**At the date hereof, exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy or policies would be as follows:**

**Taxes:**

A.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes, to be levied for the fiscal year 2022- 2023.

B.  General and special city and/or county taxes, including any personal property taxes, and any assessments collected with taxes, for the fiscal year 2021 - 2022:
1st Installment          : $4,792.24
Status 1st               : Delinquent
Penalty                  : $479.22
2nd Installment:         : $4,792.22
Status 2nd               : Open
Parcel No.               : 4387-020-001
Code Area/Tracer No. : 00067

C.  Property taxes have been declared defaulted for non-payment of delinquent taxes for the fiscal year(s) 2018 - 2020 for Parcel No. 4387-020-001. Amounts due show as follows:
Amount: $39,158.24; due by: January 31, 2022
Amount: $39,582.57; due by: February 28, 2022
Amount: $40,006.90; due by: March 31, 2022
Prior to recording, the final amounts due must be confirmed with tax collector.

D.  Assessment by Mountains Recreation and Conservation Authority Community Faciolities District No. 1 improvement district, bond number not shown.

NOTE: This assessment is collected with the county/city real property taxes.

Matters contained therein affect: Parcel 1.

E.  General and special city and/or county taxes, including any personal property taxes, and any assessments collected with taxes, for the fiscal year 2021 - 2022:
1st Installment          : $4,016.99
Status 1st               : Delinquent
Penalty                  : $401.69
2nd Installment:         : $4,016.98
Status 2nd               : Open
Parcel No.               : 4387-020-009
Code Area/Tracer No. : 00067

F.  Property taxes have been declared defaulted for non-payment of delinquent taxes for the fiscal year(s) 2018 - 2020 for Parcel No. 4387-020-009. Amounts due show as follows:
Amount: $32,826.42; due by: January 31, 2022
Amount: $33,182.06; due by: February 28, 2022
Amount: $33,537.70; due by: March 31, 2022
Prior to recording, the final amounts due must be confirmed with tax collector.

G.    Assessment by the Mountains Recreation and Conservation Authority Community Facilities
District No. 1 improvement district, bond number not shown.

NOTE: This assessment is collected with the county/city real property taxes.

Matters contained therein affect: Parcel 2.

H.    General and special city and/or county taxes, including any personal property taxes, and any
assessments collected with taxes, for the fiscal year 2021 - 2022:
1st Installment          : $2,201.20
Status 1st               : Delinquent
Penalty                  : $220.12
2nd Installment:         : $2,201.18
Status 2nd               : Open
Parcel No.               : 4387-022-001
Code Area/Tracer No. : 00067

I.    Property taxes have been declared defaulted for non-payment of delinquent taxes for the fiscal
year(s) 2018 - 2020 for Parcel No. 4387-022-001. Amounts due show as follows:
Amount: $18,018.90; due by: January 31, 2022
Amount: $18,213.87; due by: February 28, 2022
Amount: $18,408.84; due by: March 31, 2022
Prior to recording, the final amounts due must be confirmed with tax collector.

J.    Assessment by Mountains Recreation and Conservation Authority Community Facilities District
No. 1 improvement district, bond number not shown.

NOTE: This assessment is collected with the county/city real property taxes.

Matters contained therein affect: Parcel 3.

K.    General and special city and/or county taxes, including any personal property taxes, and any
assessments collected with taxes, for the fiscal year 2021 - 2022:
1st Installment          : $865.79
Status 1st               : Delinquent
Penalty                  : $86.57
2nd Installment:         : $865.78
Status 2nd               : Open
Parcel No.               : 4387-022-002
Code Area/Tracer No. : 00067

L.    Property taxes have been declared defaulted for non-payment of delinquent taxes for the fiscal
year(s) 2018 - 2020 for Parcel No. 4387-022-002. Amounts due show as follows:
Amount: $7,391.96; due by: January 31, 2022
Amount: $7,472.04; due by: February 28, 2022
Amount: $7,552.12; due by: March 31, 2022
Prior to recording, the final amounts due must be confirmed with tax collector.

M.    Assessment by Mountains Recreation and Conservation Authority Community Facilities District
No. 1 improvement district, bond number not shown.

NOTE: This assessment is collected with the county/city real property taxes.

Matters contained therein affect: Parcel 3.

N.   General and special city and/or county taxes, including any personal property taxes, and any assessments collected with taxes, for the fiscal year 2021 - 2022:

| | |
|---|---|
| 1st Installment | : $34,217.33 |
| Status 1st | : Delinquent |
| Penalty | : $3,421.73 |
| 2nd Installment: | : $34,217.32 |
| Status 2nd | : Open |
| Parcel No. | : 4387-021-019 |
| Code Area/Tracer No. | : 00067 |

O.   Property taxes have been declared defaulted for non-payment of delinquent taxes for the fiscal year(s) 2018 - 2020 for Parcel No. 4387-021-019. Amounts due show as follows:
Amount: $277,322.18; due by: January 31, 2022
Amount: $280,332.93; due by: February 28, 2022
Amount: $283,343.68; due by: March 31, 2022
Prior to recording, the final amounts due must be confirmed with tax collector.

P.   Assessment by Mountains Recreation and Conservation Authority Community Facilities District No. 1 improvement district, bond number not shown.

NOTE: This assessment is collected with the county/city real property taxes.

Matters contained therein affect: Parcels 4, 5 and 6.

Q.   General and special city and/or county taxes, including any personal property taxes, and any assessments collected with taxes, for the fiscal year 2021 - 2022:

| | |
|---|---|
| 1st Installment | : $8,492.52 |
| Status 1st | : Delinquent |
| Penalty | : $849.25 |
| 2nd Installment: | : $8,492.52 |
| Status 2nd | : Open |
| Parcel No. | : 4387-021-018 |
| Code Area/Tracer No. | : 00067 |

R.   Property taxes have been declared defaulted for non-payment of delinquent taxes for the fiscal year(s) 2018 - 2020 for Parcel No. 4387-021-018. Amounts due show as follows:
Amount: $69,306.90; due by: January 31, 2022
Amount: $70,058.38; due by: February 28, 2022
Amount: $70,809.86; due by: March 31, 2022
Prior to recording, the final amounts due must be confirmed with tax collector.

S.   Assessment by Mountains Recreation and Conservation Authority Community Facilities District No. 1 improvement district, bond number not shown.

NOTE: This assessment is collected with the county/city real property taxes.

Matters contained therein affect: Parcel 7.

T.   The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the revenue and taxation code of the State of California.

U.    Taxes and/or assessments affecting the land, if any, for Community Facility Districts including Mello Roos Districts which may exist by virtue of assessment maps or notices filed by said districts. Said taxes and/or assessments are typically collected with the County taxes; however, some districts may remove these taxes and/or assessment from the County taxes and assess and collect them separately.

V.    Prior to recording, the final amount due for taxes must be confirmed with tax collector.

**Exceptions:**

1.    Taxes or assessments which are not shown as existing liens by the records of the taxing authority that levies taxes or assessments on real property or by the public records.

Proceeding by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.    Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.

3.    Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4.    Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or other facts which a correct survey would disclose, and which are not shown by the public records.

5.    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.    Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

7.    Water rights, claims or title to water in or under the property, whether or not shown by the public records.

8.    Ownership of, or rights to, minerals or other substances, subsurface and surface, of whatsoever kind, including, but not limited to coal, ores, metals, lignite, oil, gas, geothermal resources, brine, uranium, clay, rock, sand and gravel in, on, under and that may be produced from the Land, together with all rights, privileges, and immunities relating thereto, whether the ownership or rights arise by lease, grant, exception, conveyance, reservation or otherwise, and whether or not appearing in the Public Records or listed in Schedule B. Stewart Title Guaranty Company and its issuing agent make no representation as to the present ownership of any such interests. There may be leases, grants, exceptions, or reservations of interests that are not listed.

9.    Covenants, conditions and restrictions as set forth in a document recorded in Book 3416, Page 164, of Official Records, but omitting any restrictions based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

Note: Section 12956.1 of the Government Code provides the following: If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status,

genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value.

Matters contained therein affect: Parcels 1, 2 and 3.

10.    Lack of access and/or lack of right of access.

11.    Any interests (including rights of the public) in and to any portion of the Land lying within roads, streets, alleys or highways.

Matters contained therein affect: Parcel 3.

12.    The terms, provisions and conditions contained in that certain document, entitled "Easement and Maintenance Agreement", Recorded: January 30, 2008, Instrument/File No. 08-180385, of Official Records.

13.    Easement and rights incidental thereto for conduits, as set forth in a document recorded October 25, 1913, in Book 5648 Page 8, of Deeds.

Matters contained therein affect: Parcel 4.

14.    An unrecorded easement and right of way for fire prevention and control, as granted under an agreement executed by Title Insurance and Trust Company, as depositaty and trustee under its trust No. 7298 Series III to the Los Angeles City Fire Department under dated of July 23, 1935, under the terms therein set out as disclosed by the deed from Mortgage Guarantee Company to James Francis Cagney, recorded January 23, 1936 in Book 13855 Page 315, of Official Records.

Matters contained therein affect: Parcel 4.

