DAVID SEROR (CA Bar No. 67488)
JESSICA L. BAGDANOV (CA Bar No. 281020)
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Phone: 818-827-9000
Facsimile: 818-827-9099
Email: dseror@bg.law
jbagdanov@bg.law

Counsel for Sam S. Leslie, Chapter 7 Trustee

FILED & ENTERED

APR 01 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY evangeli DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:

COLDWATER DEVELOPMENT, LLC, A California limited liability company,

Debtor.

In re:

LYDDA LUD, LLC, a California limited liability company,

Debtor.

☒ Affects Both Debtors.

☐ Affects Coldwater Development LLC only.

☐ Affects Lydda Lud, LLC only.

Debtors.

Case No. 2:21-bk-10335-BB

Chapter 11

Jointly Administered with
Case No. 2:21-bk-10336-BB

**ORDER:**

**(A) AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR OF INTERESTS, INCLUDING LIENS, CLAIMS, LIABILITIES, AND ENCUMBRANCES;**

**(B) GRANTING THE BUYER THE PROTECTIONS AFFORDED TO A GOOD FAITH PURCHASER; AND**

**(C) GRANTING RELATED RELIEF**

Sale Hearing:
Date: March 30, 2022
Time: 10:00 a.m.
Courtroom: 1539
255 East Temple Street
Los Angeles, CA 90012

Upon the sale motion filed on March 25, 2022 [Docket No. 280] (the "Sale Motion") by Sam S. Leslie, the Chapter 7 Trustee (the "Trustee") for the estates of the above-captioned debtors (the "Debtors"), and in accordance with and pursuant to the Order (1) Approving Bidding Procedures, and (2) Scheduling the Sale Hearing ("Bid Procedures Order") [Docket No. 267], for the entry of an order (this "Order") authorizing the Debtors, by and through the Trustee, and the Buyer (as defined herein) to consummate the Purchase Contract dated March 23, 2022 (together with documents referred therein, necessary thereto, or ancillary thereto, the "Purchase Contract"), attached to the Sale Motion as Exhibit 1 (pages 34-63 of Docket No. 280).[1] The relief requested includes, among other things:

i. approval of and authorization to consummate the sale of the Property, specifically six (6) residential lots totaling approximately 65.63 acres located in the Santa Monica Mountains above Beverly Hills, California (Assessor's Parcel Numbers 4387-021-018, 4387-021-019, 4387-022-001, 4387-022-002, 4387-020-001, 4387-020-009),[2] and as described in the Purchase Contract, including Land, Appurtenances, Mineral Rights, Improvements, and Appurtenances (collectively, and as further described in the Purchase Contract, the "Property") to Castle Real Estate, LLC ("Buyer"), free and clear of all interests (as such term is used in section 363(f) of the Bankruptcy Code), including without limitation, liens, claims, encumbrances, leases, tenancies and other occupancies, options to purchase, agreements to sell, rights of first refusal or first offer (or any rights similar to the foregoing), rights of redemption, pledges, and charges (collectively, the "Claims, Rights, and Encumbrances"), except as otherwise provided in the Purchase Contract;

ii. granting the Buyer the protections afforded to a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; and

iii. granting certain related relief pursuant to the Bankruptcy Code and/or applicable law (with the foregoing (i) through (iii) collectively referred to as the "Sale").

---

[1] Unless stated otherwise, all capitalized terms not defined herein shall have the same meaning as set forth in the Purchase Contract and Sale Motion. In the event of any inconsistency between this Order and the Sale Motion, the Order shall govern.

[2] See Exhibit A attached hereto for the Legal Description of the Property.

It appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and this United States Bankruptcy Court for the Central District of California, Los Angeles Division (this "Court") having jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Sale Motion and opportunity for objections or requests for hearing having been filed; and notice of the Sale having been filed; and good and sufficient opportunity to object and to be heard with respect to the Sale, the Sale Motion and the relief requested therein having been afforded to all interested persons and entities; and based on the statements of counsel and the evidence presented in support of the relief requested by the Trustee at the hearing on the Sale Motion (the "Sale Hearing"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Sale Motion and supporting declarations, and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**[3]

A. This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. § 1334(a). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Sale Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2).

B. This Order constitutes a final and appealable decision within the meaning of 28 U.S.C. § 158(a). Notwithstanding Rule 6006(d) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and to the extent necessary under Bankruptcy Rule 9014, this Court expressly finds that there is no just reason for the delay in the effectiveness of this Order, nor any just reason to delay its effect on all holders of rights in and to, and against the Property and the parties to the Purchase Contract (the "Parties"), and expressly directs the entry of this Order as set forth herein.