15.    Easement and rights incidental thereto for grading and drainage, as set forth in a document recorded April 15, 1964, as Instrument No. 2263, of Official Records.

Matters contained therein affect: Parcel 4.

16.    Effect of the Grant of Waiver and Certificate of Compliance recorded April 22, 1988 as Instrument No. 88-556400, of Official Records.

Matters contained therein affect: Parcel 4.

17.    Matters contained in a document entitled  "Request for Certificate of Compliance", recorded April 22, 1988, as Instrument No. 88-0556401, of Official Records.

Matters contained therein affect: Parcel 4.

18.    Effect of the Grant of Waiver and Certificate of Compliance recorded May 15, 1992 as Instrument No. 92-885381, of Official Records.

Matters contained therein affect: Parcel 6.

19. The terms, provisions and conditions contained in that certain document, entitled "Covenant and Agreement", Recorded: June 18, 1992, Instrument/File No. 92-1113816, of Official Records.

20. The terms, provisions and conditions contained in that certain document, entitled "Covenant and Agreement", Recorded: June 18, 1992, Instrument/File No. 92-1113817, of Official Records.

   Matters contained therein affect: Parcel 6.

21. Matters contained in a document entitled  "Covenant and Agreement", recorded August 25, 1992, as Instrument No. 92-1590693, of Official Records.

22. Easement and rights incidental thereto for public street trees, street lighting, sidewalk and public utilities, as set forth in a document recorded August 25, 1992 as Instrument No. 92-1590694, of Official Records.

23. Irrevocable offer to dedicate a portion of the Land for public street, road or highway purposes, recorded August 25, 1992 as Instrument No. 92-1590695, of Official Records.

24. The terms, provisions and conditions contained in that certain document, entitled "Covenant and Agreement", Recorded: November 18, 1992, Instrument/File No. 92-2147878, of Official Records.

25. Matters contained in a document entitled  "Notice", recorded July 5, 1996, as Instrument No. 96-1066345, of Official Records.

26. Matters contained in a document entitled  "Covenant and Agreement", recorded May 12, 2004, as Instrument No. 04-1206449, of Official Records.

27. Notice of Special Tax Lien pursuant to the requirements of Section 3114.5 of the Streets and Highway Code and Section 53328.3 of The Government Code. the Special Tax is authorized to be imposed within The Community Facilities District No. 1, which has now been officially formed. Formed by :  Mountains Recreation and Conservation Authority Recorded :  August 2, 2013 Instrument No. :  20131141558, Official Records Note:  Said Special Tax amounts will be collected through the annual county tax bill. Reference is made to the recorded document for full particulars.

28. Notice of Special Tax Lien pursuant to the requirements of Section 3114.5 of the Streets and Highway Code and Section 53328.3 of The Government Code. the Special Tax is authorized to be imposed within The Community Facilities District No. 2016-1, which has now been officially formed. Formed by :  Mountains Recreation and Conservation Authority Recorded :  January 13, 2017 Instrument No. :  20170055098, Official Records Note:  Said Special Tax amounts will be collected through the annual county tax bill. Reference is made to the recorded document for full particulars.

29. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:
   Amount         : $25,000,000.00
   Trustor        : Coldwater Development, LLC,
                    : a California Limited Liability Company
   Trustee        : Equity Title Company,
                    : a California Corporation
   Beneficiary    : Romspen California Mortgage Limited Partnership,
                    : an Ontario limited partnership
   Recorded       : March 20, 2017, as Instrument No. 20170310859,
                    : of Official Records

(Affects other land in addition to the property.)

Said instrument has been modified by that certain document recorded July 3, 2017, as Instrument No. 20170739771, of Official Records.

The beneficial interest of Romspen California Mortgage Limited Partnership, an Ontario limited partnership having been assigned of record to Give Back, LLC, a California limited liability company by assignment recorded on September 11, 2020, as Instrument No. 20201095575, of Official Records.

A substitution of trustee which names Chicago Title Company, a California Corporation as trustee recorded on September 22, 2020, as Instrument No. 20201152670, of Official Records.

A Notice of default recorded on September 22, 2020, as Instrument No. 20201152671, of Official Records.

A Notice of Trustee's Sale recorded on December 24, 2020, as Instrument No. 20201726336, of Official Records.

Said instrument has been additionally secured by an assignment document entitled Pledge and Collateral Assignment of Economic Incentives, recorded March 20, 2017 as Instrument No. 20170310864, of Official Records.

Matters contained therein affect: Parcels 4, 5 and 6.

30.  Assignment of Rents and Leases executed by Coldwater Development, LLC, a California Limited Liability Company and Romspen California Mortgage Limited Partnership, an Ontario limited partnership, recorded March 20, 2017 as Instrument No. 20170310862, of Official Records.

Said instrument has been assigned to Give Back, LLC, a California limited liability company by document recorded September 11, 2020 as Instrument No. 20201095575, of Official Records.

Matters contained therein affect: Parcels 4, 5 and 6.

31.  Financing Statement executed by Coldwater Development LLC  to Romspen California Mortgage Limited Partnership, recorded March 21, 2017 as Instrument No. 20170316462, of Official Records.

Said instrument has been assigned to Give Back, LLC, a California limited liability company by document recorded September 11, 2020 as Instrument No. 20201095575, of Official Records.

Financing statement was assigned by document recorded September 11, 2020 as Instrument No. 20200310863, of Official Records.

Matters contained therein affect: Parcels 4, 5 and 6.

32.  Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

Amount       : $25,000,000.00
Dated        : March 16, 2017
Trustor      : Lydda Lud, LLC,
             : a California Limited Liability Company
Trustee      : Equity Title Company,
             : a California Corporation
Beneficiary  : Romspen California Mortgage Limited Partnership,
             : an Ontario limited partnership

Recorded        : March 20, 2017, as Instrument No. 20170310860,
               : of Official Records

Said instrument has been modified by that certain document recorded July 3, 2017, as
Instrument No. 20170739772, of Official Records.

The beneficial interest of Romspen California Mortgage Limited Partnership, an Ontario limited
partnership having been assigned of record to Give Back, LLC, a California limited liability
company by assignment recorded on September 11, 2020, as Instrument No. 20201095575, of
Official Records.

A substitution of trustee which names Chicago Title Company, a California Corporation as
trustee recorded on September 22, 2020, as Instrument No. 20201152640, of Official Records.

A Notice of default recorded on September 22, 2020, as Instrument No. 20201152641, of
Official Records.

A Notice of Trustee's Sale recorded on December 24, 2020, as Instrument No. 20201726225, of
Official Records.

Said instrument has been additionally secured by an assignment document entitled Pledge and
Collateral Assignment of Economic Incentives, recorded March 20, 2017 as Instrument No.
20170310864, of Official Records.

Matters contained therein affect: Parcels 1, 2 and 3.

33.   Assignment of Rents and Leases executed by Lydda Lud, LLC, a California limited liability
      company and Romspen California Mortgage Limited Partnership, an Ontario limited partnership,
      recorded March 20, 2017 as Instrument No. 20170310863, of Official Records.

      Said instrument has been assigned to Give Back, LLC, a California limited liability company by
      document recorded September 11, 2020 as Instrument No. 20201095575, of Official Records.

      Matters contained therein affect: Parcels 1, 2 and 3.

34.   Financing Statement executed by Lydda Lud, LLC  to Romspen California Mortgage Limited
      Partnership, recorded March 21, 2017 as Instrument No. 20170316463, of Official Records.

      Said instrument has been assigned to Give Back, LLC, a California limited liability company by
      document recorded September 11, 2020 as Instrument No. 20201095575, of Official Records.

      Financing statement was assigned by document recorded September 11, 2020 as Instrument
      No. 20201095577, of Official Records.

      Matters contained therein affect: Parcels 1, 2 and 3.

35.   Matters contained in document entitled Notice of Special Tax Lien recorded February 10, 2021
      as Instrument No. 20210235371, of Official Records.

36.   A Claim of Mechanic's Lien by Ral Design & Management, in the amount of $430,098.00, and
      any other amounts due thereunder, recorded March 19, 2021 as Instrument No. 20210445146,
      of Official Records.

37.   Certificate of Lien filed by Department of Industrial Relations, State of California, Case No.
      UEF10538684 against Mohammed AnWar Hadid, Individually and as substantial share hold of
      Coldwater Development, LLC, recorded January 7, 2019 as Instrument No. 20190014936, of
      Official Records.

38.  Certificate of Lien filed by Department of Industrial Relations, State of California, Case No. UEF10538684 against Coldwater Development, LLC, recorded January 7, 2019 as Instrument No. 20190014940, of Official Records.

39.  Bankruptcy proceedings filed by Lydda Lud, LLC, Debtor, pending in the United States Bankruptcy Court for the Central District of California - Los Angeles Division, Case No. 2:21-BK-10336-BB; filed on January 15, 2021.

     Permission or approval of the Bankruptcy Court must be obtained before exercising power of sale.

40.  Bankruptcy proceedings filed by Coldwater Development, LLC, Debtor, pending in the United States Bankruptcy Court for the Central District of California - Los Angeles Division, Case No. 2:21-BK-10335-BB; filed on January 15, 2021.