C. The statutory and rule predicates for the relief requested in the Sale Motion are (i) sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(a), 365(b), 365(e), and 365(f) of Title 11 of the United States Code ("Bankruptcy Code"), (ii) Bankruptcy Rules 2002(a)(2), 2002(c)(1), 6004(a),

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. *See* Fed. R. Bankr. P. 7052.

6004(c), 6004(f), 6004(h), 6006(a), 6006(c), 6006(f), and 6006(g), and (iii) Rule 6004-1 of this Court ("Local Rules").

**Notice of the Sale and Auction**

D. Actual written notice of the Sale Hearing, the Auction, the Sale Motion, the Sale, and all notices and deadlines with respect to the foregoing, and a reasonable opportunity to object or be heard with respect to the foregoing and the relief requested therein has been afforded to all known interested persons and entities (together, the "Parties-in-Interest"), including, but not limited to the following parties:

a. the United States Trustee;

b. any party asserting Claims, Rights, and Encumbrances;

c. all taxing authorities having jurisdiction over any of the Property, including the Internal Revenue Service, the California Franchise Tax Board and the County of Los Angeles;

d. all persons known or reasonably believed to have asserted liens on any of the Property;

e. all persons known or reasonably believed to have expressed an interest in purchasing the Property;

f. all of the Debtors' known creditors; and

g. all other parties that have filed a notice of appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule 9010(b) and in any limited or ancillary proceeding in connection with these bankruptcy cases.

E. The Trustee has articulated good and sufficient reasons for this Court to grant the relief requested in the Sale Motion, including, without limitation, the Sale of the Property by the Debtors acting by and through the Trustee pursuant to section 363(b) of the Bankruptcy Code.

F. The Sale Notice provided all Parties-in-Interest with timely and proper notice of the Sale, Auction, Sale Hearing, and any deadlines to object to the Sale.

G. Prior to the Auction, the Trustee received deposits from two Qualified Bidders, the Buyer and Give Back, LLC ("Give Back").

H. As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, and Sale has been provided in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, and 9014 to all Parties-in-Interest. The Trustee has also complied with all obligations to provide notice of the Sale Motion, Auction, Sale Hearing, and Sale required by the Bid Procedures Order. The notices described above were good, sufficient, and appropriate under the circumstances, and no further or other notice of the Sale Motion, Auction, Sale Hearing, or Sale is required.

I. Disclosures of the Purchase Contract, Auction, Sale, and Sale Hearing were good, complete, and adequate, and a reasonable opportunity to object or to be heard regarding the Sale was afforded to all Parties-in-Interest.

J. Other than unpaid property tax liens and property tax obligations, and the lien of Give Back, the Preliminary Title Report, attached as Exhibit 2 to the Sale Motion, identifies encumbrances as follows (all of which the Trustee disputes):

(a) A Claim of Mechanic's Lien filed by Ral Design & Management, Inc., in the amount of $430,098.00, and any other amount due thereunder, recorded on March 19, 2021 as instrument no. 20210445146 in the Official Records Recorder's Office, Los Angeles County (the "Mechanic's Lien");

(b) The Certificate of Lien filed by Department of Industrial Relations, State of California, Case No. UEF10538684 against Mohammed AnWar Hadid, Individually and as substantial share hold of Coldwater Development, LLC, recorded January 7, 2019 as instrument no. 20190014936 in the Official Records Recorder's Office, Los Angeles County; and

(c) The Certificate of Lien filed by Department of Industrial Relations, State of California, Case No. UEF10538684 against Coldwater Development, LLC, recorded January 7, 2019 as instrument no. 20190014940 in the Official Records Recorder's Office, Los Angeles County (together with item 2, the "Department of Industrial Relations Liens").

**Good Faith of the Buyer**

K. The Buyer is not an "insider" or otherwise an "affiliate" of either of the Debtors, as those terms are defined in section 101(31) of the Bankruptcy Code.

L. The Buyer is purchasing the Property in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of those provisions, and otherwise has proceeded in good faith in all respects in connection with the Sale in that, *inter alia*: (i) the Trustee was free to deal with any other party interested in acquiring the Property in accordance with the Bid Procedures Order; (ii) the Buyer complied with the provisions of the Bid Procedures Order; (iii) the Buyer agreed to subject its bid, in the form of the Purchase Contract, to the competitive Bid Procedures set forth in the Bid Procedures Order; (iv) all payments and other consideration to be provided by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (v) the Buyer has not engaged in any action or inaction that would cause or permit the Purchase Contract or the Sale to be avoided or would impose any costs or damages under section 363(n) of the Bankruptcy Code; (vi) no common identity of directors or controlling stockholders exists between the Buyer and the Debtors; (vii) the negotiation and execution of the Purchase Contract was at arms' length and in good faith at all times, and each Party was represented by separate and competent counsel and other professionals; and (viii) the Purchase Contract was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors.