     Permission or approval of the Bankruptcy Court must be obtained before exercising power of sale.

41.  Rights of parties in possession whether or not recorded in the public records.

42.  Any facts, rights, interests or claims which would be disclosed by an inspection of the Land.

43.  Any lien, or right to a lien, for services, labor, materials or equipment heretofore or hereafter furnished, imposed by law and not shown by the public records.


(End of Exceptions)

# NOTES AND REQUIREMENTS

A.  In order to insure a conveyance, acquisition or encumbrance by the limited liability company named below, you must provide the following:
Limited liability company: Lydda Lud, LLC
(a) A certified copy of the articles of organization (Form LLC-1), and any filed amendment (Form LLC-2) or restatement (Form LLC-10), if applicable.
(b) A copy of the operating agreement and any amendments.
Additional requirements or items may be requested upon review of the required documents set forth above.

B.  In order to insure a conveyance, acquisition or encumbrance by the limited liability company named below, you must provide the following:
Limited liability company: Coldwater Development, LLC
(a) A certified copy of the articles of organization (Form LLC-1), and any filed amendment (Form LLC-2) or restatement (Form LLC-10), if applicable.
(b) A copy of the operating agreement and any amendments.
Additional requirements or items may be requested upon review of the required documents set forth above.

C.  If the policy to be issued requires priority insurance over mechanic's liens, and construction, including remodeling, is going to commence prior to recording, or is currently in progress, or is recently completed, the Company will require an STG Construction Indemnity from the owner/borrower along with other pertinent information. To help avoid delays in closing, please contact your title officer at least 5 working days or more, prior to recording.

D.  There are no conveyances affecting said land, recorded with the County Recorder within 24 months of the date of this report.

E.  If an Owners Policy will be requested, please be aware that unless instructed otherwise, we will issue a CLTA Standard Coverage Owners Policy. If a different form of policy is contemplated for this transaction, please advise and contact your title officer for additional requirements.

F.  All Transactions - Seller(s) and Buyer(s) or Borrowers are provided as attachments Stewart Title's document entitled "Acknowledgement of Receipt, Understanding and Approval of STG Privacy Notice for Stewart Title Companies and Stewart's Affiliated Business Arrangement Disclosure Statement" along with those individually named documents for your review and acknowledgment prior to closing.

G.  All Transactions - Buyer(s)/Seller(s)/Borrower(s) are provided Stewart Title's Preliminary report for review and acknowledgment prior to closing. Buyer(s) approval to include the Preliminary Report items that remain as exceptions to the title policy.

H.  Purchase Transaction Only-Seller(s)/Owner(s) are provided Stewart Title's Owner Affidavit and Indemnity for completion prior to closing.

# CALIFORNIA "GOOD FUNDS" LAW

California Insurance Code Section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies.  The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement.  Funds received by Stewart Title of California, Inc. via wire transfer may be disbursed upon receipt.  Funds received via cashier's checks or teller checks drawn on a California Bank may be disbursed on the next business day after the day of deposit.  If funds are received by any other means, recording and/or disbursement may be delayed, and you should contact your title or escrow officer.  All escrow and sub-escrow funds received will be deposited with other escrow funds in one or more non-interest bearing escrow accounts in a financial institution selected by Stewart Title of California, Inc..  Stewart Title of California, Inc. may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and Stewart Title of California, Inc. shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by Stewart Title of California, Inc..  Such benefits shall be deemed additional compensation to Stewart Title of California, Inc. for its services in connection with the escrow or sub-escrow.

If any check submitted is dishonored upon presentation for payment, you are authorized to notify all principals and/or their respective agents of such nonpayment.

# EXHIBIT "A"

## LEGAL DESCRIPTION

Order No.:  1549295
Escrow No.:  1549295

The land referred to herein is situated in the State of California, County of Los Angeles, City of Beverly Hills and described as follows:

PARCEL 1:  APN 4387-020-001

THE EAST HALF OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 1 SOUTH, RANGE 15 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT OF SAID LAND IN THE DISTRICT LAND ON JUNE 25, 1887.

PARCEL 2:  APN 4387-020-009

THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 1 SOUTH, RANGE 15 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THEREFROM THAT PORTION OF SAID LAND LYING NORTHWESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHERLY LINE OF SAID SOUTHWEST QUARTER, DISTANT THEREON SOUTH 88 DEGREES 42 MINUTES 03 SECONDS EAST 434.00 FEET FROM THE NORTHWEST CORNER OF SAID SOUTHWEST ONE-QUARTER; THENCE SOUTHWESTERLY IN A DIRECT LINE TO A POINT IN THE WESTERLY LINE OF SAID SOUTHWEST QUARTER; DISTANT THEREON SOUTHERLY 200.00 FEET FROM SAID NORTHWEST QUARTER SECTION CORNER.

PARCEL 3:  APN 4387-022-001 & 4387-022-002

THAT PORTION OF LOTS 5 AND 6 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING WESTERLY OF THE WESTERLY AND NORTHERLY BOUNDARY LINES OF TRACT NO. 20500, AS PER MAP RECORDED IN BOOK 580 PAGES 25 AND 26 OF MAPS, RECORDS OF SAID COUNTY, SAID WESTERLY AND NORTHERLY LINES OF SAID TRACT NO. 20500 BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF LOT 1 OF SAID TRACT NO. 20550; THENCE ALONG THE WESTERLY BOUNDARY LINE OF SAID TRACT NO. 20500 NORTH 2 DEGREES 44 MINUTES 45 SECONDS WEST 200.00 FEET TO THE NORTHWEST CORNER OF SAID LOT 1 OF TRACT NO. 20500; THENCE ALONG THE NORTHERLY LINE OF SAID TRACT NO. 20500; NORTH 86 DEGREES 27 MINUTES 03 SECONDS EAST 214.00 FEET TO AN ANGLE POINT IN THE BOUNDARY OF SAID TRACT NO. 20500, NORTH 13 DEGREES 11 MINUTES 03 SECONDS EAST 292.01 FEET TO THE NORTHWEST CORNER OF SAID LOT 6 OF SAID TRACT NO. 20500, BEING A POINT ON THE NORTHERLY LINE OF SAID LOTS OF THE COLDWATER CANYON TRACT.

EXCEPT THAT PORTION, IF ANY, OF SAID LOT 6 LYING WITHIN THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 1, RANGE 15 WEST, SAN BERNARDINO MERIDIAN.

PARCEL 4:  APN 4387-021-019

THAT PORTION OF LOT 1, OF COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

BEGINNING AT A POINT IN THE WESTERLY PROLONGATION OF THE NORTHERLY LINE OF LOT 7 OF TRACT NO. 11859, AS PER MAP RECORDED IN BOOK 255 PAGES 22 AND 23 OF MAPS; IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SAID POINT BEING DISTANT ALONG SAID PROLONGATION AND NORTHERLY LINE NORTH 78 DEGREES 17 MINUTES 00 SECONDS WEST 311.77 FEET FROM THE NORTHEASTERLY CORNER OF SAID LOT 7; THENCE ALONG SAID PROLONGATION SOUTH 78 DEGREES 17 MINUTES 00 SECONDS EAST 31.03 FEET TO A POINT DISTANT NORTH 78 DEGREES 17 MINUTES 00 SECONDS WEST 150.74 FEET FROM THE NORTHWESTERLY CORNER OF SAID LOT 7; THENCE SOUTH 51 DEGREES 53 MINUTES 58 SECONDS WEST TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 1; THENCE ALONG SAID SOUTHERLY LINE OF SAID LOT 1 NORTH 85 DEGREES 57 MINUTES 00 SECONDS WEST TO THE SOUTHWEST CORNER OF SAID LOT 1; THENCE ALONG THE WESTERLY LINE OF SAID LOT 1 NORTH 00 DEGREES 34 MINUTES 40 SECONDS EAST 213.54 FEET TO THE NORTHWEST CORNER OF SAID LOT 1; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 1 SOUTH 88 DEGREES 22 MINUTES 30 SECONDS EAST 1277.69 FEET TO THE NORTHWESTERLY CORNER OF THE LAND DESCRIBED IN THE DEED TO CHARLES B. DIAMOND, RECORDED ON JULY 24, 1961 AS INSTRUMENT NO. 1259 IN BOOK D-1296 PAGES 51 AND 52, OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE ALONG THE WESTERLY LINE OF SAID LAND TO DIAMOND, SOUTH 05 DEGREES 06 MINUTES 00 SECONDS WEST 224.43 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 5:  APN 4387-021-019