M. In the absence of a stay pending appeal, the Buyer is authorized to rely on this Order in closing the Sale on the terms and conditions set forth in the Purchase Contract and this Order.

**Highest and Best Offer**

N. Along with the prior marketing by the Debtors, the Trustee conducted an extensive and adequate marketing and sale process in accordance with, and has otherwise complied in all material respects with, the Bid Procedures Order. The sale process set forth in the Bid Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Property.

O. On March 24, 2022, the Trustee, in accordance with the Bid Procedures and the Bid Procedures Order conducted the Auction.

P. At the conclusion of the Auction, the Trustee determined that the bid evidenced by the Purchase Contract is the highest and best offer for the Property.

Q. The Trustee's determination that the Purchase Contract constitutes the highest and best offer constitutes a valid and sound exercise of his business judgment.

R. The Property was adequately marketed by the Trustee and his advisors, along with the prior marketing of the Property by the Debtors, and the consideration provided by the Buyer under the Purchase Contract constitutes the highest and best offer for the Property and will provide greater recoveries for the Debtors' estates than would be provided by any other available alternative.

S. Approval of the Sale Motion and the Purchase Contract and the consummation of the Sale are in the best interests of the Debtors, their creditors, their estates, and any other Parties-in-Interest.

T. The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale.

U. The consideration provided by the Buyer is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

V. The Buyer is not a successor to the Debtors or their respective estates by reason of any theory of law or equity, and the Buyer shall not assume or in any way be responsible for any liability or obligation of any of the Debtors or their respective estates by reason thereof. The Buyer is not a mere continuation of the Debtors or their estates, and there is no continuity between the Buyer and any of the Debtors. The Buyer is not holding itself out to the public as a continuation of the Debtors. The Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and either of the Debtors.

///

**Validity of Transfers**

W. The Trustee has full power and authority to execute and deliver the Purchase Contract and all other documents contemplated thereby on behalf of the Debtors and to perform the Debtors' obligations thereunder, and no further consents or approvals are required for the Debtors to consummate the Sale, except as otherwise set forth in the Purchase Contract.

**Section 363(f) of the Bankruptcy Code**

X. The Trustee may sell the Property free and clear of all Claims, Rights, and Encumbrances because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those holders of Claims, Rights, and Encumbrances who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. As to any other holders of Claims, Rights, and Encumbrances who filed objections to the Sale Motion not otherwise withdrawn at the Sale Hearing, such Claims, Rights, and Encumbrances fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Claims, Rights, and Encumbrances either paid in full or assumed by the Buyer upon the Closing Date, or attach to the cash proceeds of the Sale ultimately attributable to the Property in which such creditor alleges an interest, in the same order of priority, with the same validity, force, and effect that such creditor had prior to the Sale, subject to any and all claims and defenses the Trustee may possess with respect thereto.

Y. The Buyer shall have no obligations with respect to any liabilities of the Debtors' estates except as specifically set forth in, and solely to the extent provided pursuant to, the Purchase Contract, and the Sale will not subject the Buyer, the Property, or any of the Buyer's assets to any liability for any Claims, Rights, and Encumbrances whatsoever (including, without limitation, under any theory of equitable law, antitrust, setoff, or successor or transferee liability). As set forth in the Purchase Contract, the Buyer is acquiring ownership of the Property subject to the lien, security interest, and deed of trust of Give Back and all unpaid property tax obligations and property tax liens.

**Compelling Circumstances for an Immediate Sale**

Z. To maximize the value of the Property, it is essential that the Sale occur within the time constraints set forth in the Purchase Contract. Time is of the essence in consummating the Sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1. The relief requested in the Sale Motion is **GRANTED** and **APPROVED**, and the Sale contemplated thereby and by the Purchase Contract is **APPROVED** as set forth in this Order.

2. All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to this Court or by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

3. The Trustee is authorized to sell the Property free and clear of the Mechanic's Lien and Department of Industrial Relations Liens pursuant to 11 U.S.C. § 363(f)(4), with such encumbrances to attach to sale proceeds, as those encumbrances are in bona fide dispute.

**Approval of the Purchase Contract**

4. The Purchase Contract, and all the terms and conditions thereof, are hereby **APPROVED.**

5. Pursuant to section 363(b) of the Bankruptcy Code, the Trustee on behalf of the Debtors is authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale of the Property to the Buyer pursuant to and in accordance with the terms of the Purchase Contract, (b) close the Sale as contemplated by the Purchase Contract and this Order, and (c) execute and deliver, perform under, consummate, implement, and close fully the Purchase Contract, together with all additional instruments and documents that may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Contract and such other ancillary documents.