THAT PORTION OF LOT 2 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 2; THENCE SOUTH 85 DEGREES 57 MINUTES 00 SECONDS EAST ALONG THE NORTHERLY LINE OF SAID LOT 2 TO A POINT IN THAT CERTAIN COURSE RECITED AS "SOUTH 51 DEGREES 53 MINUTES 58 SECONDS WEST 96.80 FEET" IN THE CORPORATION GRANT DEED RECORDED ON APRIL 15, 1964 AS INSTRUMENT NO. 2263 IN BOOK D-2434 PAGES 681 AND 682, OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE ALONG SAID CERTAIN COURSE SOUTH 51 DEGREES 53 MINUTES 58 SECONDS WEST TO THE WESTERLY LINE OF THAT CERTAIN PARCEL OF LAND DESCRIBED IN THE DEED OF TRUST RECORDED ON FEBRUARY 6, 1962 AS INSTRUMENT NO. 186 IN BOOK T-2216, PAGE 834, OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE SOUTH 57 DEGREES 54 MINUTES 35 SECONDS WEST 143.29 FEET TO A POINT IN THAT CERTAIN COURSE RECITED AS "NORTH 55 DEGREES 00 MINUTES 00 SECONDS WEST 100.00 FEET" IN THE DEED OF TRUST RECORDED ON APRIL 4, 1963 AS INSTRUMENT NO. 2537 IN BOOK T-2938 PAGE 145 OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SAID POINT BEING DISTANT SOUTH 55 DEGREES 00 MINUTES 00 SECONDS EAST 12.00 FEET FROM THE WESTERLY TERMINUS OF SAID LAST MENTIONED CERTAIN COURSE; THENCE NORTH 55 DEGREES 00 MINUTES 00 SECONDS EAST 42.00 FEET; THENCE SOUTH 35 DEGREES 00 MINUTES 00 SECONDS WEST 23.84 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE EASTERLY, HAVING A RADIUS OF 146.00 FEET SAID CURVE BEING TANGENT AT ITS SOUTHEASTERLY TERMINUS WITH A LINE THAT IS PARALLEL WITH AND DISTANT SOUTHWESTERLY 1.00 FOOT, MEASURED AT RIGHT ANGLES, FROM THE NORTHWESTERLY PROLONGATION OF THE TANGENT PORTION OF THE NORTHEASTERLY LINE OF LOT 2 OF TRACT NO. 11859, AS PER MAP RECORDED IN BOOK 255,

**83**

PAGES 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE SOUTHERLY ALONG SAID CURVE TO A POINT ON THE SOUTHERLY LINE OF LOT 2 OF SAID COLDWATER CANYON TRACT; THENCE NORTH 76 DEGREES 50 MINUTES 30 SECONDS WEST ALONG SAID SOUTHERLY LINE TO AN ANGLE POINT IN SAID SOUTHERLY LINE DISTANT SOUTH 89 DEGREES 08 MINUTES 15 SECONDS EAST 672.10 FEET FROM THE SOUTHWEST CORNER OF SAID LAST MENTIONED LOT 2 OF THE COLDWATER CANYON TRACT; THENCE CONTINUING ALONG SAID SOUTHERLY LINE NORTH 89 DEGREES 08 MINUTES 15 SECONDS WEST 672.10 FEET TO THE SOUTHWEST CORNER OF SAID LOT 2; THENCE ALONG THE WESTERLY LINE OF SAID LOT 2 NORTH 00 DEGREES 34 MINUTES 40 SECONDS EAST 222.09 FEET TO THE POINT OF BEGINNING.

PARCEL 6:  APN 4387-021-019

THAT PORTION OF LOT 3 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 3; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 3 SOUTH 89 DEGREES 08 MINUTES 15 SECONDS EAST 672.10 FEET TO AN ANGLE IN SAID NORTHERLY LINE; THENCE SOUTH 76 DEGREES 50 MINUTES 30 SECONDS EAST TO A POINT IN THAT CERTAIN CURVE RECITED AS "A TANGENT CURVE CONCAVE EASTERLY, HAVING A RADIUS OF 146.00 FEET, SAID CURVE BEING TANGENT AS ITS SOUTHEASTERLY TERMINUS, WITH A LINE THAT IS PARALLEL WITH AND DISTANT SOUTHWESTERLY 1.00 FOOT, MEASURED AT RIGHT ANGLES FROM THE NORTHWESTERLY PROLONGATION OF THE TANGENT PORTION OF THE NORTHEASTERLY LINE OF LOT 2 OF SAID TRACT NO. 11859 IN THE CORPORATION GRANT DEED RECORDED ON APRIL 15, 1964 AS INSTRUMENT NO. 2263 IN BOOK D-2434, PAGES 681 AND 682, OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; SOUTHEASTERLY ALONG SAID CURVE TO THAT CERTAIN POINT DESCRIBED IN SAID CORPORATION GRANT DEED AS BEING "AN ARC DISTANCE OF 221.11 FEET" (FROM THE BEGINNING OF SAID CURVE IN SAID DEED); THENCE SOUTH 41 DEGREES 00 MINUTES 00 SECONDS WEST 111.09 FEET; THENCE SOUTH 66 DEGREES 48 MINUTES 37 SECONDS 12.00 FEET; THENCE SOUTH 23 DEGREES 11 MINUTES 23 SECONDS WEST 103.00 FEET; THENCE SOUTH 71 DEGREES 15 MINUTES 00 SECONDS EAST 31.00 FEET; THENCE SOUTH 15 DEGREES 45 MINUTES 00 SECONDS WEST 36.00 FEET; THENCE SOUTH 71 DEGREES 15 SECONDS 00 MINUTES EAST 23.15 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE SOUTHWESTERLY, HAVING A RADIUS OF 47.00 FEET; THENCE EASTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 2 DEGREES 02 MINUTES 22 SECONDS, AN ARC DISTANCE OF 17.26 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHERLY, HAVING A RADIUS OF 103.00 FEET; THENCE EASTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 37 DEGREES 15 MINUTES 57 SECONDS", AN ARC DISTANT OF 66.99 FEET; ALONG THE PROLONGATION OF A RADIAL LINE OF SAID LAST MENTIONED CURVE SOUTH 02 DEGREES 31 MINUTES 25 SECONDS WEST 39.36 FEET, MORE OR LESS, TO THE SOUTHERLY LINE OF SAID LOT 3 OF SAID COLDWATER CANYON TRACT; THENCE ALONG SAID LOT 3 OF SAID COLDWATER CANYON TRACT; THENCE ALONG SAID SOUTHERLY LINE NORTH 77 DEGREES 35 MINUTES 30 SECONDS WEST 384.04 FEET, MORE OR LESS TO AN ANGLE POINT IN SAID SOUTHERLY LINE; THENCE CONTINUING ALONG SAID SOUTHERLY LINE SOUTH 88 DEGREES 30 MINUTES 30 SECONDS WEST 716.84 FEET TO THE SOUTHWEST CORNER OF SAID LOT 3; THENCE ALONG THE WESTERLY LINE OF SAID LOT 3 NORTH 00 DEGREES 34 MINUTES 40 SECONDS EAST 402.58 FEET TO THE POINT OF BEGINNING.

PARCEL 7:  APN 4387-021-018

THAT PORTION OF LOT 4 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18

PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE SOUTHERLY LINE OF SAID LOT 4, DISTANT THEREON NORTH 79 DEGREES 33 MINUTES 10 SECONDS WEST 235.00 FEET FROM THE SOUTHEASTERLY TERMINUS OF THAT CERTAIN BOUNDARY LINE OF SAID LOT 4 SHOWN AS HAVING A BEARING AND DISTANCE OF SOUTH 79 DEGREES 33 MINUTES 10 SECONDS EAST 1057.13 FEET; THENCE NORTHWESTERLY ON A DIRECT LINE TO A POINT ON THE NORTHERLY LINE OF SAID LOT 4, DISTANT THEREON SOUTH 88 DEGREES 30 MINUTES 30 SECONDS WEST 40.00 FEET FROM THE NORTHEASTERLY TERMINUS OF THAT CERTAIN NORTHERLY LINE SHOWN AS HAVING A BEARING AND LENGTH OF SOUTH 88 DEGREES 30 MINUTES 30 SECONDS WEST 716.84 FEET.

APN:  4387-021-018, 4387-021-019, 4387-022-001, 4387-022-002, 4387-020-001, 4387-020-009

(End of Legal Description)

**85**

## <u>Procedures to Accompany the Restrictive Covenant Modification Form</u>

The law prohibits unlawfully restrictive covenants based upon:

"…age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry… Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

As the individual holding or acquiring an interest in the property, you may have any unlawfully restrictive covenants "removed", which means "redacted."

To have the unlawfully restrictive covenant removed, you may prepare and submit to the county recorder's office, a "Restrictive Covenant Modification" form (RCM) together with a copy of the attached document with the unlawfully restrictive covenant redacted. This request must be submitted to the county recorder's office and must include your return address so the county recorder can notify you of the action taken by the county counsel.

The process at the county recorder's office is as follows:
- The county recorder takes the RCM with the redacted document and the original document attached and submits it to the county counsel for review to determine if, from a legal standpoint, the language was an unlawfully restrictive covenant and thus the redacted version should be indexed and recorded.
- The county counsel shall inform the county recorder of his/her determination within a reasonable amount of time, not to exceed three months from the date of your request.
- If county counsel determined that the redacted language was unlawful then, once recorded, the redacted document is the only one that effects the property and this modified document has the same effective date as the original document.
- If county counsel determined that the redacted language was not unlawful then county counsel will return the RCM package to the county recorder and the county recorder will advise the requestor that same the request has been denied and the redacted document has not been recorded.
- The modification document shall be indexed in the same manner as the original document and shall contain a recording reference to the original document.