///

6. Specifically, the Trustee is authorized to direct escrow to disburse proceeds as follows:

(a) Closing costs consisting of the cost of a standard coverage title insurance policy and the Trustee's portion of escrow fees;

(b) The Marketing and Sale Expense of the Auctioneer;

(c) The Buyer's Premium as provided for in the Sale Motion (in part to the Estate and in part to the Auctioneer); and

(d) Payment of the LC Engineering Claim pursuant to the Stipulation.

7. Thereafter, the Trustee shall hold the remaining proceeds from the Sale in trust for the benefit of these Estates.

8. The Trustee is further authorized to refund the deposit paid by Give Back upon entry of this Order.

9. This Order shall be binding in all respects upon the Trustee, the Debtors, all creditors of the Debtors, all holders of equity interests in each Debtor, all holders of any interests, liens, claims, liabilities and encumbrances (whether known or unknown) against either Debtor or on all or any portion of the Property, the Buyer and all successors and assigns of the Buyer, and any successor trustees, if any, subsequently appointed in either of the bankruptcy cases. In the event either of the bankruptcy cases are dismissed, this Order shall remain enforceable by the Buyer in any court of competent jurisdiction notwithstanding any order dismissing the bankruptcy cases.

**Transfer of the Assets**

10. Pursuant to sections 105(a), 363(b), 363(f), 365(b), 365(f), and 541(a)(7) of the Bankruptcy Code, the Trustee on behalf of the Debtors is authorized to consummate the Sale as set forth in the Purchase Contract and transfer the Property on the Closing Date. Such Property shall be transferred pursuant to the Purchase Contract to the Buyer "as is where is" with all faults subject to and in accordance with the Purchase Contract upon and as of the Closing Date, and upon Buyer's payment in full of the Purchase Price, such transfer shall constitute a legal, valid, binding, and effective transfer of the Property free and clear of all Claims, Rights, and Encumbrances, except as otherwise provided in the Purchase Contract. Pursuant to section 363(f) of the Bankruptcy Code, the

transfer of title to the Property, shall be free and clear of any and all Claims, Rights, and Encumbrances (including, without limitation, any and all claims pursuant to any successor-in-interest or fraudulent transfer liability theory). To the extent such Claims, Rights, and Encumbrances are not paid in full or assumed by the Buyer upon the Closing Date, all Claims, Rights, and Encumbrances on the Property shall attach solely to the proceeds of the Sale with the same validity, priority, force, and effect that they now have as against the Property, subject to any and all claims and defenses the Trustee, Debtors and their estates may possess with respect thereto.

11. Except as expressly permitted or otherwise specifically provided in the Purchase Contract or this Order, all persons or entities holding Claims, Rights, and Encumbrances in all or any portion of the Property arising under or out of, in connection with, or in any way relating to the Debtors, the Property, the operation of the Debtors' business prior to the Closing Date, the consummation of the Sale and transfer of the Property to the Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting against the Buyer, or its successors or assigns, and the Property, such persons' or entities' Claims, Rights, and Encumbrances in and to the Property and/or against the Buyer. On the Closing Date, each creditor is authorized to execute such documents and take all other actions as may be necessary to release Claims, Rights, and Encumbrances on the Property, if any, as provided herein, as such Claims, Rights, and Encumbrances may have been recorded or may otherwise exist. The Sale authorized herein shall be of full force and effect, regardless of either Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business. Upon consummation of the Sale as set forth in the Purchase Contract, the Buyer shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any lien or encumbrance with respect to the Property (but not the proceeds thereof) that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

12. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee on behalf of the Debtors

to sell and transfer the Property to the Buyer in accordance with the terms of the Purchase Contract and this Order.

13. All persons and entities that are in possession of some or all of the Property on the Closing Date are directed to surrender possession of such Property to the Buyer or its assignee at Closing in accordance with the Purchase Contract.

14. The provisions of this Order authorizing the Sale of the Property by the Trustee free and clear of Claims, Rights, and Encumbrances shall be self-executing, and neither of the Trustee, the Buyer, or any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents, or other instruments to effectuate, consummate, and/or implement the provisions hereof with respect to the Sale; *provided*, *however*, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the Purchase Contract.

15. Without limiting the foregoing, a certified copy of this Order may be filed by the Buyer with the appropriate clerk or clerks and/or agencies or departments and/or recorded to act to cancel any of the Claims, Rights, and Encumbrances on the Property of record.