**86**

**RECORDING REQUESTED BY**


AND WHEN RECORDED MAIL TO

NAME

ADDRESS

CITY
STATE & ZIP

| TITLE ORDER NO. | ESCROW NO. | APN NO. |
| --- | --- | --- |

# RESTRICTIVE COVENANT MODIFICATION
**(Unlawfully Restrictive Covenant Modification Pursuant to Government Code Section 12956.2)**

I(We)_____
have or are acquiring an ownership interest of record in the property located at _____
_____ that is covered by the
document described below.

The following reference document contains a restriction based on age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in Section 12955 of the Government Code, or ancestry, that violates state and federal fair housing laws and is void. Pursuant to Section 12956.2 of the Government Code, this document is being recorded solely for the purpose of eliminating that restrictive covenant as shown on page(s)_____of the document recorded on _____ in book_____and page _____ or instrument number_____of    the    official    records    of    the    County    of _____, State of California.

Attached hereto is a true, correct and complete copy of the document referenced above, with the unlawful restrictive covenant redacted.

This modification document shall be indexed in the same manner as the original document pursuant to subdivision (d) of Section 12956 of the Government.

The effective date of the terms and conditions of the modification document shall be the same as the effective date of the original document.

_____
(Signature of Submitting Party)

_____
(Printed Name)

_____
(Signature of Submitting Party)

_____
(Printed Name)

_____ County Counsel, or their designee, pursuant to Government Code Section 12956.2, hereby states that it has been determined that the original document referenced above _____ Does _____ Does Not contain an unlawful restriction and this modification may be recorded.

County Counsel
By:
_____
Date:
_____

**87**



Stewart Title of California, Inc.
2801 Townsgate Rd #111
Westlake Village, CA  91361
Phone:  (805) 367-5628
Fax:
Mindy.Beckham@stewart.com

**Date:** January 11, 2022
**Title Officer:** RESWARE_SP_GetPartnerName_Title»
**Order No.:** 1549295
**Property Address:** Vacant land - 6 parcels, Beverly Hills, CA  90210
Vacant Land, Beverly Hills, CA  90210

## UNLAWFULLY RESTRICTIVE COVENANTS
## ACKNOWLEDGMENT AND INDEMNIFICATION

**STEWART TITLE OF CALIFORNIA, INC.**
**IS LICENSED BY THE STATE OF CALIFORNIA UNDER THE DEPARTMENT OF INSURANCE LICENSE NO. 388**

The undersigned hereby acknowledge receipt of (1) the statutory required language describing unlawfully restrictive covenants in the title product from Stewart Title of California, Inc. ("Stewart Title"); (2) a copy of the Restrictive Covenant Modification (RCM) form; and (3) the procedures describing how to have, when applicable, an unlawfully restrictive covenant of record updated.

The undersigned further acknowledge that he/she/they have received, read, understand and accept these documents in connection with the above described transaction and have received a copy of this acknowledgment as evidenced by the signature below.

The undersigned acknowledges and understands that Stewart Title will rely upon this acknowledgement as evidence that Stewart Title has fulfilled its duties and obligations under the law with respect to unlawfully restrictive covenants. The undersigned jointly and severally agree to hold harmless Stewart Title of California, Inc., its officers, employees, agents, parent, affiliated and subsidiary companies, including Stewart Title Guaranty Company, and successors and assigns from and against any and all damages or liability and agree to reimburse Stewart Title for all losses, costs, charges, attorneys' fees or other expenses which shall or may at any time be suffered, sustained or incurred by reason of, or in consequence of or related to these unlawfully restrictive covenants and the RCM form and submission.

Coldwater Development LLC

By:_____

**88**

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

Date:        January 11, 2022

File No.:    1549295

Property:    Vacant land - 6 parcels, Beverly Hills, CA  90210
             Vacant Land, Beverly Hills, CA  90210

From:        Stewart Title of California, Inc.


This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") has a business relationship with Stewart Solutions, LLC, DBA – Stewart Specialty Insurance Services, LLC ("Stewart  Insurance"). Stewart Information Services Corporation owns 100% of Stewart Insurance and Stewart Title of California, Inc..  Because of this relationship, this referral may provide Stewart Title a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed.  You are NOT required to use the listed provider(s) as a condition for purchase, sale, or refinance of the subject Property.   THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES.  YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| *Stewart Insurance Settlement Service* | *Charge or range of charges* |
|---|---|
| Hazard Insurance | $400.00 to $6,500.00 |
| Home Warranty | $255.00 to $  780.00 |
| Natural Hazard Disclosure Report | $  42.50 to $   149.50 |

**ACKNOWLEDGEMENT OF RECEIPT, UNDERSTANDING
AND APPROVAL OF STEWART TITLE GUARANTY COMPANY
PRIVACY NOTICE FOR STEWART TITLE COMPANIES AND
AFFILIATED BUSINESS ARRANGEMENT
DISCLOSURE STATEMENT**

The undersigned hereby acknowledge receipt of the Stewart Title Guaranty Company Privacy Notice for Stewart Title Companies and the Affiliated Business Arrangement Disclosure Statement that apply to this transaction. The undersigned further acknowledge that he/she/they have received, read, understand and accept these documents in connection with the above described transaction.

The undersigned have received a copy of this acknowledgement as evidenced by the signature below.

Coldwater Development LLC

By:_____

## CALIFORNIA LAND TITLE ASSOCIATION

## STANDARD COVERAGE POLICY – 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:
    a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    c)  resulting in no loss or damage to the insured claimant;
    d)  attaching or created subsequent to Date of Policy; or
    e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on  real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the  records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the  land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose,   and which are not shown by the public records

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights,   claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
## EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

    a. building;
    b. zoning;
    c. land use;
    d. improvements on the Land;
    e. land division;
    f. environmental protection.

This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This  Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4.  Risks:
    a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
    b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c. that result in no loss to You; or
    d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.  Failure to pay value for Your Title.

6.  Lack of a right:
    a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b. in streets, alleys, or waterways that touch the Land.

This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy,   state insolvency, or similar creditors' rights laws.

8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
*        For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.  The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible  Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount or  $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1% of Policy Amount or  $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1% of Policy Amount or  $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1% of Policy Amount or  $2,500.00 (whichever is less) | $5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

Except as provided in Schedule B - Part II, this policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

### PART I

1.  (a) taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
(b) proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, which are not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.

### PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:

## 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating,  prohibiting, or relating to
    (i)     the occupancy, use, or enjoyment of the Land;
    (ii)    the character, dimensions, or location of any improvement erected on the Land;
    (iii)   the subdivision of land; or
    (iv)   environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9  and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting  the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of  Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from  Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on  real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the  records of such agency or by the public records.

2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the  land or by making inquiry of persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate  and complete land survey of the Land and that are not shown by the Public Records.

5. (a) unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims  or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6. Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy..

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY – ASSESSMENTS PRIORITY (04-02-15)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys  fees or expenses which arise by reason of:

1.  a.  Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations)  restricting, regulating, prohibiting or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions or location of any improvement now or hereafter erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection

    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or  limit the coverage provided under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.

    b.  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c),  13(d), 14 or 16.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  created, suffered, assumed or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting In no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk  11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e)  resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-  business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the  Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or  limit the coverage provided in Covered Risk 26.

6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after  the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy.  This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to   Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with  applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating  the lien of the Insured Mortgage, is

    (a)  a fraudulent conveyance or fraudulent transfer, or
    (b)  a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any  other substances.

File No.:  1549295

# AVAILABLE DISCOUNTS DISCLOSURE STATEMENT

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") is pleased to inform you that upon proper qualification, there are premium discounts available upon the purchase of title insurance covering improved property with a one to four family residential dwelling.

Such discounts apply to and include:

Property located within an area proclaimed a state or federal disaster area;

Property purchased from a foreclosing beneficiary or successful bidder at a foreclosure sale;

Property being refinanced.

Please talk with your escrow or title officer to determine your qualification for any of these discounts.

## Stewart Title Guaranty Company Privacy Notice
## Stewart Title Companies

### WHAT DO THE STEWART TITLE COMPANIES DO WITH YOUR PERSONAL INFORMATION?

Federal and applicable state law and regulations give consumers the right to limit some but not all sharing. Federal and applicable state law regulations also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand how we use your personal information. This privacy notice is distributed on behalf of the Stewart Title Guaranty Company and its title affiliates (the Stewart Title Companies), pursuant to Title V of the Gramm-Leach-Bliley Act (GLBA).

The types of personal information we collect and share depend on the product or service that you have sought through us. This information can include social security numbers and driver's license number.