16. If any person or entity that has filed statements or other documents or agreements evidencing interests, liens, claims, liabilities, and encumbrances on all or a portion of the Property shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Claims, Rights, and Encumbrances on the Property, which the person or entity has or may assert with respect to all or any portion of the Property, the Debtors and Buyer are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Property.

17. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons or

entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any agreement or lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Contract.

18. Any and all governmental recording offices and all other parties, persons, or entities are authorized to accept this Order for recordation on or after the Closing as conclusive evidence of the free and clear, and unencumbered, transfer of all rights, title, interest in, and ownership of and to the Property conveyed to the Buyer at Closing.

**Protections of the Buyer**

19. Effective upon the Closing Date, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer, its successors and assigns, its property, or the Property, with respect to any (a) Claims, Rights, and Encumbrances arising under, out of, in connection with or in any way relating to the Debtors, the Buyer, the Property, or the operation of the businesses to which the Property relates prior to or in connection with or relating to the Closing of the Sale, or (b) successor liability or liability under any other theory at law or in equity with respect to transferee liability, including, without limitation, with respect to the foregoing (a) and (b), the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer or its successors, assigns, assets, or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Buyer or its successors, assigns, assets, or properties; (iii) creating, perfecting, or enforcing any Claims, Rights, and Encumbrances against the Buyer or its successors, assigns, assets, or properties; (iv) asserting any setoff, right or subrogation, or recoupment of any kind against any obligation due the Buyer or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of this Court, or the agreements or

actions contemplated or taken in respect thereof; (vi) revoking, terminating or failing or refusing to issue or renew any licenses, permits, or authorizations to operate any of the Property or conduct any of the businesses operated with the Property or (vii) commencing any action, in any manner or place, arising from, out of, or in connection with the negotiation and formulation of the Purchase Contract, and the consummation of the Sale, including any actions necessary in aid thereof.

20. Except as otherwise expressly set forth in this Order or the Purchase Contract, the Buyer shall not have any liability or other obligation of the Debtors arising under or related to any of the Property. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Purchase Contract, the Buyer shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date. The Buyer has given, and the Debtors' estates have received, substantial, fair and reasonably equivalent consideration under the Purchase Contract for the benefit of the holders of any Claims, Rights, and Encumbrances. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor or transferee liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Claims, Rights, and Encumbrances against any of the Debtors or in any of the Property.

21. The Sale contemplated by the Purchase Contract is undertaken by the Buyer without collusion and in good faith, as those terms are understood in sections 363(m) and 363(n) of the Bankruptcy Code and applicable law, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization and consummation of the Sale are duly stayed pending such appeal. The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and applicable law and as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

22. The Sale contemplated in the Purchase Contract may not be avoided, and no damages may be assessed against the Buyer under section 363(n) of the Bankruptcy Code or applicable law.

**Other Provisions**

23. This Order and the Purchase Contract shall be binding in all respects upon all creditors (whether known or unknown), counterparties, and Parties-in-Interest, the Trustee, the Debtors and their affiliates, the Buyer, and any subsequent trustees appointed in these bankruptcy cases and the Purchase Contract shall not be subject to rejection.

24. The Trustee and the Buyer are authorized to close the Sale on or after fourteen (14) days after entry of this Order. The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase Contract or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; *provided*, *however*, that this Court shall retain jurisdiction over any and all disputes and matters arising from or related to the Purchase Contract, the Sale and the implementation, interpretation, and enforcement of this Order.

25. No bulk sales or any similar law of any state or jurisdiction applies in any way to the Sale.

26. The Purchase Contract and any related agreements, documents, or other instruments (other than this Order) may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

27. To the extent there are any inconsistencies between the terms of this Order and the Purchase Contract (including any ancillary documents executed in connection therewith), the terms of this Order shall govern.

28. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these bankruptcy cases, the terms of this Order shall govern.

30. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms of the Order and the Purchase Contract, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors by and through the Trustee are a party or which had been assigned by the Debtors and/or Debtors to the Buyer, to protect the Buyer and its assets, including the Property, against any Claims, Rights, and Encumbrances and to adjudicate, if necessary, any and all disputes relating in any way to the Sale.

###

Date: April 1, 2022

Sheri Bluebond
United States Bankruptcy Judge

# LEGAL DESCRIPTION

**The land referred to herein is situated in the State of California, County of Los Angeles, City of Beverly Hills and described as follows:**

PARCEL 1: APN 4387-020-001

THE EAST HALF OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 1 SOUTH, RANGE 15 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT OF SAID LAND IN THE DISTRICT LAND ON JUNE 25, 1887.