All financial companies, such as the Stewart Title Companies, need to share customers' personal information to run their everyday business—to process transactions and maintain customer accounts. In the section below, we list the reasons that we can share customers' personal information; the reasons that we choose to share; and whether you can limit this sharing.

| Reasons we can share your personal information. | Do we share | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**— to process your transactions and maintain your account. This may include running the business and managing customer accounts, such as processing transactions, mailing, and auditing services, and responding to court orders and legal investigations. | Yes | No |
| **For our marketing purposes**—to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes**— information about your transactions and experiences. Affiliates are companies related by common ownership or control. They can be financial and non-financial companies. *Our affiliates may include companies with a Stewart name; financial companies, such as Stewart Title  Company* | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness. | No | We don't share |
| **For our affiliates to market to you** — For your convenience, Stewart has developed a means for you to opt out from its affiliates marketing even though such mechanism is not legally required. | Yes | Yes, send your first and last name, the email address used in your transaction, your Stewart file number and the Stewart office location that is handling your transaction by email to optout@stewart.com or fax to 1-800-335-9591. |
| **For non-affiliates to market to you.** Non-affiliates are companies not related by common ownership or control. They can be financial and non-financial companies. | No | We don't share |

We may disclose your personal information to our affiliates or to non-affiliates as permitted by law. If you request a transaction with a non-affiliate, such as a third party insurance company, we will disclose your personal information to that non-affiliate.  [We do not control their subsequent use of information, and suggest you refer to their privacy notices.]

### SHARING PRACTICES

| | |
|---|---|
| **How often do the Stewart Title Companies notify me about their practices?** | We must notify you about our sharing practices when you request a transaction. |
| **How do the Stewart Title Companies protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer, file, and building safeguards. |
| **How do the Stewart Title Companies collect my personal information?** | We collect your personal information, for example, when you request insurance-related services provide such information to us We also collect your personal information from others, such as the real estate agent or lender involved in your transaction, credit reporting agencies, affiliates or other companies. |
| **What sharing can I limit?** | Although federal and state law give you the right to limit sharing (e.g., opt out) in certain instances, we do not share your personal information in those instances. |

***Contact us:   If you have any questions about this privacy notice, please contact us at:** Stewart Title Guaranty Company, 1360 Post Oak Blvd., Ste. 100,  Privacy Officer, Houston, Texas 77056*

File No.: 1549295

Revised 01-01-2020

Effective Date: January 1, 2020

# Privacy Notice for California Residents

Pursuant to the California Consumer Privacy Act of 2018 ("CCPA"), Stewart Information Services Corporation and its subsidiary companies (collectively, "Stewart") are providing this **Privacy Notice for California Residents** ("CCPA Notice"). This CCPA Notice supplements the information contained in Stewart's existing privacy notice and applies solely to all visitors, users and others who reside in the State of California or are considered California Residents ("consumers" or "you"). Terms used but not defined shall have the meaning ascribed to them in the CCPA.

<u>Information Stewart Collects</u>

Stewart collects information that identifies, relates to, describes, references, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer, household, or device. Most of the information that Stewart collects in the course of its regular business is already protected pursuant to the Gramm-Leach-Bliley Act (GLBA). Additionally, much of this information comes from government records or other information already in the public domain. Personal information under the CCPA does not include:

- Publicly available information from government records.
- Deidentified or aggregated consumer information.
- Certain personal information protected by other sector-specific federal or California laws, including but not limited to the Fair Credit Reporting Act (FCRA), GLBA and California Financial Information Privacy Act (FIPA).

Specifically, Stewart has collected the following categories of personal information from consumers within the last twelve (12) months:

| Category | Examples | Collected? |
|---|---|---|
| A. Identifiers. | A real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security number, driver's license number, passport number, or other similar identifiers. | YES |
| B. Personal information categories listed in the California Customer Records statute (Cal. Civ. Code § 1798.80(e)). | A name, signature, Social Security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information. Some personal information included in this category may overlap with other categories. | YES |
| C. Protected classification characteristics under California or federal law. | Age (40 years or older), race, color, ancestry, national origin, citizenship, religion or creed, marital status, medical condition, physical or mental disability, sex (including gender, gender identity, gender expression, pregnancy or childbirth and related medical conditions), sexual orientation, veteran or military status, genetic information (including familial genetic information). | YES |
| D. Commercial information. | Records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies. | YES |
| E. Biometric information. | Genetic, physiological, behavioral, and biological characteristics, or activity patterns used to extract a template or other identifier or identifying information, such as, fingerprints, faceprints, and voiceprints, iris or retina scans, keystroke, gait, or other physical patterns, and sleep, health, or exercise data. | YES |
| F. Internet or other similar network activity. | Browsing history, search history, information on a consumer's interaction with a website, application, or advertisement. | YES |
| G. Geolocation data. | Physical location or movements. | YES |
| H. Sensory data. | Audio, electronic, visual, thermal, olfactory, or similar information. | YES |
| I. Professional or employment-related information. | Current or past job history or performance evaluations. | YES |
| J. Non-public education information (per the Family Educational Rights and Privacy Act (20 U.S.C. Section 1232g, 34 C.F.R. Part 99)). | Education records directly related to a student maintained by an educational institution or party acting on its behalf, such as grades, transcripts, class lists, student schedules, student identification codes, student financial information, or student disciplinary records. | YES |
| K. Inferences drawn from other personal information. | Profile reflecting a person's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes. | YES |

Stewart obtains the categories of personal information listed above from the following categories of sources:

- Directly and indirectly from customers, their designees or their agents (For example, realtors, lenders, attorneys, etc.)
- Directly and indirectly from activity on Stewart's website or other applications.
- From third-parties that interact with Stewart in connection with the services we provide.

<u>Use of Personal Information</u>

Stewart may use or disclose the personal information we collect for one or more of the following purposes:

- To fulfill or meet the reason for which the information is provided.
- To provide, support, personalize, and develop our website, products, and services.
- To create, maintain, customize, and secure your account with Stewart.
- To process your requests, purchases, transactions, and payments and prevent transactional fraud.
- To prevent and/or process claims.
- To assist third party vendors/service providers who complete transactions or perform services on Stewart's behalf.
- As necessary or appropriate to protect the rights, property or safety of Stewart, our customers or others.
- To provide you with support and to respond to your inquiries, including to investigate and address your concerns and monitor and improve our responses.
- To personalize your website experience and to deliver content and product and service offerings relevant to your interests, including targeted offers and ads through our website, third-party sites, and via email or text message (with your consent, where required by law).
- To help maintain the safety, security, and integrity of our website, products and services, databases and other technology assets, and business.
- To respond to law enforcement or regulator requests as required by applicable law, court order, or governmental regulations.
- Auditing for compliance with federal and state laws, rules and regulations.
- Performing services including maintaining or servicing accounts, providing customer service, processing or fulfilling orders and transactions, verifying customer information, processing payments, providing advertising or marketing services or other similar services.
- To evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of our assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal information held by us is among the assets transferred.

Stewart will not collect additional categories of personal information or use the personal information we collected for materially different, unrelated, or incompatible purposes without providing you notice.

<u>Disclosure of Personal Information to Affiliated Companies and Nonaffiliated Third Parties</u>

Stewart does not sell your personal information to nonaffiliated third parties.  Stewart may share your information with those you have designated as your agent in the course of your transaction (for example, a realtor or a lender).  Stewart may disclose your personal information to a third party for a business purpose.  Typically, when we disclose personal information for a business purpose, we enter a contract that describes the purpose and requires the recipient to both keep that personal information confidential and not use it for any purpose except performing the contract.

We share your personal information with the following categories of third parties:

- Service providers and vendors (For example, search companies, mobile notaries, and companies providing credit/debit card processing, billing, shipping, repair, customer service, auditing, marketing, etc.)
- Affiliated Companies
- Litigation parties and attorneys, as required by law.
- Financial rating organizations, rating bureaus and trade associations.
- Federal and State Regulators, law enforcement and other government entities

In the preceding twelve (12) months, Stewart has disclosed the following categories of personal information for a business purpose:

Category A:  Identifiers
Category B:  California Customer Records personal information categories
Category C:  Protected classification characteristics under California or federal law
Category D:  Commercial Information
Category E:  Biometric Information
Category F:  Internet or other similar network activity
Category G:  Geolocation data
Category H:  Sensory data
Category I:  Professional or employment-related information
Category J:  Non-public education information
Category K:  Inferences

<u>Consumer Rights and Choices</u>

The CCPA provides consumers (California residents) with specific rights regarding their personal information.  This section describes your CCPA rights and explains how to exercise those rights.

**Access to Specific Information and Data Portability Rights**

You have the right to request that Stewart disclose certain information to you about our collection and use of your personal information over the past 12 months.  Once we receive and confirm your verifiable consumer request, Stewart will disclose to you:

- The categories of personal information Stewart collected about you.
- The categories of sources for the personal information Stewart collected about you.
- Stewart's business or commercial purpose for collecting that personal information.
- The categories of third parties with whom Stewart shares that personal information.
- The specific pieces of personal information Stewart collected about you (also called a data portability request).
- If Stewart disclosed your personal data for a business purpose, a listing identifying the personal information categories that each category of recipient obtained.

**Deletion Request Rights**

You have the right to request that Stewart delete any of your personal information we collected from you and retained, subject to certain exceptions. Once we receive and confirm your verifiable consumer request, Stewart will delete (and direct our service providers to delete) your personal information from our records, unless an exception applies.

Stewart may deny your deletion request if retaining the information is necessary for us or our service providers to:

1. Complete the transaction for which we collected the personal information, provide a good or service that you requested, take actions reasonably anticipated within the context of our ongoing business relationship with you, or otherwise perform our contract with you.