PARCEL 2: APN 4387-020-009

THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 1 SOUTH, RANGE 15 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THEREFROM THAT PORTION OF SAID LAND LYING NORTHWESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHERLY LINE OF SAID SOUTHWEST QUARTER, DISTANT THEREON SOUTH 88 DEGREES 42 MINUTES 03 SECONDS EAST 434.00 FEET FROM THE NORTHWEST CORNER OF SAID SOUTHWEST ONE-QUARTER; THENCE SOUTHWESTERLY IN A DIRECT LINE TO A POINT IN THE WESTERLY LINE OF SAID SOUTHWEST QUARTER; DISTANT THEREON SOUTHERLY 200.00 FEET FROM SAID NORTHWEST QUARTER SECTION CORNER.

PARCEL 3: APN 4387-022-001 & 4387-022-002

THAT PORTION OF LOTS 5 AND 6 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING WESTERLY OF THE WESTERLY AND NORTHERLY BOUNDARY LINES OF TRACT NO. 20500, AS PER MAP RECORDED IN BOOK 580 PAGES 25 AND 26 OF MAPS, RECORDS OF SAID COUNTY, SAID WESTERLY AND NORTHERLY LINES OF SAID TRACT NO. 20500 BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF LOT 1 OF SAID TRACT NO. 20550; THENCE ALONG THE WESTERLY BOUNDARY LINE OF SAID TRACT NO. 20500 NORTH 2 DEGREES 44 MINUTES 45 SECONDS WEST 200.00 FEET TO THE NORTHWEST CORNER OF SAID LOT 1 OF TRACT NO. 20500; THENCE ALONG THE NORTHERLY LINE OF SAID TRACT NO. 20500; NORTH 86 DEGREES 27 MINUTES 03 SECONDS EAST 214.00 FEET TO AN ANGLE POINT IN THE BOUNDARY OF SAID TRACT NO. 20500, NORTH 13 DEGREES 11 MINUTES 03 SECONDS EAST 292.01 FEET TO THE NORTHWEST CORNER OF SAID LOT 6 OF SAID TRACT NO. 20500, BEING A POINT ON THE NORTHERLY LINE OF SAID LOTS OF THE COLDWATER CANYON TRACT.

EXCEPT THAT PORTION, IF ANY, OF SAID LOT 6 LYING WITHIN THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 1, TOWNSHIP 1, RANGE 15 WEST, SAN BERNARDINO MERIDIAN.

PARCEL 4: APN 4387-021-019

THAT PORTION OF LOT 1, OF COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

BEGINNING AT A POINT IN THE WESTERLY PROLONGATION OF THE NORTHERLY LINE OF LOT 7 OF TRACT NO. 11859, AS PER MAP RECORDED IN BOOK 255 PAGES 22 AND 23 OF MAPS; IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SAID POINT BEING DISTANT ALONG SAID PROLONGATION AND NORTHERLY LINE NORTH 78 DEGREES 17 MINUTES 00 SECONDS WEST 311.77 FEET FROM THE NORTHEASTERLY CORNER OF SAID LOT 7; THENCE ALONG SAID PROLONGATION SOUTH 78 DEGREES 17 MINUTES 00 SECONDS EAST 31.03 FEET TO A POINT DISTANT NORTH 78 DEGREES 17 MINUTES 00 SECONDS WEST 150.74 FEET FROM THE NORTHWESTERLY CORNER OF SAID LOT 7; THENCE SOUTH 51 DEGREES 53 MINUTES 58 SECONDS WEST TO A POINT IN THE SOUTHERLY LINE OF SAID LOT 1; THENCE ALONG SAID SOUTHERLY LINE OF SAID LOT 1 NORTH 85 DEGREES 57 MINUTES 00 SECONDS WEST TO THE SOUTHWEST CORNER OF SAID LOT 1; THENCE ALONG THE WESTERLY LINE OF SAID LOT 1 NORTH 00 DEGREES 34 MINUTES 40 SECONDS EAST 213.54 FEET TO THE NORTHWEST CORNER OF SAID LOT 1; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 1 SOUTH 88 DEGREES 22 MINUTES 30 SECONDS EAST 1277.69 FEET TO THE NORTHWESTERLY CORNER OF THE LAND DESCRIBED IN THE DEED TO CHARLES B. DIAMOND, RECORDED ON JULY 24, 1961 AS INSTRUMENT NO. 1259 IN BOOK D-1296 PAGES 51 AND 52, OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE ALONG THE WESTERLY LINE OF SAID LAND TO DIAMOND, SOUTH 05 DEGREES 06 MINUTES 00 SECONDS WEST 224.43 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 5: APN 4387-021-019