2. Detect security incidents, protect against malicious, deceptive, fraudulent, or illegal activity, or prosecute those responsible for such activities.

3. Debug products to identify and repair errors that impair existing intended functionality.

4. Exercise free speech, ensure the right of another consumer to exercise their free speech rights, or exercise another right provided for by law.

5. Comply with the California Electronic Communications Privacy Act (Cal. Penal Code § 1546 *seq.*).

6. Engage in public or peer-reviewed scientific, historical, or statistical research in the public interest that adheres to all other applicable ethics and privacy laws, when the information's deletion may likely render impossible or seriously impair the research's achievement, if you previously provided informed consent.

7. Enable solely internal uses that are reasonably aligned with consumer expectations based on your relationship with us.

8. Comply with a legal obligation.

9. Make other internal and lawful uses of that information that are compatible with the context in which you provided it.

Exercising Access, Data Portability, and Deletion Rights

To exercise the access, data portability, and deletion rights described above, please submit a verifiable consumer request to us either:

- Calling us Toll Free at 1-866-571-9270

- Emailing us at Privacyrequest@stewart.com

- Visiting http://stewart.com/ccpa

Only you, or someone legally authorized to act on your behalf, may make a verifiable consumer request related to your personal information. You may also make a verifiable consumer request on behalf of your minor child.

To designate an authorized agent, please contact Stewart through one of the methods mentioned above.

You may only make a verifiable consumer request for access or data portability twice within a 12-month period. The verifiable consumer request must:

- Provide sufficient information that allows us to reasonably verify you are the person about whom we collected personal information or an authorized representative.

- Describe your request with sufficient detail that allows us to properly understand, evaluate, and respond to it.

Stewart cannot respond to your request or provide you with personal information if we cannot verify your identity or authority to make the request and confirm the personal information relates to you.

Making a verifiable consumer request does not require you to create an account with Stewart.

Response Timing and Format

We endeavor to respond to a verifiable consumer request within forty-five (45) days of its receipt.  If we require more time (up to an additional 45 days), we will inform you of the reason and extension period in writing.

A written response will be delivered by mail or electronically, at your option.

Any disclosures we provide will only cover the 12-month period preceding the verifiable consumer request's receipt.  The response we provide will also explain the reasons we cannot comply with a request, if applicable.  For data portability requests, we will select a format to provide your personal information that is readily useable and should allow you to transmit the information from one entity to another entity without hindrance.

Stewart does not charge a fee to process or respond to your verifiable consumer request unless it is excessive, repetitive, or manifestly unfounded.  If we determine that the request warrants a fee, we will tell you why we made that decision and provide you with a cost estimate before completing your request.

<u>Non-Discrimination</u>

Stewart will not discriminate against you for exercising any of your CCPA rights.  Unless permitted by the CCPA, we will not:

- Deny you goods or services.
- Charge you a different prices or rates for goods or services, including through granting discounts or other benefits, or imposing penalties.
- Provide you a different level or quality of goods or services.
- Suggest that you may receive a different price or rate for goods or services or a different level or quality of goods or services.

<u>Changes to Our Privacy Notice</u>

Stewart reserves the right to amend this privacy notice at our discretion and at any time.  When we make changes to this privacy notice, we will post the updated notice on Stewart's website and update the notice's effective date.  **Your continued use of Stewart's website following the posting of changes constitutes your acceptance of such changes.**

<u>Contact Information</u>

If you have questions or comments about this notice, the ways in which Stewart collects and uses your information described here, your choices and rights regarding such use, or wish to exercise your rights under California law, please do not hesitate to contact us at:

**Phone:**          Toll Free at 1-866-571-9270

**Website:**        **http://stewart.com/ccpa**

**Email:**          Privacyrequest@stewart.com

**Postal Address:**  Stewart Information Services Corporation

Attn:  Mary Thomas, Deputy Chief Compliance Officer

1360 Post Oak Blvd., Ste. 100, MC #14-1

Houston, TX  77056

ASSESSOR'S MAP
COUNTY OF LOS ANGELES, CALIF.



T. I S., R. I5 W.

CODE
67
2455
371

**102**



FOR PREV. ASSMT. SEE:1678 -20



**103**



**4387**

**22** SHEET

**2019**

PG 21

PG 20

PG 24

PG 25

PG 26

TRACT NO 20500
MB 580-25-26

COLDWATER CANYON DR

ARROWOOD DR

CEDARBROOK

**104**




**This page is part of your document - DO NOT DISCARD**



# 20190014936



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/07/19 AT 08:04AM**

**Pages:
0003**

| | |
|---|---|
| FEES: | 0.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 0.00 |



**L E A D S H E E T**



**201901073000004**

**00016131652**



**009551435**

**SEQ:
01**

**DAR - Mail (Intake)**



**THIS FORM IS NOT TO BE DUPLICATED**

E530907

# EXHIBIT 3

RECORDING REQUESTED BY

WHEN RECORDING MAIL TO:

DEPARTMENT OF INDUSTRIAL RELATIONS
DIVISION OF WORKERS' COMPENSATION
UEF-COLLECTION UNIT
P.O. BOX 429397
SAN FRANCISCO, CA 94142-9397

Document Number:16131652

Batch Number:9551435

SPACE ABOVE THIS LINE RESEVERED FOR RECORDER'S USE

# TITLE(S)

RECORDING REQUESTED BY

STATE OF CALIFORNIA
DEPARTMENT OF INDUSTRIAL RELATIONS

AND WHEN RECORDED MAIL TO:

Uninsured Employers Benefits Trust Fund Collections Unit
P.O. Box 429397
San Francisco, CA 94142-9397

Telephone: (510) 286-7067

Reference: _____ WILBER NUNEZ _____
                     (Applicant)

— — — — — — — — — — — — — — — — — SPACE ABOVE THIS LINE FOR RECORDER'S USE — — — —

# CERTIFICATE OF LIEN

TO ALL WHOM IT MAY CONCERN: _____ LOS ANGELES _____ COUNTY

Please take notice that the Director of Industrial Relations, State of California, or the Workers'
Compensation Appeals Board, on _____ DECEMBER 14, 2017 _____, determined in Case No/s.
UEF10538684                                                                    that

MOHAMMED ANWAR HADID, INDIVIUDALLY AND AS SUBSTANTIAL SHAREHOLDER OF COLDWATER DEVELOPMENT, LLC
                (Employer)
has not secured the payment of compensation as required by Division 4 of the Labor Code.

Accordingly, pursuant to Labor Code Section 3720, this certificate is being filed in the office of the
County Recorder, and shall operate as a valid lien against the employer's property in favor of the
Director of Industrial Relations, State of California, with all the force, effect and priority of a judgment
lien, and shall continue for 10 years from the time of the recording of this certificate unless sooner
released or otherwise discharged.

This lien secures all amounts paid, and to be paid, by the Uninsured Employer Benefits Trust Fund in
the above-reference case/s, venued at the _____ VAN NUYS _____ District Office of the Workers'
Compensation Appeals Board. For financial information regarding payments made or to be made by the
Uninsured Employers Benefits Trust Fund, contact (510) 286-7067 and/or write to the Uninsured
Employers Benefits Trust Fund Collection Unit at P.O. Box 429397, San Francisco, CA 94142-9397.

Copy mailed on December 20, 2018 _____ to
the employer at the address
11301 W. OLYMPIC BLVD., #537
LOS ANGELES, CA 90064

_André Schoorl_

André Schoorl
Acting Director
Department of Industrial Relations
State of California

DECEMBER 20, 2018

Date

NOTE TO COUNTY RECORDER: Pursuant to Labor Code Section 3720, a facsimile signature of the Director of Industrial
Relations accompanied by the seal imprint of the Department of Industrial Relations shall be sufficient for recording purposes of
liens. Pursuant to Labor Code Section 3721, the recorder shall make no charge for filing certificates of lien.

1953

DWC/UEF 2 (REV. 9/2015)




**This page is part of your document - DO NOT DISCARD**



## 20190014940



**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/07/19 AT 08:04AM**

| | |
|---|---|
| FEES: | 0.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 0.00 |



**L E A D S H E E T**



**201901073000005**

**00016131777**



**009551474**

**SEQ:
01**

**DAR - Mail (Intake)**



**THIS FORM IS NOT TO BE DUPLICATED**

*E530907*

## EXHIBIT 4

RECORDING REQUESTED BY

WHEN RECORDING MAIL TO:

DEPARTMENT OF INDUSTRIAL RELATIONS
DIVISION OF WORKERS' COMPENSATION
UEF-COLLECTION UNIT
P.O. BOX 429397
SAN FRANCISCO, CA 94142-9397

Document Number:16131777

Batch Number:9551474

SPACE ABOVE THIS LINE RESEVERED FOR RECORDER'S USE

# TITLE(S)

Order: 1549295                    Page 2 of 3        Requested By: BobbieJo.Kopepasah, Printed: 1/20/2022 8:34 AM
Doc: CALOSA:2019 00014940

RECORDING REQUESTED BY

STATE OF CALIFORNIA
DEPARTMENT OF INDUSTRIAL RELATIONS

AND WHEN RECORDED MAIL TO:

Uninsured Employers Benefits Trust Fund Collections Unit
P.O. Box 429397
San Francisco, CA 94142-9397

Telephone: (510) 286-7067

Reference: _____ WILBER NUNEZ _____
                        (Applicant)

———————————————— SPACE ABOVE THIS LINE FOR RECORDER'S USE ————

# CERTIFICATE OF LIEN

TO ALL WHOM IT MAY CONCERN: _____ LOS ANGELES _____ COUNTY

Please take notice that the Director of Industrial Relations, State of California, or the Workers'
Compensation Appeals Board, on _____ DECEMBER 14, 2017 _____, determined in Case No/s.
UEF10538684                                                                                    that

COLDWATER DEVELOPMENT, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
                        (Employer)
has not secured the payment of compensation as required by Division 4 of the Labor Code.