THAT PORTION OF LOT 2 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 2; THENCE SOUTH 85 DEGREES 57 MINUTES 00 SECONDS EAST ALONG THE NORTHERLY LINE OF SAID LOT 2 TO A POINT IN THAT CERTAIN COURSE RECITED AS “SOUTH 51 DEGREES 53 MINUTES 58 SECONDS WEST 96.80 FEET” IN THE CORPORATION GRANT DEED RECORDED ON APRIL 15, 1964 AS INSTRUMENT NO. 2263 IN BOOK D-2434 PAGES 681 AND 682, OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE ALONG SAID CERTAIN COURSE SOUTH 51 DEGREES 53 MINUTES 58 SECONDS WEST TO THE WESTERLY LINE OF THAT CERTAIN PARCEL OF LAND DESCRIBED IN THE DEED OF TRUST RECORDED ON FEBRUARY 6, 1962 AS INSTRUMENT NO. 186 IN BOOK T-2216, PAGE 834, OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE SOUTH 57 DEGREES 54 MINUTES 35 SECONDS WEST 143.29 FEET TO A POINT IN THAT CERTAIN COURSE RECITED AS “NORTH 55 DEGREES 00 MINUTES 00 SECONDS WEST 100.00 FEET” IN THE DEED OF TRUST RECORDED ON APRIL 4, 1963 AS INSTRUMENT NO. 2537 IN BOOK T-2938 PAGE 145 OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SAID POINT BEING DISTANT SOUTH 55 DEGREES 00 MINUTES 00 SECONDS EAST 12.00 FEET FROM THE WESTERLY TERMINUS OF SAID LAST MENTIONED CERTAIN COURSE; THENCE NORTH 55 DEGREES 00 MINUTES 00 SECONDS EAST 42.00 FEET; THENCE SOUTH 35 DEGREES 00 MINUTES 00 SECONDS WEST 23.84 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE EASTERLY, HAVING A RADIUS OF 146.00 FEET SAID CURVE BEING TANGENT AT ITS SOUTHEASTERLY TERMINUS WITH A LINE THAT IS PARALLEL WITH AND DISTANT SOUTHWESTERLY 1.00 FOOT, MEASURED AT RIGHT ANGLES, FROM THE NORTHWESTERLY PROLONGATION OF THE TANGENT PORTION OF THE NORTHEASTERLY LINE OF LOT 2 OF TRACT NO. 11859, AS PER MAP RECORDED IN BOOK 255, PAGES 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE SOUTHERLY ALONG SAID CURVE TO A POINT ON THE SOUTHERLY LINE OF LOT 2 OF SAID COLDWATER CANYON TRACT; THENCE NORTH 76 DEGREES 50 MINUTES 30 SECONDS

WEST ALONG SAID SOUTHERLY LINE TO AN ANGLE POINT IN SAID SOUTHERLY LINE DISTANT SOUTH 89 DEGREES 08 MINUTES 15 SECONDS EAST 672.10 FEET FROM THE SOUTHWEST CORNER OF SAID LAST MENTIONED LOT 2 OF THE COLDWATER CANYON TRACT; THENCE CONTINUING ALONG SAID SOUTHERLY LINE NORTH 89 DEGREES 08 MINUTES 15 SECONDS WEST 672.10 FEET TO THE SOUTHWEST CORNER OF SAID LOT 2; THENCE ALONG THE WESTERLY LINE OF SAID LOT 2 NORTH 00 DEGREES 34 MINUTES 40 SECONDS EAST 222.09 FEET TO THE POINT OF BEGINNING.