Accordingly, pursuant to Labor Code Section 3720, this certificate is being filed in the office of the
County Recorder, and shall operate as a valid lien against the employer's property in favor of the
Director of Industrial Relations, State of California, with all the force, effect and priority of a judgment
lien, and shall continue for 10 years from the time of the recording of this certificate unless sooner
released or otherwise discharged.

This lien secures all amounts paid, and to be paid, by the Uninsured Employer Benefits Trust Fund in
the above-reference case/s, venued at the _____ VAN NUYS _____ District Office of the Workers'
Compensation Appeals Board. For financial information regarding payments made or to be made by the
Uninsured Employers Benefits Trust Fund, contact (510) 286-7067 and/or write to the Uninsured
Employers Benefits Trust Fund Collection Unit at P.O. Box 429397, San Francisco, CA 94142-9397.

_____

_____
Copy mailed on December 20, 2018 _____ to
the employer at the address
11301 W. OLYMPIC BLVD., #537
LOS ANGELES, CA 90064

_____

_____

André Schoorl
Acting Director
Department of Industrial Relations,
State of California

DECEMBER 20, 2018
Date

NOTE TO COUNTY RECORDER: Pursuant to Labor Code Section 3720, a facsimile signature of the Director of Industrial
Relations accompanied by the seal imprint of the Department of Industrial Relations shall be sufficient for recording purposes of
liens. Pursuant to Labor Code Section 3721, the recorder shall make no charge for filing certificates of lien.

DWC/UEF 2 (REV. 9/2015)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S MOTION TO: (I) APPROVE SALE OF PROPERTY FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS, AND ENCUMBRANCES, EXCEPT AS OTHERWISE PROVIDED IN THE PURCHASE CONTRACT, PURSUANT TO 11 U.S.C. §§ 363(B) AND (F); (II) DETERMINE THAT BUYER IS ENTITLED TO PROTECTION PURSUANT TO 11 U.S.C. § 363(M); AND (III) PROVIDE RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF SAM S. LESLIE, MICHAEL C. WALTERS, JEFFREY J TANENBAUM AND MICHAEL EISNER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **March 25, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Eryk R Escobar    eryk.r.escobar@usdoj.gov
- M Douglas Flahaut    flahaut.douglas@arentfox.com
- Eric J Fromme    efromme@tocounsel.com, stena@tocounsel.com
- Asa S Hami    ahami@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com; cblair@sulmeyerlaw.com;ahami@ecf.inforuptcy.com
- Christopher J Harney    charney@tocounsel.com, stena@tocounsel.com
- Sam S Leslie (TR)    sleslie@trusteeleslie.com, trustee@trusteeleslie.com;C195@ecfcbis.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- William N Lobel    wlobel@tocounsel.com, jokeefe@tocounsel.com;sschuster@tocounsel.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com
- David Seror    dseror@bg.law, ecf@bg.law
- Annie Y Stoops    annie.stoops@arentfox.com, yvonne.li@arentfox.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Dylan J Yamamoto    dylan.yamamoto@arentfox.com
- Robert M Yaspan    court@yaspanlaw.com, tmenachian@yaspanlaw.com

☐    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **March 25, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**\*\*JUDGE'S COPY UNDER 25 PAGES IS SUSPENDED (GENERAL ORDER 21-05).**

Honorable Sheri Bluebond
United States Bankruptcy Court
255 East Temple Street, Suite 1534
Los Angeles, CA  90012-3332

☒    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 25, 2022 | Mela Galvan | /s/ Mela Galvan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

2. **SERVED BY UNITED STATES MAIL**:

**Lydda Lud Debtor**
Lydda Lud, LLC
11301 W. Olympic Blvd. #537
Los Angeles, CA 90064

**Lienholder**
Los Angeles County Treasurer and
Tax Collector
Bankruptcy Unit
PO Box 54110
Los Angeles CA 90054-0110

**Interest Holder**
State of California Department of
Industrial Relations
6150 Van Nuys Blvd # 105
Van Nuys, CA 91401

**Interest Holder**
California Department of Industrial
Relations
Division of Workers Compensation
Uninsured Employer Benefits Trust
Fund
1515 Clay Street, 7th Floor
Oakland, CA 94612

**Interest Holder**
California Department of Industrial
Relations
Division of Workers Compensation
UEF-Collection Unit
P.O. Box 429397
San Francisco, CA 94142-9397

**Lienholder**
Give Back LLC
P.O. Box 11480
Beverly Hills, CA 90213

**Interest Holder**
RAL Design and Management Inc.
Russell Linch
25031 W. Avenue Standford
Unit 100
Valencia, CA 91355

**Lienholder**
Mountains Recreation & Conservation
Authority
c/o James Yeramian, Clerk of
Governing Board
5750 Ramirez Canyon Road
Malibu, CA 90265

**Lienholder**
Mountains Recreation & Conservation
Authority
Conejo Recreation and Park District
c/o James Yeramian, MRCA
403 W Hillcrest Drive
Thousand Oaks, CA 91360

**Interested Party**
Mohamed Hadid
638 North Faring Road
Bel Air, CA 90077

**Interested Party**
Mohamed Hadid
11301 W. Olympic Blvd. #537
Los Angeles, CA 90064

**Taxing Authority**
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

**Taxing Authority**
Internal Revenue Service
ATTN Insolvency
24000 Avila Road
Mail Stop 5503
Laguna Niguel, CA 92677-3405

**Taxing Authority**
Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

**Taxing Authority**
Franchise Tax Board Chief Counsel
c/o General Counsel Section
P.O. Box 1720, MS: A-260
Rancho Cordova, CA 95741-1720

**Prior Broker**
Hilton & Hyland
Attn: Rodrigo Iglesias
257 North Canon Drive #200
Beverly Hills, CA 90210

**Buyer**
Castle Real Estate, LLC
c/o Eisner, LLP
Attn: Michael Eisner
9601 Wilshire Boulevard, 7th Floor
Beverly Hills, CA 90210

**Buyer**
Castle Real Estate, LLC
c/o Pachulski Stang Ziehl & Jones
Attn: Ira Kharasch
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA 90067-4003

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                           **F 9013-3.1.PROOF.SERVICE**

2. **SERVED BY UNITED STATES MAIL**:

### DEBTORS' CREDITORS

Bel Air Project LLC
9454 Wilshire Blvd. #320
Beverly Hills, CA 90212

Law Offices of Adulaziz, Grossbart
and Rudman
6454 Coldwater Canyon Ave.
North Hollywood, CA 91606

Aram Ordubegian   **VIA NEF**
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065

Closing Agents Escrow, Inc. **VIA NEF**
c/o Law Offices of Robert M. Yaspan
21700 Oxnard Street Suite 1750
Woodland Hills, CA 91367-7593

LEA Accountancy, LLP
1130 S. Flower Street
Suite 312
Los Angeles, CA 90015-2143

Permits Unlimited
4340 Caleta Rd.
Agoura Hills, CA 91301

Construction Enterprise & Services
11301 W. Olympic Blvd. #537
Los Angeles, CA 90064

Lennie Liston, Esq.
PE, QSD/QSP - President
LC Engineering Group, Inc.
889 Pierce Court, Suite 101
Thousand Oaks, CA 91360

Securities & Exchange Commission
444 South Flower St., Suite 900
Los Angeles, CA 90071-2934

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Lincoln Resorts an AZ Joint
Venture Prt
c/o Freeman Freeman & Smiley LLP
1888 Century Park East St 1500
Los Angeles CA 90067

Shahbaz Law Group
15760 Ventura Blvd., Ste. 850
Encino, CA 91436

First Credit Bank,
a California banking corporation
9255 Sunset Blvd.
West Hollywood, CA 90069

Los Angeles Department of Water
and Power
P.O. Box 51111
Los Angeles, CA 90051

Tree Lane LLC
11301 W. Olympic Blvd. #537
Los Angeles, CA 90064

Land Phases Inc.
5158 Cochran St.
Simi Valley, CA 93063

Office of Finance
City of Los Angeles
200 N Spring St RM 101 City Hall
Los Angeles CA 90012-3224

Treetop Development LLC
11301 W. Olympic Blvd. #537
Los Angeles, CA 90064

Larry A. Rothstein
2945 Townsgate Rd., Suite 200
Westlake Village, CA 91361

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**