PARCEL 6: APN 4387-021-019

THAT PORTION OF LOT 3 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 3; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 3 SOUTH 89 DEGREES 08 MINUTES 15 SECONDS EAST 672.10 FEET TO AN ANGLE IN SAID NORTHERLY LINE; THENCE SOUTH 76 DEGREES 50 MINUTES 30 SECONDS EAST TO A POINT IN THAT CERTAIN CURVE RECITED AS “A TANGENT CURVE CONCAVE EASTERLY, HAVING A RADIUS OF 146.00 FEET, SAID CURVE BEING TANGENT AS ITS SOUTHEASTERLY TERMINUS, WITH A LINE THAT IS PARALLEL WITH AND DISTANT SOUTHWESTERLY 1.00 FOOT, MEASURED AT RIGHT ANGLES FROM THE NORTHWESTERLY PROLONGATION OF THE TANGENT PORTION OF THE NORTHEASTERLY LINE OF LOT 2 OF SAID TRACT NO. 11859 IN THE CORPORATION GRANT DEED RECORDED ON APRIL 15, 1964 AS INSTRUMENT NO. 2263 IN BOOK D-2434, PAGES 681 AND 682, OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; SOUTHEASTERLY ALONG SAID CURVE TO THAT CERTAIN POINT DESCRIBED IN SAID CORPORATION GRANT DEED AS BEING “AN ARC DISTANCE OF 221.11 FEET” (FROM THE BEGINNING OF SAID CURVE IN SAID DEED); THENCE SOUTH 41 DEGREES 00 MINUTES 00 SECONDS WEST 111.09 FEET; THENCE SOUTH 66 DEGREES 48 MINUTES 37 SECONDS 12.00 FEET; THENCE SOUTH 23 DEGREES 11 MINUTES 23 SECONDS WEST 103.00 FEET; THENCE SOUTH 71 DEGREES 15 MINUTES 00 SECONDS EAST 31.00 FEET; THENCE SOUTH 15 DEGREES 45 MINUTES 00 SECONDS WEST 36.00 FEET; THENCE SOUTH 71 DEGREES 15 SECONDS 00 MINUTES EAST 23.15 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE SOUTHWESTERLY, HAVING A RADIUS OF 47.00 FEET; THENCE EASTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 2 DEGREES 02 MINUTES 22 SECONDS, AN ARC DISTANCE OF 17.26 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHERLY, HAVING A RADIUS OF 103.00 FEET; THENCE EASTERLY ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 37 DEGREES 15 MINUTES 57 SECONDS”, AN ARC DISTANT OF 66.99 FEET; ALONG THE PROLONGATION OF A RADIAL LINE OF SAID LAST MENTIONED CURVE SOUTH 02 DEGREES 31 MINUTES 25 SECONDS WEST 39.36 FEET, MORE OR LESS, TO THE SOUTHERLY LINE OF SAID LOT 3 OF SAID COLDWATER CANYON TRACT; THENCE ALONG SAID LOT 3 OF SAID COLDWATER CANYON TRACT; THENCE ALONG SAID SOUTHERLY LINE NORTH 77 DEGREES 35 MINUTES 30 SECONDS WEST 384.04 FEET, MORE OR LESS TO AN ANGLE POINT IN SAID SOUTHERLY LINE; THENCE CONTINUING ALONG SAID SOUTHERLY LINE SOUTH 88 DEGREES 30 MINUTES 30 SECONDS WEST 716.84 FEET TO THE SOUTHWEST CORNER OF SAID LOT 3; THENCE ALONG THE WESTERLY LINE OF SAID LOT 3 NORTH 00 DEGREES 34 MINUTES 40 SECONDS EAST 402.58 FEET TO THE POINT OF BEGINNING.

PARCEL 7: APN 4387-021-018

THAT PORTION OF LOT 4 OF THE COLDWATER CANYON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 18 PAGE(S) 22 AND 23 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT ON THE SOUTHERLY LINE OF SAID LOT 4, DISTANT THEREON NORTH 79 DEGREES 33 MINUTES 10 SECONDS WEST 235.00 FEET FROM THE SOUTHEASTERLY TERMINUS OF THAT CERTAIN BOUNDARY LINE OF SAID LOT 4 SHOWN AS HAVING A BEARING AND DISTANCE OF SOUTH 79 DEGREES 33 MINUTES 10 SECONDS EAST 1057.13 FEET; THENCE NORTHWESTERLY ON A DIRECT LINE TO A POINT ON THE NORTHERLY LINE OF SAID LOT 4, DISTANT THEREON SOUTH 88 DEGREES 30 MINUTES 30 SECONDS WEST 40.00 FEET FROM THE NORTHEASTERLY TERMINUS OF THAT CERTAIN NORTHERLY LINE SHOWN AS HAVING A BEARING AND LENGTH OF SOUTH 88 DEGREES 30 MINUTES 30 SECONDS WEST 716.84 FEET.

APN: 4387-021-018, 4387-021-019, 4387-022-001, 4387-022-002, 4387-020-001, 4387-020-009

(End of Legal Description)

MAP

THE MAP CONNECTED HEREWITH IS BEING PROVIDED AS A COURTESY AND FOR INFORMATIONAL PURPOSES ONLY; THIS MAP SHOULD NOT BE RELIED UPON. FURTHERMORE, THE PARCELS SET OUT ON THIS MAP MAY NOT COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES. STEWART ASSUMES NO LIABILITY, RESPONSIBILITY OR INDEMNIFICATION RELATED TO THE MAPS NOR ANY MATTERS CONCERNING THE CONTENTS OF OR ACCURACY OF THE MAP.